UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SWAIN

------------------------------------------------------------------ x

CDO Plus Master Fund Ltd.,

               Plaintiff,

         -against-

Wachovia Bank, National Association,

             Defendant.

------------------------------------------------------------------ x

**07 CV 11078**

Civil Action No.:

**NOTICE OF REMOVAL**

RECEIVED
DEC 07 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**TO:** **UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

    1.    Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Wachovia Bank, National Association ("Wachovia"), by and through its undersigned attorneys, submits this Notice of Removal and states as follows:

    2.    The above-captioned action was filed on November 28, 2007, by plaintiff CDO Plus Master Fund Ltd.("CDO Plus") against Wachovia in the Supreme Court of the State of New York, New York County, bearing Index No. 603916/2007, and is now pending.

    3.    The United States District Court for the Southern District of New York embraces the place where the above-captioned action is pending.

    4.    On or about November 28, 2007, a copy of the Summons and Complaint was served upon Wachovia, by personal delivery to Wachovia's office in New York, New York.

    5.    Upon information and belief, no other parties have been joined and served as defendants in the above-captioned action.

    6.    A copy of the Summons and Complaint is annexed hereto as Exhibit A, and constitutes all process, pleadings, and orders served upon Wachovia in the state court action.

7.    The above-captioned action is a civil action alleging breach of contract, rescission, fraud, breach of an implied covenant of good faith and fair dealing, unjust enrichment, conversion, and a permanent injunction against Wachovia and seeking damages in excess of $8 million, plus punitive damages.

8.    According to the Complaint, CDO Plus is a corporation incorporated under the laws of the Isle of Jersey with its principal place of business at Le Masurier House, St. Helier JE2 4YE Jersey, Channel Islands.

9.    The Complaint identifies Wachovia as a "national banking association with a principal place of business at 301 South College Street, Charlotte, North Carolina." Complaint ¶ 4. Wachovia is a national banking association with its designated main office and principal place of business in Charlotte, North Carolina.

10.    Insofar as the parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, this Court would have original subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332, if the action had been brought in federal court.  Removal of the action to this Court, therefore, is proper under 28 U.S.C. § 1441(a).

11.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because the Summons and Complaint was served upon Wachovia not earlier than November 28, 2007.

12.    Insofar as Wachovia is the sole defendant named herein, no consent from any co-defendant is required.

    13.    Written notice of filing of this Notice of Removal will be given to Plaintiff, and a copy will be filed in the appropriate State court, as required by 28 U.S.C. § 1446(d).

Dated: New York, New York
       December 7, 2007

HUNTON & WILLIAMS LLP

By: _____
Shawn Patrick Regan
200 Park Avenue, 52nd Floor
New York, New York  10166
(212) 309-1000
sregan@hunton.com

-and-

Patrick L. Robson
HUNTON & WILLIAMS LLP
Bank of America Plaza
101 S. Tyson Street, Suite 3500
Charlotte, North Carolina  28280
(704) 378-4700
probson@hunton.com

*Attorneys for Defendant Wachovia Bank,
National Association*

_**EXHIBIT A**_

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-------------------------------------------------X

CDO PLUS MASTER FUND LTD.,                :

                     Plaintiff,        :

      v.                              :

WACHOVIA BANK,                            :
NATIONAL ASSOCIATION,

                Defendant.        :

-------------------------------------------------X

**0 7 6 0 3 9 1 6**

Index No. _____ / 2007

Date Purchased: November 28, 2007

**SUMMONS**

Plaintiff designates N.Y. County as
the place for trial

**FILED**

NOV 2 8 2007

NEW YORK
COUNTY CLERK'S OFFICE

*To:  The Above Named Defendant:*

    **YOU ARE HEREBY SUMMONED** to serve a copy of your answer on Plaintiff's
attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of
service (or within thirty (30) days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to appear, judgment
will be taken against you by default for the relief demanded in the Verified Complaint.

    The basis of venue is a written agreement between the parties fixing New York County as
the place of trial.

