UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                      :

CDO Plus Master Fund Ltd.,                   :

                  Plaintiff,       :           07 CV 11078 (LTS)(AJP)

                                 :             ECF Case

             -against-           :

                                 :

Wachovia Bank, National Association,     :

                                 :

                 Defendant.     :
-------------------------------------------------------------------x

## DEFENDANT WACHOVIA BANK'S
## ANSWER AND COUNTERCLAIM

Defendant Wachovia Bank, National Association ("Wachovia"), by and through its

undersigned counsel, Hunton & Williams LLP, for its Answer to the amended complaint of CDO

Plus Master Fund Ltd., filed January 15, 2008 (the "Complaint"), responds as follows:

### <u>Introduction</u>

1.      This action concerns a classic "bait and switch" by the Defendant, Wachovia

Bank, National Association ("Wachovia"), in which Wachovia fraudulently induced the Plaintiff,

CDO Plus Master Fund Ltd.,[1] to enter into a credit derivative transaction, or "swap," through the

offer of more favorable margin terms than Wachovia actually intended to honor.  In reliance

upon Wachovia's representations, Plaintiff entered into the trade and deposited $750,000 to

collateralize the swap.  Within weeks of the trade, however, Wachovia demanded unreasonably

high amounts of additional margin even though Plaintiff was not under an obligation to post any

collateral at all after depositing the initial margin of $750,000.  Under the Confirmation Letter of

the swap agreement, after the initial margin deposit Wachovia was entitled to demand payments

from Plaintiff *only* upon the occurrence of an actual credit default, *i.e.*, a failure to pay principal,

an interest shortfall or a "writedown" in the underlying "reference obligation" (which in this case

is an investment-grade collateralized debt obligation, or "CDO").  Perhaps in a panic over recent

turmoil in the debt markets connected to the sub-prime mortgage lending crisis, Wachovia

---

[1]     On November 21, 2007, the Companies Registry of the Jersey Financial Services
Commission recorded the change of Plaintiff's name to VCG Special Opportunities
Master Fund Limited.

purportedly determined (but without any reasonable basis) that the creditworthiness of the reference obligation (and/or the Plaintiff) had drastically deteriorated in the scant weeks that had passed since it entered into the credit default swap with the Plaintiff.

**ANSWER:**

Wachovia admits that CDO Plus Master Fund Ltd. ("CDO Plus") deposited the Independent Amount, as defined by paragraph 7 of the Confirmation, with Wachovia. Wachovia admits the allegations set forth in footnote 1 of paragraph 1 of the Complaint. Wachovia denies the remaining allegations set forth in paragraph 1 of the Complaint that purport to describe acts by Wachovia. To the extent that Plaintiff purports to characterize the written agreement between the parties, Wachovia refers to the documents for their terms and denies that Plaintiff's characterization of those terms is correct. Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 1 of the Complaint.

2.      In the alternative, if Wachovia had not planned to deceive Plaintiff regarding the amount of collateral it intended to extract in order to protect itself against counterparty risk, then there was no meeting of the minds regarding the subject matter of the transaction. Relying upon the terms of the Confirmation Letter governing the swap, Plaintiff entered into the transaction with the understanding that it was selling risk protection ***against a credit default only***. Wachovia knew or should have known this fact but, in retrospect, sought to hold Plaintiff to a different set of obligations, such as a market value swap, *i.e.*, a transaction under which Plaintiff would bear the risk of daily movements in the value of the reference obligation. When Plaintiff confirmed that no credit default had taken place, it refused to pay more money as "margin." After Plaintiff commenced this action (originally in New York Supreme Court), Wachovia closed out the trade and converted all the money that had been deposited to date, $8,920,000.

**ANSWER:**

To the extent that the allegations set forth in paragraph 2 of the Complaint assert conclusions of law, no response is required. Wachovia admits that Plaintiff failed to meet its obligation under the Agreement to post collateral with Wachovia. Wachovia admits that as a result of Plaintiff's default, Wachovia caused an early termination of the Agreement, exercised

its right to liquidate the Posted Collateral, and applied the liquidation proceeds to satisfy a

portion of Plaintiff's Obligations under the agreement. Wachovia denies the remaining

allegations set forth in paragraph 2 of the Complaint that purport to describe acts by Wachovia or

that purport to characterize the terms of the Agreement, and refers to the documents for their

terms. Wachovia is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations set forth in paragraph 2 of the Complaint.


3.      Plaintiff seeks rescission of the swap transaction, the return of all sums Plaintiff
deposited as collateral or otherwise, damages from the breach and/or specific performance and a
permanent injunction against further violations by Wachovia.

**ANSWER:**

Wachovia admits that the purpose of Plaintiff's Complaint is to seek the relief set forth in

paragraph 3 of the Complaint, but denies that Plaintiff is entitled to such relief, in whole or in

part.

**The Parties**

4.      Plaintiff is an Isle of Jersey exempted corporation having its principal place of
business at Le Masurier House, St. Helier JE2 4YE Jersey, Channel Islands.

**ANSWER:**

Wachovia admits the allegations set forth in paragraph 4 of the Complaint.


5.      Wachovia is a national banking association with its designated main office and
principal place of business in Charlotte, North Carolina.

**ANSWER:**

Wachovia admits the allegations set forth in paragraph 5 of the Complaint.

**Jurisdiction and Venue**

6.    The parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.  Accordingly, this Court possesses subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1332.

**ANSWER:**

To the extent that the allegations set forth in paragraph 6 of the Complaint assert

conclusions of law, no response is required.  Wachovia admits the remaining allegations set forth

in paragraph 6 of the Complaint.

7.    In the swap agreement, the parties agreed to submit to the jurisdiction of the Courts of the State of New York and the United States District Court in the Borough of Manhattan, and stipulated to the application of New York law.

**ANSWER:**

Wachovia admits that, pursuant to Section 13(b)(1) of the International Swap Dealers

Association, Inc.'s Master Agreement, dated May 4, 2007, the parties submitted to the

jurisdiction of this Court and to the application of New York law.  Wachovia is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in paragraph 7 of the Complaint.

**Substantive Allegations**

The Credit Default Swap

8.    Plaintiff is a hedge fund with approximately $50,000,000 of funds under management.

**ANSWER:**

Wachovia is without knowledge or information sufficient to form a belief as to the truth

of the allegations set forth in paragraph 8 of the Complaint.

9.      On or about May 21, 2007, Plaintiff entered into a credit default swap transaction with Wachovia.

**<u>ANSWER</u>:**

Wachovia admits that the Trade Date of the Credit Derivative Transaction on

Collateralized Debt Obligation with Pay-As-You-Go or Physical Settlement between Wachovia

and CDO Plus was May 21, 2007.


10.     A credit default swap is a contract under which two financial institutions trade the credit risk of a debt instrument, such as a corporate bond or, in this case, a CDO.  A credit default swap bears some similarities to an insurance policy, except that neither counterparty to the swap necessarily holds the debt instrument on which the swap is based.  The underlying debt instrument is called the "reference obligation."  Under the credit default swap agreement, one party (the "protection buyer," which in this case is Wachovia) pays a fixed, periodic fee to the seller of the swap (the Plaintiff, here).  In return for receiving the fee, the seller of the swap agrees to undertake the credit exposure of the underlying debt instrument, *i.e.*, to pay all or a portion of the unpaid obligation to the buyer of the swap upon the triggering of certain credit defaults.

**<u>ANSWER</u>:**

Wachovia admits that it was Party A to the Credit Derivative Transaction between

Wachovia and CDO Plus, which is defined within the Confirmation between Wachovia and

CDO Plus, dated May 30, 2007, (the "Confirmation") as the "Buyer."  Wachovia is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in paragraph 10 of the Complaint.


11.     In this case, the fee to be paid to Plaintiff is 2.75% per annum, calculated on the "notional amount" of $10,000,000 of the Class B tranche of a collateralized debt obligation, Senior Notes of Forge ABS High Grade CDO Ltd, 2007-1A, which were issued pursuant to an Indenture dated April 11, 2007.[2]

---

[2]      Since neither the Plaintiff nor Wachovia actually owns the CDO but are each simply trading in, or "hedging," the CDO's default risk, the amount of the debt obligation on

**ANSWER:**

Wachovia admits that the Fixed Rate is defined in the Confirmation as 2.75% per annum. Wachovia further admits that the Reference Entity is defined in the Confirmation as Forge ABS High Grade CDO LTD 2007-1A, and the Reference Obligation is "Class B Fifth Priority Senior Secured Floating Rate Notes Due 2053." Wachovia admits that the amount of the Fixed Payments it is obligated to make, pursuant to the Confirmation, is defined in Section 2 of the Confirmation. Wachovia denies the remaining allegations set forth in paragraph 11 of the Complaint. To the extent that footnote 2 to paragraph 11 purports to characterize the written agreement between the parties, Wachovia refers to the written agreement between the parties for its terms.

