MINTZ & GOLD LLP
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CDO PLUS MASTER FUND LTD.,      :
                                 :     **07 Civ. 11078 (LTS)(AJP)**
               Plaintiff,    :
                                 :     **ANSWER TO COUNTERCLAIM**
       - against -         :
                                 :
WACHOVIA BANK,             :     **ECF CASE**
NATIONAL ASSOCIATION,    :
                                 :
               Defendant.  :
-----------------------------------------------------------X

      Plaintiff, CDO Plus Master Fund Ltd., ("Plaintiff" or "CDO Plus"), by its attorneys,

Mintz & Gold LLP, as and for its Answer and Affirmative Defenses to Defendant's

Counterclaim herein, responds and alleges as follows:

      **1.     Plaintiff CDO Plus is an Isle of Jersey exempted corporation having its**

**principal place of business at Le Masurier House, St. Helier JE2 4YE Jersey, Channel**

**Islands.**

      <u>**ANSWER**</u>**:**

Plaintiff admits the allegations set forth in paragraph 1 of the Counterclaim.

      **2.     CDO Plus was incorporated in Jersey on June 13, 2006.  Effective November**

**21, 2007, CDO Plus changed its name to VCG Special Opportunities Master Fund**

Limited.

> **<u>ANSWER</u>:**

Plaintiff admits the allegations set forth in paragraph 2 of the Counterclaim.

> **3.** **Wachovia Bank, National Association is a national banking association and a wholly-owned subsidiary of Wachovia Corporation. Wachovia Bank, National Association has its principal place of business located at 301 South College Street, Charlotte, North Carolina.**

> **<u>ANSWER</u>:**

Plaintiff admits the allegations set forth in paragraph 3 of the Counterclaim.

## <u>Jurisdiction and Venue</u>

> **4.** **This court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy is over $75,000, exclusive of interest and costs. The parties also consented to this Court's jurisdiction in the Agreement that is the subject of this dispute.**

> **<u>ANSWER</u>:**

Plaintiff admits the allegations set forth in paragraph 4 of the Counterclaim.

> **5.** **Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(d).  The parties also consented to this venue in the Agreement that is the subject of this dispute.**

> **<u>ANSWER</u>:**

Plaintiff admits the allegations set forth in paragraph 5 of the Counterclaim.

## <u>Substantive Allegations</u>

### <u>Plaintiff is a Sophisticated Investor</u>

> **6.** **CDO Plus is a hedge fund with extensive experience investing in**

collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 6 of the Counterclaim.

7.    **CDO Plus asserts that "[i]nvestors in the fund will have the opportunity to invest in a CDO strategy "with a twist"; one fund that simultaneously earns returns from CDO debt/CDO equity <u>AND</u> participates in management fees from CDO deals."**

**ANSWER:**

In response to the allegation of paragraph 7 of the Counterclaim, Plaintiff admits that it has supplied written disclosure or marketing language in similar terms.

8.    **CDO Plus asserts that its "investment team members are all seasoned professionals with extensive experience in fixed income, structured products markets, and hedge funds."**

**ANSWER:**

In response to the allegation of paragraph 8 of the Counterclaim, Plaintiff admits that it has supplied written disclosure or marketing language in similar terms.

9.    **Upon information and belief, CDO Plus has entered into numerous derivative swap transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 9 of the Counterclaim.

10.    **CDO Plus is managed and controlled by the Vanquish Capital Group.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 10 of the Counterclaim, except admits that Vanquish Advisors LLC is the investment manager of CDO Plus (now known as

VCG Special Opportunities Master Fund Ltd.

**11.     At all relevant times, rékon advisors llc has acted as CDO Plus's Investment Manager.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 11 of the Counterclaim, except notes that rekon advisors llc is now known as Vanquish Advisors LLC.

**12.     Upon information and belief, Vanquish Capital Group has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 12 of the Counterclaim.

**13.     Upon information and belief, rékon advisors llc has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 13 of the Counterclaim.

**14.     Don Uderitz is a director of CDO Plus.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 14 of the Counterclaim.

**15.     Jorge Rodriguez-Lugo is a director of CDO Plus.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 15 of the Counterclaim.