Dated: New York, New York
       November 28, 2007

                        **MINTZ & GOLD LLP**

                        *Terence W. McCormick*

                        Steven G. Mintz
                        Steven W. Gold
                        Terence W. McCormick
                        470 Park Avenue South
                        10th Floor North
                        New York, New York 10016-6819
                        Tel: (212) 696-4848

Defendant's address:
Wachovia Bank, N.A.
301 South College Street, DC-8
Mailcode: NC0600
Charlotte, NC 28202-0600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------X

CDO PLUS MASTER FUND LTD.,                                :

                                         Plaintiff,      :       Index No. _____/2007

                                                         :       **VERIFIED COMPLAINT**
          - against -                                    :

WACHOVIA BANK,                                           :       0 7 6 0 3 9 1 6
NATIONAL ASSOCIATION,                                    :

                                         Defendant.      :       **FILED**

------------------------------------------------------X          NOV 2 8 2007

                          **Introduction**                       NEW YORK
                                                                 COUNTY CLERK'S OFFICE

1.        This action concerns a classic "bait and switch" by the Defendant,

Wachovia Bank, National Association ("Wachovia"), in which Wachovia fraudulently

induced the Plaintiff, CDO Plus Master Fund Ltd., to enter into a credit derivative

transaction, or "swap," through the offer of more favorable margin terms than Wachovia

actually intended to honor. In reliance upon Wachovia's representations, Plaintiff

entered into the trade and deposited $750,000 to collateralize the swap. Within weeks of

the trade, however, Wachovia demanded unreasonably high amounts of additional margin

even though there had been no principal or interest default or a write-down in the

underlying instrument (an investment-grade collateralized debt obligation, or "CDO").

Perhaps in a panic over recent turmoil in the debt markets caused by a crisis in sub-prime

mortgage defaults, Wachovia purportedly determined, without any reasonable basis, that

the creditworthiness of the reference obligation had drastically deteriorated in the scant

weeks that had passed since it entered into the swap with the Plaintiff.

2.      Wachovia calculated the amount of required margin in bad faith, demanding far more security than could conceivably be needed to protect the position – all at the expense of Plaintiff's liquidity and, hence, its ability profitably to use its capital to trade elsewhere and realize profits for Plaintiff's investors. Plaintiff seeks rescission of the swap transaction, the return of all sums Plaintiff deposited as collateral, damages and/or a permanent injunction against further violations by Wachovia.

### The Parties

3.      Plaintiff is an Isle of Jersey exempted corporation having its principal place of business at Le Masurier House, St. Helier JE2 4YE Jersey, Channel Islands.

4.      Upon information and belief, Wachovia is a national banking association with a principal place of business at 301 South College Street, Charlotte, North Carolina.

### Jurisdiction and Venue

5.      In the swap agreement, the parties agreed to submit to the jurisdiction of the Courts of the State of New York and the United States District Court in the Borough of Manhattan, and stipulated to the application of New York law.

### Substantive Allegations

6.      Plaintiff is a hedge fund with approximately $50,000,000 of funds under management.

7.      On or about May 21, 2007, Plaintiff entered into a credit default swap transaction with Wachovia.

8.      A credit default swap is a contract under which two financial institutions trade the credit risk of a debt instrument, such as a corporate bond or, in this case, a CDO. A credit default swap bears some similarities to an insurance policy, except that neither

counterparty to the swap necessarily holds the debt instrument on which the swap is based. The underlying debt instrument is called the "reference obligation." Under the credit default swap agreement, one party (the "protection buyer," which in this case is Wachovia) pays a fixed, periodic fee to the seller of the swap (the Plaintiff, here). In return for receiving the fee, the seller of the swap agrees to undertake the credit exposure of the underlying debt instrument, *i.e.*, to pay all or a portion of the unpaid obligation to the buyer of the swap upon the triggering of certain credit defaults.

9.    In this case, the fee to be paid to Plaintiff is 2.75% per annum, calculated on the "notional amount" of $10,000,000 of a collateralized debt obligation, Senior Notes of Forge ABS High Grade CDO Ltd, 2007 Class 1-A, which were issued pursuant to an Indenture dated April 11, 2007.[1]

10.    The contract documents governing the counterparties' rights and obligations under the swap are the 1992 version of the Master Agreement of the International Swap Dealers Association, dated May 4, 2007 (the "ISDA Master Agreement"), the Schedule to the ISDA Master Agreement, dated as of May 4, 2007, the ISDA Credit Support Annex (1994 Definitions) and the Confirmation Letter by Wachovia, dated May 30, 2007.