12.     The contract documents governing the counterparties' rights and obligations under the swap are the 1992 version of the Master Agreement of the International Swap Dealers Association, dated May 4, 2007 (the "ISDA Master Agreement"), the Schedule to the ISDA Master Agreement, dated as of May 4, 2007, the ISDA Credit Support Annex (1994 Definitions) and the Confirmation Letter by Wachovia, dated May 30, 2007.

**ANSWER:**

Wachovia admits the allegations set forth in paragraph 12 of the Complaint, subject to the understanding that: (i) Plaintiff is referring to the forms of the Master Agreement (Multicurrency-Cross Border) and the Credit Support Annex published by the International Swaps and Derivatives Association, Inc., formerly known as the International Swap Dealers Association, Inc., ("ISDA"), in 1992 and 1994, respectively; (ii) the Confirmation is in the form of the then-current template published by ISDA and is between the parties rather than by

---

which the fee is calculated (and for which the seller agrees to undertake credit default exposure in return) is termed the "notional" amount.

Wachovia; and (iii) each of the contract document forms were modified or not as agreed to by the parties. Wachovia admits the remaining allegations set forth in paragraph 12 of the Complaint.

13.    By the terms of the foregoing documents, in the event of any conflict between the Confirmation Letter and the ISDA Master Agreement, the terms of the Confirmation Letter control.

**ANSWER:**

Wachovia admits that the ISDA Master Agreement, executed by CDO Plus on May 4, 2007 states, at paragraph 1 (b), that "[i]n the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purpose of the relevant Transaction." Wachovia avers that there are no conflicts or other inconsistencies between the parties' payment obligations set forth in the Confirmation and the parties' credit support obligations set forth in the ISDA Credit Support Annex (which is part of the Schedule).

Initial Margin and Floating Payments

14.    When Plaintiff and Wachovia executed the swap, Plaintiff paid Wachovia $750,000, which is described in paragraph 7 of the Confirmation Letter as the "independent amount." For purposes of clarity, however, this Complaint instead refers to the deposit of $750,000 as the "initial margin." The purpose of the initial margin was to secure Wachovia against the credit risk of the counterparty (Plaintiff).

**ANSWER:**

Wachovia admits that CDO Plus transferred the Independent Amount, as defined by paragraph 7 of the Confirmation, to Wachovia. Wachovia admits that the purpose of the transfer of the Independent Amount was to secure Plaintiff's Obligations, as defined by the ISDA Credit Support Annex. Wachovia expressly denies that the Independent Amount was "margin," but,

rather, it and the other amounts transferred by Plaintiff under the ISDA Credit Support Annex

were collateral security. Wachovia denies the remaining allegations set forth in paragraph 14 of

the Complaint.


15.    Under the Confirmation Letter, the only payments that Wachovia may demand
from Plaintiff *after* the initial margin are "Floating Payments." Wachovia may require Floating
Payments *only* on the basis of a good faith determination by the Calculation Agent (which in this
case is Wachovia) that a "Floating Amount Event" had taken place: (i) the obligor on the
reference obligation (the CDO) had failed to make a required principal or a scheduled interest
payment or (ii) a writedown had taken place according to the method prescribed by the reference
obligation's governing instrument – *not* on the basis of the perceived creditworthiness of the
counterparty (Plaintiff).

**<u>ANSWER</u>:**

Wachovia denies the allegations set forth in paragraph 15 of the Complaint, except

Wachovia admits that it may not demand collateral on the basis of the perceived credit

worthiness of Plaintiff and asserts that it did not do so. Wachovia avers that Plaintiff's attempt to

summarize the payment obligations of the parties under the Agreement intentionally ignores the

parties' obligations to Transfer Eligible Credit Support, which are set forth in the ISDA Credit

Support Annex. Such Transfers of Eligible Credit Support are not determined by the Calculation

Agent. The parties' credit support obligations at any given time are determined by the parties'

valuation of Exposure, among other things, as defined in the Agreement. Insofar as Plaintiff

purports to characterize the agreements between the parties, Wachovia refers to the agreements

for their terms.


16.    Apart from the initial margin and Floating Payments, the Confirmation Letter
does not otherwise authorize Wachovia to demand payments of any kind to secure Wachovia
against the credit risk of the counterparty or the reference obligation.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 16 of the Complaint and refers to the agreements between the parties for their terms.  Further, the Confirmation supplements, forms a part of, is subject to, and is governed by the ISDA Master Agreement (including the Schedule and the ISDA Credit Support Annex), and the ISDA Credit Support Annex authorizes Wachovia to demand collateral from Plaintiff as security for its Obligations.

17.    On some swaps, margin may be collected after the initial margin.  In such cases, the additional margin is referred to as "variation margin" and is based upon a downward movement in the mark-to-market value of the underlying obligation.

**ANSWER:**

Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 of the Complaint.

18.    In or about April 2007, before the parties entered into the swap agreement, Wachovia had originally demanded initial margin in the amount of $1,500,000, but Plaintiff informed Wachovia that the trade would not make economic sense for Plaintiff unless the initial margin were reduced to $750,000.

**ANSWER:**

Wachovia admits that the parties negotiated the terms of the Independent Amount and ultimately agreed on the amount defined by paragraph 7 of the Confirmation.  Wachovia denies that the parties negotiated initial margin, and denies the remaining allegations set forth in paragraph 18 of the Complaint.

19.    Wachovia ostensibly acquiesced, and entered into the swap with Plaintiff on those terms, knowing at the time that it would simply contrive later to demand more collateral on the pretext of a decline in the mark-to-market value of the reference obligation, *i.e.*, once Plaintiff was locked into to the trade.  (The CDO matures in 2053).

**ANSWER:**

Wachovia admits that the Legal final maturity date of the Reference Obligation is

October 05, 2053. Wachovia denies the remaining allegations set forth in paragraph 19 of the

Complaint.

20.     Plaintiff wired the $750,000 of initial margin to Wachovia's account on or about
May 30, 2007.

**ANSWER:**

Wachovia admits that CDO Plus wired the Independent Amount to Wachovia on or about

May 30, 2007 and otherwise denies the allegations in paragraph 20.

Wachovia Squeezes Plaintiff for More Money

21.     However, less than three weeks later, Wachovia demanded an additional amount
of collateral, requiring a deposit of $320,000 on or about June 18, 2007. Several days later,
Wachovia requested an additional $430,000. Tellingly, the sum of the initial margin and these
two latter deposits comes to a total of $1,500,000 – precisely the amount that Wachovia had
wanted in the first instance and that Plaintiff had thought it had bargained down to $750,000.

**ANSWER:**

Wachovia admits that, on June 18 and 21, 2007**,** pursuant to paragraph 3 of the ISDA

Credit Support Annex, Wachovia demanded Transfers of Eligible Credit Support as collateral

security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex.

Wachovia denies the remaining allegations set forth in paragraph 21 of the Complaint.

22.     Nor was Wachovia finished at $1,500,000. Wachovia continued to ratchet up its
demands for variation margin over the weeks that followed:

| Date | Amount |
| --- | --- |
| May 30, 2007 | $750,000 (initial deposit) |

| June 18, 2007 | $320,000 |
|---|---|
| June 21, 2007 | $430,000 |
| June 26, 2007 | $300,000 |
| July 12, 2007 | $270,000 |
| July 20, 2007 | $740,000 |
| July 24, 2007 | $490,000 |
| July 30, 2007 | $310,000 |
| August 15, 2007 | $400,000 |
| August 21, 2007 | $760,000 |
| September 10, 2007 | $1,010,000 |
| October 15, 2007 | $780,000 |
| October 18, 2007 | $890,000 |
| October 30, 2007 | $850,000 |
| November 1, 2007 | $620,000 |

**ANSWER:**

Wachovia admits that, pursuant to paragraph 3 of the ISDA Credit Support Annex,

Wachovia demanded Transfers of Eligible Credit Support as collateral security for Plaintiff's

Obligations in accordance with the ISDA Credit Support Annex on the dates and the in amounts

corresponding to those set forth on the chart in paragraph 22.  Wachovia denies the remaining

allegations set forth in paragraph 22 of the Complaint.