**16.     Don Uderitz and Jorge Rodriquez-Lugo control rékon advisors llc.**

**ANSWER:**

The allegations of paragraph 16 of the Counterclaim set forth a legal conclusion as to which no responsive pleading is required.

**17.    Don Uderitz and Jorge Rodriquez-Lugo are principals with Vanquish Capital Group.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 17 of the Counterclaim.

**18.    Robert H. Fasulo, Esq. is the General Counsel of Vanquish Capital Group.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 18 of the Counterclaim.

**19.    Don Uderitz has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 19 of the Counterclaim.

**20.    Uderitz asserts that his experience includes, but is not limited to: (i) "through a unique joint venture arrangement . . . direct[ing] all [] Tax Related Products at Wachovia Securities with primary responsibility for the portfolio management of tax related structured products;" (ii) serving as a "general partner[] and co-head of mortgage trading for the III Global Funds;" (iii) serving as a "general partner in Adams, Viner and Mosler, Ltd., a registered broker dealer;" and (iv) serving as a "Senior Vice President and Portfolio Manager for Ocwen Financial Corporation."**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 20 of the Counterclaim, except admits that it has supplied written disclosure in similar terms regarding Mr. Uderitz.

21.     **Uderitz also considers himself "to be one of the foremost authorities on REMIC residuals."**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 21 of the Counterclaim, except admits that it has supplied written disclosure reporting that some in the industry regard Mr. Uderitz to be among the foremost authorities on REMIC residuals.

22.     **Jorge Rodriquez-Lugo has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 22 of the Counterclaim.

23.     **Rodriquez-Lugo asserts that his experience includes, but is not limited to: (i) serving as "a Senior Vice President at Lehman Brother's Private Investment Management Division;" (ii) working at "AVM promoting unique arbitrage opportunities using mortgage securities and derivatives to a select group of institutional clients in the U.S.;" and (iii) serving for 14 years as a "senior institutional mortgage and derivatives sales person at various Wall Street firms."**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 23 of the Counterclaim, except admits that it has supplied written disclosure in the past containing similar descriptions of Mr. Rodriguez's experience.

24.     **Robert H. Fasulo, Esq. has extensive experience managing investments in collateralized debt obligations, derivative swap transactions, and other sophisticated commercial transactions.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 24 of the Counterclaim.

WACHOVIA AND CDO PLUS ENTER INTO A DERIVATIVE SWAP TRANSACTION

**25.     In the spring of 2007, Plaintiff approached Wachovia and sought to enter into a derivative swap transaction worth $10 million.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 25 of the Counterclaim.

**26.     In May 2007, CDO Plus entered into a Credit Derivative Transaction on Collateralized Debt Obligation with Pay-As-You-Go or Physical Settlement (the "Derivative Swap Transaction" or "Transaction") with Wachovia.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 26 of the Counterclaim.

**27.     Under the terms of the Transaction, Wachovia agreed to pay CDO Plus a fixed amount quarterly over the life of the Reference Obligation (in this case a collateralized debt obligation ("CDO")).**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 27 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

**28.     In return, CDO Plus was required to pay Wachovia amounts in respect of certain events associated with the CDO, if and when those events occurred.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 28 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant

transaction documents for a complete and accurate statement of their contents.

**29.    If the investment was successful, and the underlying CDO thrived, CDO Plus stood to receive a quarterly fixed amount from Wachovia for the life of the CDO or until the parties agreed to terminate the swap.**

**<u>ANSWER</u>:**

Plaintiff responds that the allegations of paragraph 29 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

**30.    If the investment was unsuccessful, CDO Plus would have to pay Wachovia principal-related amounts up to $10 million, and interest-related amounts, to cover amounts in respect of the events associated with the underlying CDO.**

**<u>ANSWER</u>:**

To the extent that the allegations of paragraph 30 purport to characterize the written agreement between the parties, Plaintiff respectfully refers the Court to the governing documents of the swap transaction at issue in this action.

**31.    The Trade Date of the Transaction was May 21, 2007.**

**<u>ANSWER</u>:**

Plaintiff admits the allegations of paragraph 31 of the Counterclaim.

**32.    The Effective Date of the Transaction was May 24, 2007.**

**<u>ANSWER</u>:**

Plaintiff admits the allegations of paragraph 32 of the Counterclaim.