11.    By the terms of the foregoing documents, in the event of any conflict between the Confirmation Letter and the ISDA documents, the terms of the Confirmation Letter control, unless otherwise stated.

---

[1]    Since neither the Plaintiff nor Wachovia actually owns the CDO but are each simply trading in, or "hedging," the CDO's credit risk, the amount of the debt obligation on which the fee is calculated (and for which the seller agrees to undertake credit exposure in return) is termed the "notional" amount.

12.    When Plaintiff and Wachovia executed the swap, Plaintiff paid Wachovia $750,000, which is described in paragraph 7 of the Confirmation Letter as the "independent amount." For purposes of clarity, however, this Complaint instead refers to the deposit of $750,000 as the "initial margin." The purpose of the initial margin was to secure Wachovia against the credit risk of the counterparty (Plaintiff).

13.    Under the Confirmation Letter, the only payments that Wachovia may demand from Plaintiff *after* the initial margin are "Floating Payments." Wachovia may require Floating Payments *only* on the basis of a good faith determination by the Calculation Agent (which in this case is Wachovia) that: (i.) the obligor on the reference obligation (the CDO) had failed to make a required principal or a scheduled interest payment or (ii) a write-down had taken place according to the method prescribed by the reference obligation's governing instrument – *not* on the basis of the perceived creditworthiness of the counterparty (Plaintiff).

14.    Apart from the initial margin, the Confirmation Letter does not otherwise authorize Wachovia to demand payments of any kind to secure Wachovia against the credit risk of the counterparty.

15.    In or about April 2007, before the parties entered into the swap agreement, Wachovia had originally demanded initial margin in the amount of $1,500,000, but Plaintiff informed Wachovia that the trade would not make economic sense for Plaintiff unless the initial margin were reduced to $750,000.

16.    Wachovia ostensibly acquiesced, and entered into the swap with Plaintiff on those terms, knowing at the time that it would simply contrive later to demand more

4

collateral on the pretext of a decline in the mark-to-market value of the reference

obligation, *i.e.*, once Plaintiff was locked into to the trade. (The CDO matures in 2053).

17.    Plaintiff wired the $750,000 of initial margin to Wachovia's account on or

about May 30, 2007.

18.    However, less than three weeks later, Wachovia demanded an additional

amount of collateral, requiring a deposit of $320,000 on or about June 18, 2007. Several

days later, Wachovia requested an additional $430,000. Tellingly, the sum of the initial

margin and these two latter deposits comes to a total of $1,500,000 – precisely the

amount that Wachovia had wanted in the first instance and that Plaintiff had thought it

had bargained down to $750,000.

19.    Nor was Wachovia finished at $1,500,000. Wachovia continued to

ratchet up its demands for margin over the weeks that followed:

| Date | Amount |
|------|--------|
| May 30, 2007 | $750,000 (initial deposit) |
| June 18, 2007 | $320,000 |
| June 21, 2007 | $430,000 |
| June 26, 2007 | $300,000 |
| July 12, 2007 | $270,000 |
| July 20, 2007 | $740,000 |
| July 24, 2007 | $490,000 |
| July 30, 2007 | $310,000 |
| August 15, 2007 | $400,000 |
| August 21, 2007 | $760,000 |
| September 10, 2007 | $1,010,000 |
| October 15, 2007 | $780,000 |
| October 18, 2007 | $890,000 |

| October 30, 2007 | $850,000 |
| November 1, 2007 | $620,000 |

20.    In sum, Wachovia demanded, and Plaintiff paid, $8,920,000 over a period

of five months purportedly to secure Wachovia against a total credit risk of $10,000,000

from an investment-grade debt instrument.

21.    However, upon information and belief, during the entire period described

in the table above, and as of the date of this Complaint, the reference obligation (Forge

ABS High Grade CDO Ltd, 2007 Class 1-A) had not experienced any shortfall in

principal or interest payments whatsoever.

22.    Also upon information and belief, during the same period, no write-down

had taken place according to the reference obligation's controlling documents resulting in

any reduction of the outstanding principal amount of the reference obligation, nor had

any other write-down taken place such that Plaintiff could properly have been required to

make any payment to Wachovia.  Upon information and belief, from the date when

Wachovia and Plaintiff first entered into the credit default swap, and as of the date of this

Complaint, the reference obligation has at all times been and continues to be an

investment grade debt instrument.