23.    In sum, Wachovia demanded, and Plaintiff paid, $8,920,000 over a period of five
months purportedly to secure Wachovia against a total credit risk of $10,000,000 from an
investment-grade debt instrument.

**ANSWER:**

Wachovia admits that as of the date Plaintiff's original complaint was filed, CDO Plus

had deposited with Wachovia $8.92 million pursuant to its credit support obligations under the

ISDA Credit Support Annex.  Wachovia denies the remaining allegations set forth in paragraph

23 of the Complaint.

24.     However, upon information and belief, during the entire period described in the table above, and as of the date of the filing of the original Complaint in this action, the reference obligation (Forge ABS High Grade CDO Ltd, 2007-1A) had not experienced any shortfall in principal or interest payments whatsoever.

**ANSWER:**

Wachovia admits that between May 30 and November 28, 2007, Wachovia did not give notice of any Floating Amount Events or Credit Events.  Wachovia further admits that the Reference Entity is defined in the Confirmation as Forge ABS High Grade CDO LTD 2007-1A, and the Reference Obligation is "Class B Fifth Priority Senior Secured Floating Rate Notes Due 2053."  Wachovia avers that whether the Reference Obligation experienced any shortfall in principal or interest payments is not solely determinative of whether a party to the Agreement is required to make a Transfer of Eligible Credit Support.  There are many reasons why a party might be required to make a Transfer of Eligible Credit Support.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 24 of the Complaint.

25.     Also upon information and belief, during the same period, no write-down had taken place according to the reference obligation's controlling documents resulting in any reduction of the outstanding principal amount of the reference obligation, nor had any other write-down taken place such that Plaintiff could properly have been required to make a Floating Payment to Wachovia.  Upon information and belief, from the date when Wachovia and Plaintiff first entered into the credit default swap, and as of the date of this Complaint, the reference obligation has at all times been and continues to be an investment grade debt instrument.

**ANSWER:**

Wachovia admits that between May 30 and November 28, 2007, Wachovia did not give notice of any Floating Amount Events or Credit Events.  Wachovia avers that whether Plaintiff would have been required to make a Floating Payment to Wachovia is not solely determinative

of whether a party to the Agreement is required to make a Transfer of Eligible Credit Support. Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 25 of the Complaint.

26.     Under paragraph 6(b) of the Confirmation Letter, Wachovia, as calculation agent, was obliged to determine Plaintiff's obligation to pay sums to Wachovia **solely** upon the basis of a report of the servicer of the underlying reference obligation.[3]

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 26 of the Complaint.  Wachovia avers that the parties' obligations to make or demand Transfers of Eligible Credit Support are set forth in paragraph 3 of the ISDA Credit Support Annex, and are not governed by paragraph 6(b) of the Confirmation Letter.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in footnote 3 of paragraph 26 of the Complaint.

27.     At first, Plaintiff delivered the additional collateral requested by Wachovia without protest.  However, after the August 15, 2007 margin call, Plaintiff wrote to Wachovia expressing grave concern that it had been required, within a few short weeks from the launch of the CDO, to post collateral in the amount of $3,260,000 above and beyond the initial margin, for a total of over **40%** of the notional amount.

**ANSWER:**

Wachovia admits that it received a letter from Robert H. Fasulo, General Counsel for Vanquish Capital Group, LLC, dated August 16, 2007 and refers to the letter for its terms. Wachovia avers that it responded to Fasulo's August 16 letter in an email message dated August 21, 2007 and refers to the email message for its terms.  Wachovia is without knowledge or

---

[3]     Pursuant to the indenture of a collateralized debt obligation, a servicer performs the ministerial task of calculating payment amounts and preparing reports regarding the interest and principal due to be paid on the CDO.

information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 27 of the Complaint.

28.    While Plaintiff believed it was not obligated to pay the sums demanded by Wachovia, it did so because it was concerned that Wachovia would seize upon Plaintiff's refusal to post variation margin as an excuse to declare a technical default and seize Plaintiff's collateral – which ultimately, Wachovia did.

**ANSWER:**

Wachovia admits that as a result of Plaintiff's default, Wachovia caused an early termination of the Agreement, exercised its right to liquidate the Posted Collateral, and applied the liquidation proceeds to satisfy a portion of Plaintiff's Obligations under the agreement. Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 28 of the Complaint.

29.    Wachovia responded that it was entitled to require variation margin pursuant to the Credit Support Annex to the ISDA Master Agreement, due to the deterioration in the mark-to-market value of the reference obligation.

**ANSWER:**

Wachovia admits that, pursuant to paragraph 3 of the ISDA Credit Support Annex, it was entitled to:  (i) value Exposure on a mark-to-market basis; (ii) demand Transfers of Eligible Credit Support; and (iii) that it did demand such Transfers.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 29 of the Complaint.

30.    Although the overall CDO market had certainly experienced considerable turmoil during the summer of 2007, no credit event had yet occurred such that Plaintiff should have been required to make a Floating Payment.  While one rating agency, Fitch, had downgraded the reference obligation from "AA" to "A," the "A" rating is an investment grade rating and does not

constitute a credit event within the meaning of the swap documents.  No such downgrade was announced by the relevant rating agencies, Standard & Poors or Moody's.

**ANSWER:**

Wachovia admits that in the summer of 2007, it did not give notice of any Floating Amount Events or Credit Events.  Wachovia avers that whether Plaintiff was required to make a Floating Payment is not solely determinative of whether a party to the Agreement is required to make a Transfer of Eligible Credit Support.  Wachovia admits that in November 2007 Moody's downgraded the Reference Obligation from "AA" to "A," that on January 30, 2008 the Reference Obligation experienced an Event of Default, and on February 8, 2008 Moody's downgraded the Reference Obligation to "Ca".  Wachovia is without knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 30 of the Complaint.

31.     Moreover, even if Wachovia had been entitled to demand variation margin, *i.e.*, to secure Wachovia against the deteriorating credit risk of the reference obligation (which was beyond the obligations accepted by Plaintiff in the Confirmation Letter), Wachovia failed even to make a good faith estimate of the required collateral.  Indeed, by Plaintiff's calculation, using similar CDO's as a point of comparison, the reference obligation may have actually appreciated during the same period when Wachovia was demanding collateral.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 31 of the Complaint insofar as they purport to characterize the acts of Wachovia or the terms of the Agreement.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 31 of the Complaint.

32.     In such an event, even under Wachovia's interpretation of the swap agreements, Wachovia would have been required to *return* a portion of the collateral to Plaintiff, and certainly not to demand more.  Thus, even assuming that Wachovia faced exposure on the

reference obligation, considering the volatility of the CDO market, it would be highly unlikely, if not impossible, that the calculation of Wachovia's exposure would in every case call for a payment by Plaintiff to Wachovia.

**ANSWER:**

Wachovia denies that it was required to return any collateral to Plaintiff and that it was not entitled to demand the collateral that it demanded. Wachovia avers that Plaintiff, as Pledgor, never made a demand for a Return Amount, pursuant to paragraph 3 of the ISDA Credit Support Annex. Wachovia is without knowledge or information sufficient to form a belief as to the truth of the hypothetical allegations set forth in paragraph 32 of the Complaint.

Wachovia Admits that it Breached the Swap Agreement

33. In August 2007, Plaintiff contacted a trader at Wachovia, requesting that Wachovia explain the rationale for the repeated margin calls.

**ANSWER:**

Wachovia admits that its traders had numerous conversations with representatives of Plaintiff in August 2007 and may have discussed the rationale for demanding additional collateral. Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 33 of the Complaint.

34. Wachovia admitted that it had ***not*** used the servicer's report or other independent pricing data in evaluating the credit risk of the reference obligation and that the obligation at issue had not been actively traded in the previous few weeks, thereby making an accurate mark-to-market based upon bid prices nearly impossible.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 34 of the Complaint except as to its knowledge of the trading activity in the reference obligation.

35.     Tellingly, a salesman at Wachovia further revealed to Plaintiff that his credit department was pressuring him regarding the "chunkiness of the position," *i.e.*, relative to the size of Plaintiff's portfolio.

**ANSWER:**

Wachovia admits that its salespeople have spoken with representatives at CDO Plus but denies knowledge or information sufficient to form a belief at this time as to the truth of the remaining allegations set forth in paragraph 35 of the Complaint.

36.     Thus, the margin calls had been expressly used by Wachovia not to satisfy Plaintiff's obligation to make a "Floating Payment," or even to secure Wachovia against any objectively verifiable credit risk of the reference obligation, but solely to protect Wachovia against the perceived creditworthiness of the counterparty (Plaintiff), in violation of the swap agreement.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 36 of the Complaint.