**33.    The terms of the Transaction were governed by four documents: (1) an ISDA Master Agreement, dated May 4, 2007; (2) the Schedule to the Master Agreement dated as of May 4, 2007; (3) an ISDA Credit Support Annex dated as of May 4, 2007, which**

incorporates by reference the ISDA 1994 Credit Support Annex; and (4) a Confirmation dated May 30, 2007 (collectively, the "Agreement"). Copies of each of these documents are attached as Exhibits 1-4 to Wachovia's Counterclaim.

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 33 of the Counterclaim, although notes that none of the documents referenced therein are actually attached and filed as Exhibits to Wachovia's Counterclaim.

34.    The ISDA Master Agreement was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

**ANSWER:**

Plaintiff admits that Donald S. Uderitz executed an ISDA Master Agreement dated as of May 4, 2007, and otherwise denies knowledge or information sufficient to form a belief as to when the document was executed.

35.    The Schedule to the Master Agreement was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

**ANSWER:**

In response to the allegations set forth in paragraph 35 of the Counterclaim, Plaintiff admits that Donald S. Uderitz executed a Schedule to the ISDA Master Agreement, also dated as of May 4, 2007, and otherwise denies knowledge or information sufficient to form a belief as to when the document was executed.

36.    The ISDA Credit Support Annex was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 4, 2007.

**ANSWER:**

In response to the allegations set forth in paragraph 36 of the Counterclaim, Plaintiff

admits that Donald S. Uderitz executed an ISDA Credit Support Annex dated as of May 4, 2007, and otherwise denies knowledge or information sufficient to form a belief as to when the document was executed.

37.    **The Confirmation was executed by Don Uderitz on behalf of CDO Plus Master Fund, Ltd. on or about May 30, 2007.**

**ANSWER:**

Plaintiff admits the allegations of paragraph 37 of the Counterclaim.

38.    **The Agreement represented the entire understanding of the parties to the Derivative Swap Transaction.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 38 of the Counterclaim set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

39.    **The terms of the Agreement are not ambiguous.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 39 of the Counterclaim set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

40.    **The terms of the Agreement are not in conflict.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 40 of the Counterclaim.

SIGNIFICANT TERMS OF THE AGREEMENT

**41.    The Reference Obligation is defined in Section 1 of the Confirmation.**

**ANSWER:**

Plaintiff admits that the Confirmation supplies a definition of the Reference Obligation in Section 1 and respectfully refers the Court to the Confirmation for its contents.

**42.    The Initial Face Amount of the Agreement is USD $10,000,000.00.**

**ANSWER:**

Plaintiff admits the allegation set forth in paragraph 42 of the Counterclaim.

**43.    The Reference Obligation Notional Amount is defined in Section 1 of the Confirmation.**

**ANSWER:**

Plaintiff admits that the Confirmation supplies a definition of the Reference Obligation Notional Amount in Section 1 and respectfully refers the Court to the Confirmation for its contents.

**44.    Wachovia is the Fixed Rate Payer or Buyer in the Transaction.**

**ANSWER:**

Plaintiff admits the allegation set forth in paragraph 44 of the Counterclaim.

**45.    CDO Plus is the Floating Rate Payer or Seller in the Transaction.**

**ANSWER:**

Plaintiff admits the allegation set forth in paragraph 45 of the Counterclaim.

**46.    Wachovia's payment obligations under the Agreement are defined in Section 2 of the Confirmation.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 46 set forth a legal conclusion as to

which no responsive pleading is required and respectfully refers the Court to the relevant

transaction documents for a complete and accurate statement of their contents.

47.    **CDO Plus's payment obligations as the Floating Rate Payer are defined in**

**Section 3 of the Confirmation.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 47 set forth a legal conclusion as to

which no responsive pleading is required and respectfully refers the Court to the relevant

transaction documents for a complete and accurate statement of their contents.

48.    **The Independent Amount is defined in Section 7 of the Confirmation.**

**ANSWER:**

Plaintiff admits that the Confirmation supplies a definition of the Independent Amount

in Section 7 and respectfully refers the Court to the Confirmation for its contents.