23.    Under paragraph 6(b) of the Confirmation Letter, Wachovia, as

calculation agent, was obliged to determine Plaintiff's obligation to post additional

margin *solely* upon the basis of a report of the servicer of the underlying reference

obligation.[2]

---

[2]    Under a collateralized debt obligation, a servicer (which is often the originator of the debt
instruments pooled in the CDO) performs the ministerial task of calculating payment amounts and
preparing reports regarding the interest and principal due to be paid on the CDO.

6

24.    At first, Plaintiff delivered the additional collateral requested by Wachovia without protest. However, after the August 15, 2007 margin call, Plaintiff wrote to Wachovia expressing grave concern that it had been required, within a few short weeks from the launch of the CDO, to post collateral in the amount of $3,260,000 above and beyond the initial margin, for a total of over *40%* of the notional amount.

25.    Although the overall CDO market had certainly experienced considerable turmoil during the summer of 2007, no deterioration of the credit risk of the reference obligation had occurred of such magnitude that Plaintiff should have been required to deposit in excess of $4,000,000 in collateral to secure Wachovia.

26.    While one rating agency, Fitch, had downgraded the reference obligation from "AA" to "A," the "A" rating is an investment grade rating and does not constitute a credit event within the meaning of the swap documents. No such downgrade was announced by the relevant rating agencies, Standard & Poors or Moody's.

27.    Moreover, by Plaintiff's calculation, using similar CDO's as a point of comparison, the reference obligation may have actually appreciated during the same period when Wachovia was demanding collateral.

28.    In such an event, Wachovia would be required to *return* a portion of the collateral to Plaintiff, and certainly not to demand more. Even assuming that Wachovia faced exposure on the reference obligation, considering the volatility of the CDO market, it would be highly unlikely, if not impossible, that the calculation of such exposure would in every case call for a payment by Plaintiff to Wachovia. Indeed, Plaintiff's calculations clearly show that a return of some of the posted collateral should have been returned by Wachovia.

29.    In August 2007, Plaintiff contacted a trader at Wachovia, requesting that Wachovia explain the rationale for the repeated margin calls.

30.    Wachovia admitted that it had *not* used the servicer's report or other independent pricing data in evaluating the credit risk of the reference obligation and that the obligation at issue had not been actively traded in the previous few weeks, thereby making an accurate mark-to-market based upon bid prices nearly impossible.

31.    Tellingly, a salesman at Wachovia further revealed to Plaintiff that his credit department was pressuring him regarding the "chunkiness of the position," *i.e.*, relative to the size of Plaintiff's portfolio.

32.    Thus, the margin calls have been expressly used to secure Wachovia not against any objectively verifiable credit risk of the reference obligation but the perceived creditworthiness of the counterparty (Plaintiff), in violation of the swap agreement.

33.    As of the date of this Complaint, Plaintiff has delivered $8,920,000 in collateral against the notional amount of $10,000,000.

34.    On November 21, 2007 (the day before Thanksgiving), Wachovia made a demand for $550,000 of additional margin.

35.    Inasmuch as the collateral thus requested would amount to almost 95% of the entire notional amount, Plaintiff notified Wachovia by letter dated November 21, 2007 that it was compelled to invoke the dispute resolution procedures of the ISDA Credit Support Annex.

36.    In the same letter, Plaintiff further requested that Wachovia forward a copy of the servicer's report for the underlying reference obligation.

37.    At first, Wachovia did not respond to the November 21 letter.

38.    Instead, on the next business day, which was the day after Thanksgiving, Wachovia sent a new margin call, this time in the amount of $810,000.

39.    Intriguingly, the margin call for November 23, 2007, which demanded $260,000 more collateral than the November 21, 2007 margin call, recited that it constituted "notice of the following Collateral Movement as of Close of Business of 22 November 2007," which was Thanksgiving Day.

40.    As it had in response to the November 21, 2007 margin call, Plaintiff notified Wachovia that it was invoking the dispute resolution mechanism of the ISDA Credit Support Annex and would therefore not post any further collateral until the matter was resolved.

41.    On the morning of the following business day, November 26, 2007, Wachovia again sent a new margin call – the third in three consecutive days – this time demanding $820,000.

42.    It was not until later in the day that Wachovia finally held a conference call with Plaintiff's principals to attempt a resolution of the dispute.