37.     As of the date of this Amended Complaint, Plaintiff had delivered $8,920,000 in collateral against the notional amount of $10,000,000.

**ANSWER:**

Wachovia admits that as of the date Plaintiff's original complaint was filed, CDO Plus had deposited with Wachovia $8.92 million pursuant to its credit support obligations under the ISDA Credit Support Annex.  Wachovia denies the remaining allegations set forth in paragraph 37 of the Complaint.

<u>Wachovia Escalates its Margin Demands</u>

38.     On November 21, 2007 (the day before Thanksgiving), Wachovia made a demand for $550,000 of additional margin.

**<u>ANSWER</u>:**

Wachovia admits that, on November 21, 2007**,** pursuant to paragraph 3 of the ISDA

Credit Support Annex, Wachovia demanded a Transfer of Eligible Credit Support as collateral

security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex and refers

to the demand for its terms.

39.     Inasmuch as the collateral thus requested would amount to almost 95% of the entire notional amount, Plaintiff notified Wachovia by letter dated November 21, 2007 that it was compelled to invoke the dispute resolution procedures of the ISDA Credit Support Annex.

**<u>ANSWER</u>:**

Wachovia admits that in a letter dated November 21, 2007, CDO Plus invoked the

Dispute Resolution provision of paragraph 5 of the ISDA Credit Support Annex.  Wachovia is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations set forth in paragraph 39 of the Complaint.

40.     In the same letter, Plaintiff further requested that Wachovia forward a copy of the servicer's report for the underlying reference obligation.

**<u>ANSWER</u>:**

Wachovia admits the allegations set forth in paragraph 40 of the Complaint.

41.     At first, Wachovia did not respond to the November 21 letter.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 41 of the Complaint.  Wachovia

avers that it did respond orally and in writing to Plaintiff's November 21 letter, and refers to

those responses for their terms.


42.     Instead, on the next business day, which was the day after Thanksgiving,
Wachovia sent a new margin call, this time in the amount of $810,000.

**ANSWER:**

Wachovia admits that, on November 23, 2007, pursuant to paragraph 3 of the ISDA

Credit Support Annex, Wachovia demanded a Transfer of Eligible Credit Support as collateral

security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex and refers

to the demand for its terms.


43.     Intriguingly, the margin call for November 23, 2007, which demanded $260,000
more collateral than the November 21, 2007 margin call, recited that it constituted "notice of the
following Collateral Movement as of Close of Business of 22 November 2007," which was
Thanksgiving Day.

**ANSWER:**

Wachovia admits that, on November 23, 2007, pursuant to paragraph 3 of the ISDA

Credit Support Annex, Wachovia demanded a Transfer of Eligible Credit Support as collateral

security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex and refers

to the demand for its terms.  Wachovia admits that November 22, 2007 was Thanksgiving Day.

Wachovia avers that the date reflected on its November 23 demand for Transfer of Eligible

Credit Support reflects nothing more than a computer generated response that may not have

processed the fact that November 22, 2007 was Thanksgiving Day.

44.     As it had in response to the November 21, 2007 margin call, Plaintiff notified Wachovia that it was invoking the dispute resolution mechanism of the ISDA Credit Support Annex and would therefore not post any further collateral until the matter was resolved.

**ANSWER:**

Wachovia admits that it received a letter from CDO Plus dated November 23, 2007 and

refers to the letter for its terms.

45.     On the morning of the following business day, November 26, 2007, Wachovia again sent a new margin call – the third in three consecutive days – this time demanding $820,000.

**ANSWER:**

Wachovia admits that, on November 26, 2007, pursuant to paragraph 3 of the ISDA

Credit Support Annex, Wachovia demanded a Transfer of Eligible Credit Support as collateral

security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex and refers

to the demand for its terms.

46.     It was not until later in the day that Wachovia finally held a conference call with Plaintiff's principals to attempt a resolution of the dispute.

**ANSWER:**

Wachovia admits that it participated in a conference call with representatives of CDO

Plus on November 26, 2007 and denies the remaining allegations set forth in paragraph 46.

47.     When asked why Wachovia had suddenly started sending daily margin calls, Wachovia's counsel responded that Wachovia marked the position to market daily (even though Wachovia had never issued daily margin calls to Plaintiff before).

**ANSWER:**

Wachovia admits that it informed CDO Plus that Wachovia determined the Credit Support Amount as defined by paragraph 3 of the ISDA Credit Support Annex by marking the position to the market. Wachovia avers that pursuant to paragraph 13(c)(ii) of the ISDA Credit Support Annex, Wachovia was entitled to mark the position on a daily basis. Wachovia avers that Plaintiff's receipt of daily demands for Transfer of Eligible Credit Support was due to the fact that Plaintiff continued to refuse to post collateral (and therefore continued to receive demands from Wachovia), not a reflection of a change in Wachovia's method of valuing Exposure. Wachovia denies the remaining allegations set forth in paragraph 47 of the Complaint.

48.    On November 27, 2007, Wachovia sent yet another margin call, this time calling for $1,490,000 of additional collateral, for a total of $10,410,000 – almost half a million dollars *more* than the notional amount of the swap!

**ANSWER:**

Wachovia admits that, on November 27, 2007, pursuant to paragraph 3 of the ISDA Credit Support Annex, Wachovia demanded a Transfer of Eligible Credit Support as collateral security for Plaintiff's Obligations in accordance with the ISDA Credit Support Annex and refers to the demand for its terms. The ISDA Credit Support Annex entitles Wachovia to demand such collateral in an amount up to the sum of the $10 million notional amount of the Swap, the $750,000 Independent Amount and the Exposure to interest on the Reference Obligation. The $10,410,000 total demanded by Wachovia is less than such sum.

49.    Wachovia also sent four market quotations of the swap, expressed in "points upfront," which purported to justify Wachovia's exorbitant margin calls, suggesting that the

reference obligation's creditworthiness had deteriorated to the point that it was worth approximately five cents on the dollar.

**ANSWER:**

Wachovia admits that it provided market quotations to CDO Plus and refers to the context of those documents for their terms.  Wachovia further avers that it performed in accordance with the dispute resolution provisions of the ISDA Credit Support Annex.  Wachovia denies the remaining allegations set forth in paragraph 49 of the Complaint.

50.    At the same time, Wachovia finally included a copy of the servicer's report, which revealed that ***none*** of the securities pooled in the reference obligation had defaulted and that the vast majority of those securities continued to be investment grade.

**ANSWER:**

Wachovia admits that it provided CDO Plus with a copy of a Servicer's Report, dated November 5, 2007, and refers to that Report for its terms.  Wachovia avers that whether any of the securities collateralizing in the Reference Obligation defaulted or remained investment grade is not solely determinative of whether a party to the Agreement is required to make a Transfer of Eligible Credit Support.

51.    Upon reviewing the servicer's report, Plaintiff was able to confirm that Wachovia had not been collecting "Floating Payments," since no "Floating Amount Event" had taken place.

**ANSWER:**

Wachovia admits that, as of November 5, 2007, it had not given notice of any Floating Amount Events or Credit Events.  Wachovia refers to the Servicer's Report for its terms and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 51 of the Complaint.

52.     Moreover, even if Wachovia were entitled to demand margin (as distinguished from Floating Payments), Wachovia had failed to calculated its "exposure" to the credit risk of the reference obligation in good faith.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 52 of the Complaint.

53.     The creditworthiness of the reference obligation has not been impaired, at least not to the extent that collateral should be demanded in the amount of more than 100% of the notional amount of the swap.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 53 of the Complaint.

54.     Wachovia had therefore improperly demanded and collected sums that Plaintiff should never have been required to pay.  The demand by Wachovia for over $10,000,000 in cash to collateralize a swap based on the $10,000,000 notional amount of an investment-grade CDO was commercially unreasonable – indeed, absurd – and unnecessarily tied up nearly 20% of the Plaintiff's funds, to the detriment of Plaintiff's investors.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 54 of the Complaint insofar as

they purport to characterize any actions of Wachovia as inappropriate.  Wachovia is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in paragraph 54 of the Complaint.

55.     At the same time, it allowed Wachovia artificially to minimize its overall exposure to the turbulence in the CDO market caused by the collapse in the sub-prime lending market, at the expense of Plaintiff and its investors.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 55 of the Complaint insofar as they purport to characterize any actions of Wachovia as inappropriate.  Wachovia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 55 of the Complaint.