49.    **CDO Plus may be obligated to transfer collateral to Wachovia pursuant to the**

**terms of the Agreement; specifically, paragraph 3 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 49 of the Counterclaim.

50.    **Paragraph 3 of the ISDA Credit Support Annex specifies the amount of**

**collateral to be posted under the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 50 of the Counterclaim.

51.    **The Credit Support Amount is defined in Paragraph 3 and 13(b)(i)(C) of the**

**ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 51 set forth a legal conclusion as to

which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**52.     The Delivery Amount is defined in Paragraph 3 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 52 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**53.     The Return Amount is defined in Paragraph 3 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 53 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**54.     Wachovia is the Secured Party as defined by the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 54 of the Counterclaim.

**55.     CDO Plus is the Pledgor as defined by the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 55 of the Counterclaim.

**56.    Pursuant to Paragraph 3 of the ISDA Credit Support Annex a Secured Party may demand Transfers of Eligible Credit Support.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 56 of the Counterclaim.

**57.    Pursuant to Paragraph 3 of the ISDA Credit Support Annex a Pledgor may demand Return Amounts.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 57 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**58.    Throughout the term of the Agreement, the Pledgor never made a demand for a Return Amount, as defined by Paragraph 3(b) of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 58 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies the allegation that it failed to demand the return of sums it had deposited with Wachovia.

**59.    Under the terms of the Agreement Wachovia is the Valuation Agent.**

**ANSWER:**

14

Plaintiff responds that the allegations of paragraph 59 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**60.     Pursuant to Paragraph 4(c) of the ISDA Credit Support Annex, the Valuation Agent determines Exposure and Value as defined by the ISDA Credit Support Annex.**

**<u>ANSWER</u>:**

Plaintiff responds that the allegations of paragraph 60 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

**61.     Under the terms of the Agreement, the Calculation Agent does not determine either Exposure or Value.**

**<u>ANSWER</u>:**

Plaintiff responds that the allegations of paragraph 61 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents.

**62.     Under the terms of the Agreement, the Calculation Agent does not determine the Credit Support Amount.**

**<u>ANSWER</u>:**

Plaintiff responds that the allegations of paragraph 62 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support

Annex.

63.      Pursuant to paragraph 13(c)(ii) of the ISDA Credit Support Annex, Wachovia was entitled to mark the position on a daily basis.

**ANSWER:**

Plaintiff responds that the allegations of paragraph 63 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents. Plaintiff otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

64.      Paragraph 5 of the ISDA Credit Support Annex sets forth the obligations of the Parties if either party disputes the Valuation Agent's calculation of the Delivery Amount or Return Amount.

**ANSWER:**

Plaintiff responds that the allegations in paragraph 64 of the Counterclaim set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

CDO PLUS'S FAILURE TO POST COLLATERAL

65.      Between May and November 2007, the market for CDOs declined.

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 65 of the Counterclaim.

66.      As the market for CDOs declined, so too did the market for credit

protection tied to CDOs.

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 66 of the Counterclaim.

67.    **Because the market value of CDO Plus's position in this transaction (as a credit protection seller) declined, Wachovia was entitled to require additional collateral from CDO Plus as security against CDO Plus's payment obligations under the contract.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 67 of the Counterclaim.

68.    **The declining market value for derivative swap transactions tied to CDOs reflected the fact that investors were no longer willing to make investments at terms similar to the Transaction entered into by CDO Plus.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 68 of the Counterclaim.

69.    **Paragraph 3 of the ISDA Credit Support Annex sets forth the terms and conditions under which Plaintiff may be obligated to provide Wachovia with collateral support for Plaintiff's obligations under the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 69 of the Counterclaim.

70.    **Under the terms of Paragraph 3, Wachovia is entitled to demand collateral transfers from CDO Plus ("Notice of Collateral Demand" or "Collateral Call") when the Credit Support Amount exceeds the Value of all Posted Credit Support by $250,000.00.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 70 of the Counterclaim.

**71.    As the Valuation Agent, Wachovia was obligated to calculate Exposure.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 71 of the Counterclaim.

**72.    Exposure is defined in paragraph 12 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 72 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**73.    Wachovia, as Valuation Agent, calculated Exposure pursuant to the ISDA Credit Support Annex definition on a mark-to-market basis throughout the term of the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 73 of the Counterclaim.