43.    When asked why Wachovia had suddenly started sending daily margin calls, Wachovia's counsel responded that Wachovia marked the position to market daily (even though Wachovia had never issued daily margin calls to Plaintiff before).

44.    On November 27, 2007, Wachovia sent yet another margin call, this time calling for $1,490,000 of additional collateral, for a total of $10,410,000 – almost half a million dollars *more* than the notional amount of the swap!

45.    Wachovia also sent four market quotations of the swap, expressed in "points upfront," which purported to justify Wachovia's exorbitant margin calls, *i.e.*, on the ground that the swap (not the reference obligation) was essentially worthless.

46.    At the same time, Wachovia finally included a copy of the servicer's report, which revealed that none of the securities pooled in the reference obligation had defaulted and that the vast majority of those securities continued to be investment grade.

47.    Upon reviewing the servicer's report, it became apparent to Plaintiff that Wachovia had not calculated its exposure on the basis of the data in the servicer's report, as it was required to by the terms of the Confirmation Letter, and has therefore overstated its requirement for collateral.

48.    The creditworthiness of the reference obligation has not been impaired, and certainly not to the extent that collateral should be demanded in the amount of more than 100% of the notional amount of the swap.

49.    The demand by Wachovia for over $10,000,000 in cash to collateralize a swap based on the $10,000,000 notional amount of an investment-grade CDO is commercially unreasonable – indeed, absurd – and unnecessarily ties up nearly 20% of the Plaintiff's funds, to the detriment of Plaintiff's investors.

50.    At the same time, it allows Wachovia artificially to minimize its overall exposure to the turbulence in the CDO market caused by the collapse in the sub-prime lending market, at the expense of Plaintiff and its investors.

10

## AS AND FOR A FIRST CAUSE OF ACTION
### (For Rescission)

51.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

52.    Wachovia made numerous false representations to, and concealed material existing facts from Plaintiff, specifically, that it would require no more than $750,000 to secure Wachovia against its perceived counterparty risk.

53.    In fact, Wachovia knew when it entered into the swap with Plaintiff that it would simply extract additional collateral under the pretext of write-downs to the value of the reference obligation, *i.e.*, once Plaintiff had already locked itself into the swap.

54.    The foregoing representations were false and known to be false by Wachovia when they were made, for the purpose of enticing Plaintiff into making the swap.

55.    But for Wachovia's misrepresentations and omissions, Plaintiff would not have consummated the swap transaction with Wachovia.

56.    By reason of the foregoing, Plaintiff is entitled to rescission of the swap, restitution by Wachovia of all sums paid by Plaintiff to date, including without limitation the initial margin and all further sums paid as collateral, and incidental damages incurred in connection with the negotiation, execution and consummation of the swap.

## AS AND FOR A SECOND CAUSE OF ACTION
### (For Damages from Wachovia's Fraud)

57.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

58.    The misrepresentations and omissions set forth herein were engaged in by Wachovia with intent to deceive Plaintiff and constitute fraud under principles of

11

common law entitling Plaintiff to an award of compensatory damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

59.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

60.    Plaintiff has performed all of its obligations under the swap agreement.

61.    Wachovia has breached the agreement, *inter alia*, by demanding the deposit of collateral far in excess of the amount actually required.

62.    Plaintiff has been thereby damaged in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

63.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

64.    By gradually making oppressive margin demands without justification, Wachovia acted in a manner so as to deprive Plaintiff of the right to receive the benefit of the swap agreement, namely, the premium to be paid by Wachovia on the notional amount at a cost to Plaintiff no greater than the opportunity cost of the collateral actually required to secure counterparty risk and credit risk.

65.    To the extent that the swap agreement gave Wachovia any discretion as calculation agent in the determination of the credit risk of the reference obligation, the implied covenant of good faith and fair dealing included a promise on the part of Wachovia not to act arbitrarily or irrationally in exercising that discretion.

66.    By extracting collateral from Plaintiff far in excess of what Wachovia actually required, Wachovia has damaged Plaintiff in an amount to be determined at trial.

12

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

67.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

68.    By extracting an unnecessarily large amount of collateral from Plaintiff, Wachovia received money properly belonging to the Plaintiff.