Plaintiff Files the Lawsuit in Supreme Court and
Wachovia Declares an Event of Default

56.    On November 28, 2007, Plaintiff commenced the instant civil action in the Supreme Court of the State of New York.  On December 7, 2007, Wachovia removed this action to the United States District Court for the Southern District of New York.

**ANSWER:**

Wachovia admits the allegations set forth in paragraph 56 of the Complaint.

57.    On December 7, 2007, Wachovia sent Plaintiff a Notice of Failure to Transfer, reciting that "*[a]s of November 28, 2007* and continuing through the date hereof, Counterparty [*i.e.*, Plaintiff] has failed to make, when due, one or more Transfers of Eligible Collateral in an amount equal to $1,740,000 to Wachovia as required under the Credit Support Annex. Counterparty's failure to Transfer will become an Event of Default under Paragraph 7(i) of the Credit Support Annex and Section 5(a)(iii)(1) of the Agreement if the required amount of Eligible Collateral is not delivered to Wachovia on or before the first Local Business Day after this notice is delivered to you."

**ANSWER:**

Wachovia admits that on December 7, 2007, it sent Plaintiff a Notice of Failure to Transfer and refers to the Notice for its complete terms.

58.    Plaintiff declined to pay any further sums to Wachovia.

**ANSWER**:

Wachovia admits that Plaintiff continued to refuse to meet its credit support obligations

to Wachovia.

59.     On or about December 10, 2007, Wachovia sent Plaintiff a Notice of Event of
Default.

**ANSWER**:

Wachovia admits the allegations set forth in paragraph 59 of the Complaint.

60.     On December 13, 2007, Wachovia sent Plaintiff a Notice of Early Termination,
and designated December 18, 2007 as the Early Termination Date.

**ANSWER**:

Wachovia admits the allegations set forth in paragraph 60 of the Complaint.

61.     On December 20, 2007, Wachovia notified Plaintiff that it was closing out the
swap transaction.  Wachovia purported to determine its loss on the transaction as $9,990,000,
based upon quotations for the reference obligation that it had obtained from market-makers.

**ANSWER**:

Wachovia admits that, on December 20, 2007, it sent Plaintiff a Notice of Amount Due

Following Early Termination and refers to the Notice for its terms.  Wachovia denies the

remaining allegations set forth in paragraph 61 of the Complaint.

62.     Wachovia further stated that a Writedown in the amount of $10,000,000 had
occurred with respect to the Reference Obligation.  However, no such Writedown had occurred
within the meaning of the Confirmation Letter.

**ANSWER:**

Wachovia admits that in the December 20, 2007 Notice of Amount Due Following Early Termination, it stated that "The most recent Servicer Report regarding the Reference Obligation indicates that a Writedown has occurred with respect to the Reference Obligation." Wachovia refers to the Notice for its complete terms. Wachovia denies the remaining allegations set forth in paragraph 62 of the Complaint.

Wachovia Converts Plaintiff's Collateral

63.    On or about December 27, 2007, Wachovia notified Plaintiff that it had foreclosed on the $8,920,000 of collateral, and that Plaintiff owed Wachovia the amount of the "deficiency," $1,030,861.12, together with interest and other amounts, including collection costs and legal fees.

**ANSWER:**

Wachovia admits that, on December 27, 2007, it sent Plaintiff a Notice of Amount Due Following Application of Collateral and refers to the Notice for its terms.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(For Rescission - Fraud)**

64.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

**ANSWER:**

For its answer to paragraph 64 of the Complaint, Wachovia repeats and re-alleges its responses to paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.    Wachovia made numerous false representations to, and concealed material existing facts from Plaintiff, specifically, that it would require no more than $750,000 to secure Wachovia against its perceived counterparty risk.

**ANSWER:**

      Wachovia denies the allegations set forth in paragraph 65 of the Complaint.

      66.     In fact, Wachovia knew when it entered into the swap with Plaintiff that it would simply extract additional collateral under the pretext of write-downs to the value of the reference obligation, *i.e.*, once Plaintiff had already locked itself into the swap.

**ANSWER:**

      Wachovia denies the allegations set forth in paragraph 66 of the Complaint.

      67.     The foregoing representations were false and known to be false by Wachovia when they were made, for the purpose of enticing Plaintiff into making the swap.

**ANSWER:**

      Wachovia denies the allegations set forth in paragraph 67 of the Complaint.

      68.     But for Wachovia's misrepresentations and omissions, Plaintiff would not have consummated the swap transaction with Wachovia.  By reason of the foregoing, Plaintiff is entitled to rescission of the swap and restitution by Wachovia of all sums paid by Plaintiff to date, including without limitation the initial margin and all further sums paid as collateral.

**ANSWER:**

      Wachovia states that the allegations set forth in paragraph 68 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 68 of the Complaint.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(For Rescission - Mistake)**

      69.     Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

**ANSWER:**

For its answer to paragraph 69 of the Complaint, Wachovia repeats and re-alleges its

responses to paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.    No meeting of the minds had been achieved at the time that the parties entered
into the swap transaction.  Based upon the Confirmation Letter and the negotiations leading up to
it, Plaintiff had agreed to sell credit protection on a credit default swap, not to take the risk of
daily mark-to-market movements in the value of the reference obligation.  Wachovia was aware
that the Confirmation Letter stipulated only Floating Payments, not margin based upon daily
changes in the creditworthiness of the Forge CDO, but did not address the discrepancy until after
Plaintiff had closed on the trade in May 2007.  As to Plaintiff, the mistake was honest and
excusable, such that enforcement of the variation margin provision would therefore be
unconscionable.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 70 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 70 of the Complaint.

71.    Accordingly, Plaintiff is entitled to an equitable rescission or reformation of the
swap and a return of its collateral.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 71 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 71 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION
### (For Damages from Wachovia's Fraud)

72.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth
herein.

**ANSWER:**

       For its answer to paragraph 72 of the Complaint, Wachovia repeats and re-alleges its

responses to paragraphs 1 through 71 of the Complaint as if fully set forth herein.

       73.     The misrepresentations and omissions set forth herein were engaged in by
Wachovia with intent to deceive Plaintiff and constitute fraud under principles of common law
entitling Plaintiff to an award of compensatory damages in an amount to be determined at trial,
as well as incidental damages incurred in connection with the negotiation, execution and
consummation of the swap.

**ANSWER:**

       Wachovia states that the allegations set forth in paragraph 73 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 73 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract)

       74.     Plaintiff repeats and realleges the allegations contained above, as if fully set forth
herein.

**ANSWER:**

       For its answer to paragraph 74 of the Complaint, Wachovia repeats and re-alleges its

responses to paragraphs 1 through 73 of the Complaint as if fully set forth herein.

       75.     Plaintiff has performed all of its obligations under the swap agreement.

**ANSWER:**

       Wachovia denies the allegations set forth in paragraph 75 of the Complaint.

       76.     Wachovia has breached the agreement, *inter alia*, by demanding the deposit of
collateral far in excess of the amount actually required.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 76 of the Complaint.


77.    Plaintiff has been thereby damaged in an amount to be determined at trial.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 77 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 77 of the Complaint.


**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

78.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth
herein.

**ANSWER:**

For its answer to paragraph 78 of the Complaint, Wachovia repeats and re-alleges its

responses to paragraphs 1 through 77 of the Complaint as if fully set forth herein.


79.    By gradually making oppressive margin demands without justification, Wachovia
acted in a manner so as to deprive Plaintiff of the right to receive the benefit of the swap
agreement, namely, the premium to be paid by Wachovia on the notional amount at a cost to
Plaintiff no greater than the opportunity cost of the collateral actually required to secure
counterparty risk and credit risk.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 79 of the Complaint.


80.    To the extent that the swap agreement gave Wachovia any discretion as
calculation agent in the determination of the credit risk of the reference obligation, the implied
covenant of good faith and fair dealing included a promise on the part of Wachovia not to act
arbitrarily or irrationally in exercising that discretion.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 80 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that an answer is required,

Wachovia admits that the parties were required to perform all obligations under the agreement in

good faith, avers that it did so and otherwise denies the allegations set forth in paragraph 80.


81.    By extracting collateral from Plaintiff far in excess of what Wachovia actually
required, Wachovia has damaged Plaintiff in an amount to be determined at trial.

**ANSWER:**

To the extent that an answer is required, Wachovia denies the allegations set forth in

paragraph 81 of the Complaint.


### AS AND FOR A SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

82.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth
herein.