**74.    Calculating Exposure in a credit derivative swap transaction on a mark-to-market basis is required under the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 74 of the Counterclaim.

**75.    Wachovia never calculated Exposure based upon the creditworthiness of CDO Plus.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 75 of the Counterclaim.

76.    **Pursuant to paragraph 3 and 13(b)(i)(C) of the ISDA Credit Support Annex, Wachovia used its calculation of Exposure to determine the Credit Support Amount.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 76 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

77.    **When the Credit Support Amount exceeded the Value of all Posted Credit Support (the amount of collateral Wachovia was holding on behalf of CDO Plus) by $250,000.00, Wachovia provided CDO Plus with a Notice of Collateral Demand, which stated the additional amount of collateral that CDO Plus was required to deposit with Wachovia.**

**ANSWER:**

Plaintiff denies the allegations of paragraph 77 of the Counterclaim, except admits that Wachovia delivered one or more documents titled as Notice of Collateral Demand.

78.    **Beginning in the summer of 2007, CDO Plus began to object to Wachovia's Collateral Calls. Specifically, CDO Plus objected to Wachovia's calculation of Exposure.**

**ANSWER:**

Plaintiff denies the allegations of paragraph 78 of the Counterclaim except admits that, beginning in the summer of 2007, Plaintiff began to object to Wachovia's demands for collateral in excess of the Independent Amount and questioned Wachovia's purported calculation of the value of the Reference Obligation.

79.    **CDO Plus understood Wachovia's Collateral Calls to be demands for**

**Transfers of Eligible Credit Support, and not demands for payments of Floating**

**Amounts.**

    **ANSWER:**

Plaintiff denies the allegations set forth in paragraph 79 of the Counterclaim.

    **80.**    **CDO Plus declined to invoke the Dispute Resolution provision of the**

**Agreement for the first five months of the Transaction.**

    **ANSWER:**

Plaintiff admits the allegations set forth in paragraph 80 of the Counterclaim.

    **81.**    **Wachovia's calculations of Exposure were commercially reasonable.**

    **ANSWER:**

Plaintiff denies the allegations set forth in paragraph 81 of the Counterclaim.

CDO PLUS BREACHES THE AGREEMENT

    **82.**    **On November 21, 2007, Wachovia determined that the Credit Support**

**Amount exceeded CDO Plus's Posted Credit Support by $550,000.00. Wachovia then sent**

**CDO Plus a Notice of Collateral Demand requesting that CDO Plus deposit with Wachovia**

**the outstanding collateral amount.**

    **ANSWER:**

Plaintiff denies the allegations set forth in paragraph 82 of the Counterclaim, except

admits that on or about November 21, 2007, Wachovia transmitted a demand for additional

collateral to Plaintiff.

    **83.**    **CDO Plus refused to transfer the additional collateral and, in a letter dated**

**November 21, 2007, invoked the Dispute Resolution provision of the Agreement.**

    **ANSWER:**

Plaintiff admits the allegations set forth in paragraph 83 of the Counterclaim.

**84.     Because Wachovia's Collateral Calls are generated automatically, Wachovia continued to issue a Collateral Call every business day that CDO Plus failed to transfer the additional collateral due under the Agreement.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 84 of the Counterclaim.

**85.     Under the terms of the Dispute Resolution provision of the Agreement, if a party disputes the Valuation Agent's calculation of the Delivery Amount or Return Amount, it may notify the counterparty and the Valuation Agent that the Valuation Agent's calculation is disputed. The Valuation Agent then must recalculate the Exposure pursuant to the terms of paragraph 5 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff responds that the allegations of paragraph 85 set forth a legal conclusion as to which no responsive pleading is required and respectfully refers the Court to the relevant transaction documents for a complete and accurate statement of their contents, and otherwise denies that it has any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**86.     Pursuant to the terms of this Dispute Resolution provision, on November 26, 2007, Wachovia obtained four actual quotations at mid-market from Reference Market-makers for the purposes of calculating the Market Quotation. This valuation was the prescribed method for recalculating the Exposure pursuant to paragraph 5 of the ISDA Credit Support Annex.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 86 of the Counterclaim, except

denies that it had any obligation to pay credit support pursuant to the ISDA Credit Support Annex.