69.    Wachovia has benefited and is benefiting from the receipt of those funds and, under principles of equity and good conscience, Wachovia should not be permitted to retain such collateral in any amount beyond the sums required to offset the credit risk of the reference obligation.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (For a Permanent Injunction)

70.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

71.    Wachovia's breach of the swap agreement violates a present right of the Plaintiff.

72.    If Plaintiff's liquidity continues to be impaired by Wachovia's unjustified retention of over $8,000,000 in collateral, Plaintiff will face serious and irreparable injury in the form of the loss of present and/or prospective investors, who will be chilled by the future impact of Wachovia's impairment of the fund's liquidity.

73.    The equities are balanced in the Plaintiff's favor; Plaintiff has complied with its obligations, whereas Wachovia has misled Plaintiff as to its intentions.

74.    The public interest will not be injured in any way if Wachovia is forced to honor its contract and remit the approximately $8,000,000 it has wrongfully demanded and withheld.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Conversion)

75.     Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

76.     Wachovia has retained, and willfully and unlawfully continues to retain, the excess collateral properly belonging to Plaintiff.

77.     Wachovia has failed and refused to comply with Plaintiff's demand that Wachovia return the excess collateral.

**WHEREFORE,** Plaintiff demands judgment as follows:

A.     On the Second, Third, Fourth and Seventh Causes of Action, damages in an amount to be determined at trial, including an award of punitive damages, plus interest and costs, against Wachovia;

B.     On the First and Fifth Causes of Action, restitution of the sums paid by Plaintiff to Wachovia under the swap agreement;

C.     On the First Cause of Action, an equitable rescission of the swap agreement;

D.     On the Sixth Cause of Action, an order permanently enjoining Wachovia from future breaches of the swap agreement; and

14

E.    Such other and further relief as to the Court may seem proper and

equitable, including an award of reasonable attorney's fees.

Dated: New York, New York
      November 28, 2007

Respectfully submitted,

**MINTZ & GOLD LLP**

*Terence W. McCormick*

Steven G. Mintz
Steven W. Gold
Terence W. McCormick
470 Park Avenue South
10th Floor North
New York, New York 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
*Counsel for Plaintiff*
*CDO Plus Master Fund Ltd.*

15

## VERIFICATION

STATE OF FLORIDA            )
                           )  ss.:
COUNTY OF PALM BEACH        )

The undersigned, Don Uderitz, being duly sworn, deposes and says:

1.    I am Director of CDO Plus Master Fund Ltd., the Plaintiff described in the above-captioned complaint.

2.    I have read the foregoing Verified Complaint and I know its contents to be true as to all matters within my personal knowledge. As to those matters not within my personal knowledge, I believe the contents to be true.

Dated: New York, New York
      November 27, 2007

_____
Don Uderitz

Subscribed and sworn to before me this 27th day of November, 2007.

_____
Notary Public

ANDREA MILLER
Notary Public - State of Florida
My Commission Expires May 2, 2008
Commission # DD310533
Bonded By National Notary Assn.

16

ORIGINAL

ALL-STATE LEGAL®
07101-BF • 07102-BL • 07103-GY • 07104-WH
800.222.0510 www.aslegal.com

Index No.                    Year 20  07

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF NEW YORK

CDO PLUS MASTER FUND LTD.,

                              Plaintiff,

        - against -

WACHOVIA BANK,
NATIONAL ASSOCIATION,

                              Defendant.

## SUMMONS AND COMPLAINT

              Attorney(s) for  *Plaintiff*

                    *Office Address & Tel. No.:*
                    **MINTZ & GOLD LLP**
                    470 Park Avenue South – 10th Floor North
                    New York, NY 10016
                    (212) 696-4848

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

Dated:  November  28,  2007      Signature  *Terence W. McCormick*

                                 Print Signer's Name  Terence W. McCormick

*Service of a copy of the within*                                  *is hereby admitted.*

*Dated:*

                              *Attorney(s) for*

## PLEASE TAKE NOTICE

☐ **NOTICE OF ENTRY**
  *that the within is a (certified) true copy of a*
  *entered in the office of the clerk of the within-named Court on*                    20

☐ **NOTICE OF SETTLEMENT**
  *that an Order of which the within is a true copy will be presented for settlement to the*
  *Hon.                    , one of the judges of the within-named Court,*
  *at*
  *on                    20        , at                    M.*

*Dated:*

                              *Attorney(s) for*