**ANSWER:**

For its answer to paragraph 82 of the Complaint, Wachovia repeats and re-alleges its

responses to paragraphs 1 through 81 of the Complaint as if fully set forth herein.


83.    By extracting an unnecessarily large amount of collateral from Plaintiff,
Wachovia received money properly belonging to the Plaintiff.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 83 of the Complaint.


84.    Wachovia has benefited and is benefiting from the receipt of those funds and,
under principles of equity and good conscience, Wachovia should not be permitted to retain such

collateral in any amount beyond the sums required to offset the credit risk of the reference obligation.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 84 of the Complaint constitute legal conclusions to which no answer is required. To the extent that an answer is required, Wachovia denies the allegations set forth in paragraph 84 of the Complaint.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(For a Permanent Injunction/Specific Performance)**

85.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

**ANSWER:**

For its answer to paragraph 85 of the Complaint, Wachovia repeats and re-alleges its responses to paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.    Wachovia's breach of the swap agreement violates a present right of the Plaintiff.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 86 of the Complaint constitute legal conclusions to which no answer is required. To the extent that an answer is required, Wachovia denies the allegations set forth in paragraph 86 of the Complaint.

87.    If Plaintiff's liquidity continues to be impaired by Wachovia's unjustified retention of over $8,000,000 in collateral, Plaintiff will face serious and irreparable injury in the form of the loss of present and/or prospective investors, who will be chilled by the future impact of Wachovia's impairment of the fund's liquidity.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 87 of the Complaint constitute

legal conclusions to which no answer is required.  To the extent that a response is required,

Wachovia denies the allegations set forth in paragraph 87 of the Complaint insofar as they

purport to characterize any actions of Wachovia as inappropriate.  Wachovia is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in paragraph 87 of the Complaint.

88.    The equities are balanced in the Plaintiff's favor; Plaintiff has complied with its
obligations, whereas Wachovia has misled Plaintiff as to its intentions.

**ANSWER:**

To the extent that an answer is required, Wachovia denies the allegations set forth in

paragraph 88 of the Complaint.

89.    The public interest will not be injured in any way if Wachovia is forced to honor
its contract and remit the approximately $8,000,000 it has wrongfully demanded and withheld.

**ANSWER:**

Wachovia states that the allegations set forth in paragraph 89 of the Complaint call for a

legal conclusion for which no answer is required.  To the extent that an answer is required,

Wachovia denies the allegations set forth in paragraph 89 of the Complaint.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Conversion)

90.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth
herein.

**ANSWER:**

For its answer to paragraph 90 of the Complaint, Wachovia repeats and re-alleges its responses to paragraphs 1 through 89 of the Complaint as if fully set forth herein.

91.    Wachovia intentionally retained and then, beyond the scope of its authorization, disposed of the collateral properly belonging to Plaintiff.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 91 of the Complaint.

92.    The funds in question are specifically identifiable in that they were deposited solely to collateralize the swap and were required to be returned to Plaintiff.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 92 of the Complaint.

93.    Wachovia has failed and refused to comply with Plaintiff's demand that Wachovia return the excess collateral.

**ANSWER:**

Wachovia denies the allegations set forth in paragraph 93 of the Complaint.

# ADDITIONAL DEFENSES

1.    For its first affirmative defense, Wachovia alleges that the allegations of the Complaint, in whole or in part, fail to state a claim for which relief may be granted.

2.    For its second affirmative defense, Wachovia alleges that Plaintiff's claims are barred by the equitable doctrines of laches and estoppel.

3.    For its third affirmative defense, Wachovia alleges that Plaintiff's claims may be barred, in whole or in part, by the doctrine of unclean hands.

4.      For its fourth affirmative defense, Wachovia alleges that the rights and obligations of the parties are governed by the terms of the agreement between the parties, and, therefore, Plaintiff's' tort claims are precluded as a matter of law.

5.      For its fifth affirmative defense, Wachovia alleges that damages, if any, alleged to have been suffered by Plaintiff are subject to offset by damages Plaintiff caused to Wachovia as a result of Plaintiff's conduct.

6.      For its sixth affirmative defense, Wachovia alleges that damages, if any, alleged to have been suffered by Plaintiff were caused, in whole or in part, by the intentional conduct, negligent conduct, fault, or other culpable conduct of Plaintiff or others over whom Plaintiff exercised control.

7.      For its seventh affirmative defense, Wachovia alleges that, at all times, it has acted in accordance with the agreements, and, therefore, Plaintiff is not entitled to the judgment demanded.

8.      For its eighth affirmative defense, Wachovia alleges that Plaintiff has been paid all monies due and owing under the terms of the agreement.

9.      For its ninth affirmative defense, Wachovia alleges that, at all times, Plaintiff had equal or superior knowledge of all relevant matters, including:  (1) the rights and obligations of the agreement between the parties; (2) the value of the Credit Support Amount as defined by the ISDA Credit Support Annex; (3) the value of the Exposure as defined by the ISDA Credit Support Annex; and (4) the financial condition of the Reference Obligation as defined by the Confirmation.

10.     For its tenth affirmative defense, Wachovia alleges that Plaintiff has failed to mitigate any damages it has allegedly suffered.

11.    Wachovia hereby reserves the right to rely on such other additional defenses as may become available or apparent during discovery.

## WACHOVIA'S COUNTERCLAIM

## PARTIES

1.      Plaintiff CDO Plus is an Isle of Jersey exempted corporation having its principal place of business at Le Masurier House, St. Helier JE2 4YE Jersey, Channel Islands.

2.      CDO Plus was incorporated in Jersey on June 13, 2006.  Effective November 21, 2007, CDO Plus changed its name to VCG Special Opportunities Master Fund Limited.

3.      Wachovia Bank, National Association is a national banking association and a wholly owned subsidiary of Wachovia Corporation.  Wachovia Bank, National Association has its principal place of business located at 301 South College Street, Charlotte, North Carolina.

## Jurisdiction and Venue

4.      This court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy is over $75,000, exclusive of interest and costs.  The parties also consented to this Court's jurisdiction in the Agreement that is the subject of this dispute.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(d).  The parties also consented to this venue in the Agreement that is the subject of this dispute.

## Substantive Allegations

### Plaintiff is a Sophisticated Investor

6.      CDO Plus is a hedge fund with extensive experience investing in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

7.    CDO Plus asserts that "[i]nvestors in the fund will have the opportunity to invest in a CDO strategy "with a twist"; one fund that simultaneously earns returns from CDO debt/CDO equity <u>AND</u> participates in management fees from CDO deals."

8.    CDO Plus asserts that its "investment team members are all seasoned professionals with extensive experience in fixed income, structured products markets, and hedge funds."

9.    Upon information and belief, CDO Plus has entered into numerous derivative swap transactions.

10.    CDO Plus is managed and controlled by the Vanquish Capital Group.

11.    At all relevant times, rékon advisors llc has acted as CDO Plus's Investment Manger.

12.    Upon information and belief, Vanquish Capital Group has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

13.    Upon information and belief, rékon advisors llc has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

14.    Don Uderitz is a director of CDO Plus.

15.    Jorge Rodriquez-Lugo is a director of CDO Plus.

16.    Don Uderitz and Jorge Rodriquez-Lugo control rékon advisors llc.

17.    Don Uderitz and Jorge Rodriquez-Lugo are principals with Vanquish Capital Group.

18.    Robert H. Fasulo, Esq. is the General Counsel of Vanquish Capital Group.

19.     Don Uderitz has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

20.     Uderitz asserts that his experience includes, but is not limited to:  (i) "through a unique joint venture arrangement . . . direct[ing] all [] Tax Related Products at Wachovia Securities with primary responsibility for the portfolio management of tax related structured products;" (ii) serving as a "general partner[] and co-head of mortgage trading for the III Global Funds;" (iii) serving as a "general partner in Adams, Viner and Mosler, Ltd., a registered broker dealer;" and (iv) serving as a "Senior Vice President and Portfolio Manager for Ocwen Financial Corporation."

21.     Uderitz also considers himself "to be one of the foremost authorities on REMIC residuals."

22.     Jorge Rodriquez-Lugo has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

23.     Rodriquez-Lugo asserts that his experience includes, but is not limited to:  (i) serving as "a Senior Vice President at Lehman Brother's Private Investment Management Division;" (ii) working at "AVM promoting unique arbitrage opportunities using mortgage securities and derivatives to a select group of institutional clients in the U.S.;" and (iii) serving for 14 years as a "senior institutional mortgage and derivatives sales person at various Wall Street firms."