**87.    Based upon these quotations, Wachovia calculated the Market Quotation as 96.5 percent.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Counterclaim.

**88.    A quotation of 96.5 percent of the Notional Amount, plus the Independent Amount, meant that Wachovia was entitled to hold an additional $1,490,000 from CDO Plus in collateral.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 88 of the Counterclaim.

**89.    The Market Quotation revealed that Wachovia's November 21, 2007 determination of Exposure was below the Market Quotation.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 89 of the Counterclaim.

**90.    The Market Quotation established that Wachovia's November 21, 2007 determination of Exposure was commercially reasonable.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 90 of the Counterclaim.

**91.    On November 26, 2007, Wachovia provided CDO Plus with copies of the four quotations.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 91 of the Counterclaim.

92.     **On November 27, 2007, Wachovia issued a Collateral Call to CDO Plus**
**based upon the revised valuation of Exposure.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of
the allegations set forth in paragraph 92 of the Counterclaim, except admits that on or around
November 27, 2007, Wachovia yet again issued an improper demand for collateral.

93.     **Under the terms of the Agreement, CDO Plus was required to meet the**
**Collateral Call, by transferring to Wachovia the additional required collateral, by close of**
**business on November 27, 2007.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 93 of the Counterclaim.

94.     **CDO Plus failed to transfer the additional required collateral.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 94 of the Counterclaim.

95.     **Instead, in an email dated November 27, 2007, CDO Plus stated: [w]ith**
**regard to your email and margin call that we received today, we do not consider that the**
**dispute resolution process we recently invoked to be resolved to our satisfaction. We are**
**still in the process of securing our own market levels and analyzing the servicer's**
**report. As the process is not complete, we are not ready to conclude as to a course of**
**action."**

**ANSWER:**

Plaintiff admits that it sent an e-mail to Wachovia on November 27, 2007 that stated
the above quoted language.

96.     **Under the terms of the Agreement, CDO Plus was required to transfer**

the required collateral amount established by the Valuation Agent's revised calculation of Exposure, upon the demand made by Wachovia.

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 96 of the Counterclaim.

97.    **CDO Plus breached the Agreement when it refused to transfer the additional collateral demanded by Wachovia on November 27, 2007.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 97 of the Counterclaim.

98.    **Under the terms of the Dispute Resolution provision of the Agreement, CDO Plus was not entitled to "seek [its] own market levels" as an alternative to the Valuation Agent's revised calculation; however, in an effort to remedy CDO Plus's breach of the Agreement, on November 27, 2007, Wachovia offered to review any additional market quotes that CDO Plus had obtained through its independent research.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 98 of the Counterclaim.

99.    **Wachovia requested that CDO Plus provide Wachovia with any additional market quotes by no later than 12 p.m., on Wednesday November 28, 2007.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 99 of the Counterclaim.

100.    **Despite Wachovia's efforts to remedy CDO Plus's breach of the Agreement, CDO Plus did not provide Wachovia with any additional market quotes.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 100 of the Counterclaim.

101.    Indeed, rather than provide Wachovia with any objective evidence that the Valuation Agent's revised calculation was incorrect, CDO Plus filed the Complaint in this action.

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 101 of the Counterclaim, except admits that Plaintiff brought the instant action to remedy Wachovia's persistent and unauthorized demands for collateral beyond the sums required to be paid in the form of the Independent Amount.

102.    Upon information and belief, CDO Plus never obtained any additional market quotes that were materially different from the quotes obtained by the Valuation Agent when it conducted the Dispute Resolution procedure.

**ANSWER:**

Plaintiff denies the allegations of paragraph 102 of the Counterclaim.

103.    CDO Plus's lawsuit against Wachovia constituted an Event of Default under the Agreement.

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 103 of the Counterclaim.

104.    On December 7, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Failure to Transfer. The Notice demanded that CDO Plus transfer the additional collateral due under the terms of the Agreement.

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 104 of the Counterclaim, except admits that Wachovia wrongfully demanded that Plaintiff deposit additional sums as collateral

beyond the sums required to be paid in the form of the Independent Amount.