24.     Robert H. Fasulo, Esq. has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

WACHOVIA AND CDO PLUS ENTER INTO A DERIVATIVE SWAP TRANSACTION

25.     In the spring of 2007, Plaintiff approached Wachovia and sought to enter into a derivative swap transaction worth $10 million.

26.     In May 2007, CDO Plus entered into a Credit Derivative Transaction on Collateralized Debt Obligation with Pay-As-You-Go or Physical Settlement (the "Derivative Swap Transaction" or "Transaction") with Wachovia.

27.     Under the terms of the Transaction, Wachovia agreed to pay CDO Plus a fixed amount quarterly over the life of the Reference Obligation (in this case a collateralized debt obligation ("CDO")).

28.     In return, CDO Plus was required to pay Wachovia amounts in respect of certain events associated with the CDO, if and when those events occurred.

29.     If the investment was successful, and the underlying CDO thrived, CDO Plus stood to receive a quarterly fixed amount from Wachovia for the life of the CDO or until the parties agreed to terminate the swap.

30.     If the investment was unsuccessful, CDO Plus would have to pay Wachovia principal-related amounts up to $10 million, and interest-related amounts, to cover amounts in respect of the events associated with the underlying CDO.

31.     The Trade Date of the Transaction was May 21, 2007.

32.     The Effective Date of the Transaction was May 24, 2007.

33.     The terms of the Transaction were governed by four documents:  (1) an ISDA Master Agreement, dated May 4, 2007; (2) the Schedule to the Master Agreement dated as of May 4, 2007; (3) an ISDA Credit Support Annex dated as of May 4, 2007, which incorporates by reference the ISDA 1994 Credit Support Annex; and (4) a Confirmation dated May 30, 2007

(collectively, the "Agreement").  Copies of each of these documents are attached as Exhibits 1-4 to Wachovia's Counterclaim.

34.    The ISDA Master Agreement was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

35.    The Schedule to the Master Agreement was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

36.    The ISDA Credit Support Annex was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

37.    The Confirmation was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 30, 2007.

38.    The Agreement represented the entire understanding of the parties to the Derivative Swap Transaction.

39.    The terms of the Agreement are not ambiguous.

40.    The terms of the Agreement are not in conflict.

SIGNIFICANT TERMS OF THE AGREEMENT

41.    The Reference Obligation is defined in Section 1 of the Confirmation.

42.    The Initial Face Amount of the Agreement is USD $10,000,000.00.

43.    The Reference Obligation Notional Amount is defined in Section 1 of the Confirmation.

44.    Wachovia is the Fixed Rate Payer or Buyer in the Transaction.

45.    CDO Plus is the Floating Rate Payer or Seller in the Transaction.

46.    Wachovia's payment obligations under the Agreement are defined in Section 2 of the Confirmation.

47.     CDO Plus's payment obligations as the Floating Rate Payer are defined in Section 3 of the Confirmation.

48.     The Independent Amount is defined in Section 7 of the Confirmation.

49.     CDO Plus may be obligated to transfer collateral to Wachovia pursuant to the terms of the Agreement; specifically, paragraph 3 of the ISDA Credit Support Annex.

50.     Paragraph 3 of the ISDA Credit Support Annex specifies the amount of collateral to be posted under the Agreement.

51.     The Credit Support Amount is defined in Paragraph 3 and 13(b)(i)(C) of the ISDA Credit Support Annex.

52.     The Delivery Amount is defined in Paragraph 3 of the ISDA Credit Support Annex.

53.     The Return Amount is defined in Paragraph 3 of the ISDA Credit Support Annex.

54.     Wachovia is the Secured Party as defined by the Agreement.

55.     CDO Plus is the Pledgor as defined by the Agreement.

56.     Pursuant to Paragraph 3 of the ISDA Credit Support Annex a Secured Party may demand Transfers of Eligible Credit Support.

57.     Pursuant to Paragraph 3 of the ISDA Credit Support Annex a Pledgor may demand Return Amounts.

58.     Throughout the term of the Agreement, the Pledgor never made a demand for a Return Amount, as defined by Paragraph 3(b) of the ISDA Credit Support Annex.

59.     Under the terms of the Agreement Wachovia is the Valuation Agent.

60.     Pursuant to Paragraph 4(c) of the ISDA Credit Support Annex, the Valuation Agent determines Exposure and Value as defined by the ISDA Credit Support Annex.

61.    Under the terms of the Agreement, the Calculation Agent does not determine either Exposure or Value.

62.    Under the terms of the Agreement, the Calculation Agent does not determine the Credit Support Amount.

63.    Pursuant to paragraph 13(c)(ii) of the ISDA Credit Support Annex, Wachovia was entitled to mark the position on a daily basis.

64.    Paragraph 5 of the ISDA Credit Support Annex sets forth the obligations of the Parties if either party disputes the Valuation Agent's calculation of the Delivery Amount or Return Amount.

CDO PLUS'S FAILURE TO POST COLLATERAL

65.    Between May and November 2007, the market for CDOs declined.

66.    As the market for CDOs declined, so too did the market for credit protection tied to CDOs.

67.    Because the market value of CDO Plus's position in this transaction (as a credit protection seller) declined, Wachovia was entitled to require additional collateral from CDO Plus as security against CDO Plus's payment obligations under the contract.

68.    The declining market value for derivative swap transactions tied to CDOs reflected the fact that investors were no longer willing to make investments at terms similar to the Transaction entered into by CDO Plus.

69.    Paragraph 3 of the ISDA Credit Support Annex sets forth the terms and conditions under which Plaintiff may be obligated to provide Wachovia with collateral support for Plaintiff's obligations under the Agreement.

70.     Under the terms of Paragraph 3, Wachovia is entitled to demand collateral transfers from CDO Plus ("Notice of Collateral Demand" or "Collateral Call") when the Credit Support Amount exceeds the Value of all Posted Credit Support by $250,000.00.

71.     As the Valuation Agent, Wachovia was obligated to calculate Exposure.

72.     Exposure is defined in paragraph 12 of the ISDA Credit Support Annex.

73.     Wachovia, as Valuation Agent, calculated Exposure pursuant to the ISDA Credit Support Annex definition on a mark-to-market basis throughout the term of the Agreement.

74.     Calculating Exposure in a credit derivative swap transaction on a mark-to-market basis is required under the Agreement.

75.     Wachovia never calculated Exposure based upon the creditworthiness of CDO Plus.

76.     Pursuant to paragraph 3 and 13(b)(i)(C) of the ISDA Credit Support Annex, Wachovia used its calculation of Exposure to determine the Credit Support Amount.

77.     When the Credit Support Amount exceeded the Value of all Posted Credit Support (the amount of collateral Wachovia was holding on behalf of CDO Plus) by $250,000.00, Wachovia provided CDO Plus with a Notice of Collateral Demand, which stated the additional amount of collateral that CDO Plus was required to deposit with Wachovia.

78.     Beginning in the summer of 2007, CDO Plus began to object to Wachovia's Collateral Calls.  Specifically, CDO Plus objected to Wachovia's calculation of Exposure.

79.     CDO Plus understood Wachovia's Collateral Calls to be demands for Transfers of Eligible Credit Support, and not demands for payments of Floating Amounts.

80.     CDO Plus declined to invoke the Dispute Resolution provision of the Agreement for the first five months of the Transaction.

81.    Wachovia's calculations of Exposure were commercially reasonable.

<u>CDO PLUS BREACHES THE AGREEMENT</u>

82.    On November 21, 2007, Wachovia determined that the Credit Support Amount exceeded CDO Plus's Posted Credit Support by $550,000.00.  Wachovia then sent CDO Plus a Notice of Collateral Demand requesting that CDO Plus deposit with Wachovia the outstanding collateral amount.

83.    CDO Plus refused to transfer the additional collateral and, in a letter dated November 21, 2007, invoked the Dispute Resolution provision of the Agreement.

84.    Because Wachovia's Collateral Calls are generated automatically, Wachovia continued to issue a Collateral Call every business day that CDO Plus failed to transfer the additional collateral due under the Agreement.

85.    Under the terms of the Dispute Resolution provision of the Agreement, if a party disputes the Valuation Agent's calculation of the Delivery Amount or Return Amount, it may notify the counterparty and the Valuation Agent that the Valuation Agent's calculation is disputed.  The Valuation Agent then must recalculate the Exposure pursuant to the terms of paragraph 5 of the ISDA Credit Support Annex.