**105.    CDO Plus again refused to transfer the additional required collateral.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 105 of the Counterclaim.

**106.    On December 10, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Events of Default, which outlined the basis for CDO Plus's default on the Agreement.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 106 of the Counterclaim, except denies that Plaintiff was in fact in default under the swap agreement.

**107.    Under the terms of the Agreement, CDO Plus's default gave rise to an Event of Default, which gave Wachovia the right to cause an early termination of the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 107 of the Counterclaim.

**108.    On December 13, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Early Termination for Event of Default. In that Notice, Wachovia designated December 18, 2007 as the Early Termination Date.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 108 of the Counterclaim, except admits that Wachovia unilaterally and without justification purported to terminate the swap agreement.

**109.    On the Early Termination Date, Wachovia calculated the amount due and payable by CDO Plus, pursuant to the terms of the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 109 of the Counterclaim.

**110.    On December 20, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with a formal Notice of Amount Due Following Early Termination.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 110 of the Counterclaim, except admits that Wachovia unilaterally and without justification purported to terminate the swap agreement.

**111.    Based upon Wachovia's calculation, which was made in accordance with the terms of the Agreement, the amount due and payable to Wachovia was $9,999,000.00.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 111 of the Counterclaim.

**112.    Pursuant to the terms of the Agreement, CDO Plus was required to pay Wachovia $9,999,000.00, plus interest from the Early Termination Date.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 112 of the Counterclaim.

**113.    CDO Plus refused to pay the amount due as a result of the Early Termination of the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 113 of the Counterclaim.

**114.    On December 27, 2007, Wachovia exercised its right to liquidate CDO Plus's Posted Collateral Amount (which was the sum of the Collateral Transferred to Wachovia, $8,920,000.00, plus Interest Amounts, $61,290.34) and apply the proceeds against the Settlement Amount due as a result of the Early Termination of the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 114 of the Counterclaim, except admits that Wachovia improperly exercised a set-off against the sums that it had improperly collected and maintained as collateral.

**115.    The liquidation proceeds due and payable to Wachovia were $8,968,138.88 (which was the difference of the Posted Collateral Amount, $8,981,290.34, and interest due and payable to Wachovia at the Default Rate, $13,151.46). Pursuant to paragraph 8 of the ISDA Credit Support Annex, Wachovia exercised its right to apply the proceeds against the Settlement Amount, $9,999,000.00. After liquidation of the Posted Collateral against the Settlement Amount, Wachovia is still owed $1,030,861.12 (which was the difference of $9,999,000.00 and $8,968,138.88).**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 115 of the Counterclaim.

**116.    On December 27, 2007, pursuant to the terms of the Agreement, Wachovia provided CDO Plus with formal Notice of Amount Due Following Application of Collateral, and requested that CDO Plus make immediate payment of the remaining unpaid Settlement Amount, which was $1,030,861.12.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 116 of the Counterclaim, except admits that Wachovia demanded that Plaintiff pay Wachovia the sum of $1,030,861.12 in violation of the swap agreement.

**117.    The December 27, 2007 letter also placed CDO Plus on notice of its obligation, pursuant to paragraph 11 of the ISDA Credit Support Annex, to indemnify and hold harmless Wachovia for and against all reasonable out-of-pocket expenses, including**

**legal fees incurred by Wachovia by reason of enforcement and protection of its rights under the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 117 of the Counterclaim, and otherwise respectfully refers the Court to the letter referenced therein for a complete and accurate statement of its contents.

**118.    CDO Plus refused to pay the remaining unpaid Settlement Amount.**

**ANSWER:**

In response to the allegations set forth in paragraph 118 of the Counterclaim, Plaintiff admits that it has refused to pay the sums purportedly demanded as the "Settlement Amount," but denies that Wachovia had any right to close out and settle the swap.

**119.    CDO Plus also refused to meet its indemnity obligations under the Agreement.**

**ANSWER:**

Plaintiff denies the allegation set forth in paragraph 119 of the Counterclaim.

**120.    On January 30, 2008, the Reference Obligation experienced an Event of Default.**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 120 of the Counterclaim.