86.    Pursuant to the terms of this Dispute Resolution provision, on November 26, 2007, Wachovia obtained four actual quotations at mid-market from Reference Market-makers for the purposes of calculating the Market Quotation.  This valuation was the prescribed method for recalculating the Exposure pursuant to paragraph 5 of the ISDA Credit Support Annex.

87.    Based upon these quotations, Wachovia calculated the Market Quotation as 96.5 percent.

88.    A quotation of 96.5 percent of the Notional Amount, plus the Independent Amount, meant that Wachovia was entitled to hold an additional $1,490,000 from CDO Plus in collateral

89.    The Market Quotation revealed that Wachovia's November 21, 2007 determination of Exposure was below the Market Quotation.

90.    The Market Quotation established that Wachovia's November 21, 2007 determination of Exposure was commercially reasonable.

91.    On November 26, 2007, Wachovia provided CDO Plus with copies of the four quotations.

92.    On November 27, 2007, Wachovia issued a Collateral Call to CDO Plus based upon the revised valuation of Exposure.

93.    Under the terms of the Agreement, CDO Plus was required to meet the Collateral Call, by transferring to Wachovia the additional required collateral, by close of business on November 27, 2007.

94.    CDO Plus failed to transfer the additional required collateral.

95.    Instead, in an email dated November 27, 2007, CDO Plus stated:  [w]ith regard to your email and margin call that we received today, we do not consider that the dispute resolution process we recently invoked to be resolved to our satisfaction.  We are still in the process of securing our own market levels and analyzing the servicer's report.  As the process is not complete, we are not ready to conclude as to a course of action."

96.    Under the terms of the Agreement, CDO Plus was required to transfer the required collateral amount established by the Valuation Agent's revised calculation of Exposure, upon the demand made by Wachovia.

97.    CDO Plus breached the Agreement when it refused to transfer the additional collateral demanded by Wachovia on November 27, 2007.

98.    Under the terms of the Dispute Resolution provision of the Agreement, CDO Plus was not entitled to "seek [its] own market levels" as an alternative to the Valuation Agent's revised calculation; however, in an effort to remedy CDO Plus's breach of the Agreement, on November 27, 2007, Wachovia offered to review any additional market quotes that CDO Plus had obtained through its independent research.

99.    Wachovia requested that CDO Plus provide Wachovia with any additional market quotes by no later than 12 p.m., on Wednesday November 28, 2007.

100.    Despite Wachovia's efforts to remedy CDO Plus's breach of the Agreement, CDO Plus did not provide Wachovia with any additional market quotes.

101.    Indeed, rather than provide Wachovia with any objective evidence that the Valuation Agent's revised calculation was incorrect, CDO Plus filed the Complaint in this action.

102.    Upon information and belief, CDO Plus never obtained any additional market quotes that were materially different from the quotes obtained by the Valuation Agent when it conducted the Dispute Resolution procedure.

103.    CDO Plus's lawsuit against Wachovia constituted an Event of Default under the Agreement.

104.    On December 7, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Failure to Transfer. The Notice demanded that CDO Plus transfer the additional collateral due under the terms of the Agreement.

105.    CDO Plus again refused to transfer the additional required collateral.

106.   On December 10, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Events of Default, which outlined the basis for CDO Plus's default on the Agreement.

107.   Under the terms of the Agreement, CDO Plus's default gave rise to an Event of Default, which gave Wachovia the right to cause an early termination of the Agreement.

108.   On December 13, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Early Termination for Event of Default.  In that Notice, Wachovia designated December 18, 2007 as the Early Termination Date.

109.   On the Early Termination Date, Wachovia calculated the amount due and payable by CDO Plus, pursuant to the terms of the Agreement.

110.   On December 20, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Amount Due Following Early Termination.

111.   Based upon Wachovia's calculation, which was made in accordance with the terms of the Agreement, the amount due and payable to Wachovia was $9,999,000.00.

112.   Pursuant to the terms of the Agreement, CDO Plus was required to pay Wachovia $9,999,000.00, plus interest from the Early Termination Date.

113.   CDO Plus refused to pay the amount due as a result of the Early Termination of the Agreement.

114.   On December 27, 2007, Wachovia exercised its right to liquidate CDO Plus's Posted Collateral Amount (which was the sum of the Collateral Transferred to Wachovia, $8,920,000.00, plus Interest Amounts, $61,290.34) and apply the proceeds against the Settlement Amount due as a result of the Early Termination of the Agreement.

115.   The liquidation proceeds due and payable to Wachovia were $8,968,138.88 (which was the difference of the Posted Collateral Amount, $8,981,290.34, and interest due and payable to Wachovia at the Default Rate, $13,151.46).  Pursuant to paragraph 8 of the ISDA Credit Support Annex, Wachovia exercised its right to apply the proceeds against the Settlement Amount, $9,999,000.00.  After liquidation of the Posted Collateral against the Settlement Amount, Wachovia is still owed $1,030,861.12 (which was the difference of $9,999,000.00 and $8,968,138.88).

116.   On December 27, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with formal Notice of Amount Due Following Application of Collateral, and requested that CDO Plus make immediate payment of the remaining unpaid Settlement Amount, which was $1,030,861.12.

117.   The December 27, 2007 letter also placed CDO Plus on notice of its obligation, pursuant to paragraph 11 of the ISDA Credit Support Annex, to indemnify and hold harmless Wachovia for and against all reasonable out-of-pocket expenses, including legal fees incurred by Wachovia by reason of enforcement and protection of its rights under the Agreement.

118.   CDO Plus refused to pay the remaining unpaid Settlement Amount.

119.   CDO Plus also refused to meet its indemnity obligations under the Agreement.

120.   On January 30, 2008, the Reference Obligation experienced an Event of Default.

121.   On February 8, 2008, Moody's downgraded the Reference Obligation to "Ca".

## FIRST CAUSE OF ACTION
### (Breach of Contract)

122.   Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

123.   Wachovia and CDO Plus entered into the Agreement in May 2007.

124.   Wachovia performed all of its obligations under the Agreement.

125.   At all times, Wachovia acted in good faith and in a commercially reasonable manner.

126.   CDO Plus breached the Agreement by, among other things:  (1) refusing to transfer the Eligible Credit Support required under the Agreement; (2) refusing to pay the amount due following the Early Termination Event; (3) refusing to pay the remaining unpaid Settlement Amount, with interest thereon; and (4) refusing to indemnify Wachovia pursuant to the terms of the Agreement.

127.   In addition, filing the Complaint in this action constituted an Event of Default pursuant to Section 5 of the ISDA Master.

128.   As a result of CDO Plus's breach of the Contract, Wachovia has been damaged in an amount to be determined at trial.

## RESERVATION OF RIGHTS AND NON-WAIVER

Wachovia reserves the right to amend this Answer and Counterclaims and to assert such other and additional claims and defenses that are warranted by disclosure or by discovery in this matter.

WHEREFORE, Wachovia respectfully requests that the Court enter a judgment:

(i)     awarding Wachovia $1,030,861.12, with interest thereon, plus prejudgment interest;

(ii)    awarding Wachovia all costs associated with collection of amounts due under the Agreement, including, but not limited to, attorneys' fees; and

(iii)   such other and further relief as the Court may deem proper.


Date:   New York, New York
        February 15, 2008

                        HUNTON & WILLIAMS LLP

                        By: /s/ Shawn Patrick Regan
                            Shawn Patrick Regan
                            200 Park Avenue, 52nd Floor
                            New York, New York  10166
                            (212) 309-1000
                            sregan@hunton.com

                            -and-

                            Patrick L. Robson
                            HUNTON & WILLIAMS LLP
                            Bank of America Plaza
                            101 S. Tyson Street, Suite 3500
                            Charlotte, North Carolina  28280
                            (704) 378-4700
                            probson@hunton.com

                            *Attorneys for Defendant*
                            *Wachovia Bank, National Association*

## DECLARATION OF SERVICE

Raymond E. Galbraith, hereby declares under penalty of perjury, pursuant to 28 U.S.C.

§ 1746, that:

I am a Litigation Paralegal at the law firm of Hunton & Williams LLP, attorneys for

Defendant Wachovia Bank, National Association.

That on February 15, 2008, I served a true copy of the attached Answer and

Counterclaim on counsel of record listed below via the Court's ECF System.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 15, 2008.

/s/ Raymond E. Galbraith<br>
Raymond E. Galbraith

TO:   Terence W. McCormick, Esq.
Steven Glen Mintz, Esq.
Mintz & Gold LLP
470 Park Avenue South
10th Floor
New York, NY  10016-6819

*Attorneys for Plaintiff*
*CDO Plus Master Fund Ltd.*