**121.    On February 8, 2008, Moody's downgraded the Reference Obligation to "Ca".**

**ANSWER:**

Plaintiff denies knowledge or information sufficient to form a belief as to the truth of

the allegations set forth in paragraph 121 of the Counterclaim.

## FIRST CAUSE OF ACTION

**122.    [Counterclaim] - Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.**

**ANSWER:**

Plaintiff/Counterclaim Defendant repeats and realleges the responses given to each and every one of the paragraphs of the Counterclaim set forth above, as if fully set forth herein.

**123.    Wachovia and CDO Plus entered into the Agreement in May 2007.**

**ANSWER:**

Plaintiff admits the allegations set forth in paragraph 123 of the Counterclaim, except responds that to the extent that Wachovia defines the "Agreement" as including an obligation to post Credit Support pursuant to the ISDA Credit Support Annex, Plaintiff denies that such an obligation existed, inasmuch as the Confirmation supersedes the ISDA Credit Support Annex.

**124.    Wachovia performed all of its obligations under the Agreement.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 124 of the Counterclaim.

**125.    At all times, Wachovia acted in good faith and in a commercially reasonable manner.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 125 of the Counterclaim.

**126.    CDO Plus breached the Agreement by, among other things: (1) refusing to transfer the Eligible Credit Support required under the Agreement; (2) refusing to pay the amount due following the Early Termination Event; (3) refusing to pay the remaining**

unpaid Settlement Amount, with interest thereon; and (4) refusing to indemnify Wachovia

pursuant to the terms of the Agreement.

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 126 of the Counterclaim.

127.    **In addition, filing the Complaint in this action constituted an Event of Default**

**pursuant to Section 5 of the ISDA Master.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 127 of the Counterclaim.

128.    **As a result of CDO Plus's breach of the Contract, Wachovia has been**

**damaged in an amount to be determined at trial.**

**ANSWER:**

Plaintiff denies the allegations set forth in paragraph 128 of the Counterclaim.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

The allegations of the Counterclaim, in whole or in part, fail to state a claim for which

relief may be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

Plaintiff's performance under the swap agreement should be excused on the ground of

mistake, namely, that Plaintiff intended only to secure Wachovia against an actual credit

default on the part of the reference obligation, and not against daily fluctuations in the mark-

to-market valuation of the reference obligation.  Plaintiff's mistake was excusable because

Wachovia did not alert Plaintiff of its intentions to demand the payment of sums other than

Floating Payments when the Confirmation Letter was executed, as the result of which it would

be unconscionable to require Plaintiff to pay Wachovia the notional amount of the reference

obligation.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

The damages, if any, alleged to have been suffered by Wachovia are subject to offset by damages Wachovia caused to Plaintiff as the result of Wachovia's fraud and breach of the swap agreement.  As more fully alleged in the Amended Complaint, Wachovia and its traders induced Plaintiff to enter into the swap by misrepresenting its intention to allow Plaintiff to collateralize the swap through the payment of an Independent Amount no greater than $750,000, with the undisclosed intention of securing the position later by demanding greater amounts of collateral.  But for Wachovia's misrepresentation, Plaintiff would not have agreed to enter into the swap with Wachovia.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

The damages, if any, alleged to have been suffered by Wachovia were caused, in whole or in part, by the intentional conduct, negligent conduct, fault, or other culpable conduct of Wachovia or others over whom Wachovia exercised control.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

To the extent that Wachovia was entitled to demand collateral at all, Plaintiff was entitled to suspend its performance upon Wachovia's own breach of the swap agreement.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

Plaintiff has already paid all monies due and owing under the terms of the swap agreement.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Wachovia has failed to mitigate any damages it has allegedly suffered.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

Plaintiff reserves the right to rely on such other additional defenses as may become available or apparent during discovery.

Dated: New York, New York
       March 6, 2008

**MINTZ & GOLD LLP**

/s/ Terence W. McCormick
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

To:   **HUNTON & WILLIAMS LLP**
      Patrick L. Robson, Esq.
      Bank of America Plaza, Suite 3500
      101 South Tryon Street
      Charlotte, North Carolina 28280

      Shawn Patrick Regan, Esq.
      200 Park Avenue
      New York, New York 10166-0091
      *Attorneys for Defendant*
      *Wachovia Bank, N.A.*