UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x
                                     :

CDO Plus Master Fund Ltd.,               :

                    Plaintiff,       :       07 CV 11078 (LTS)(AJP)
                                  :           ECF Case

               -against-       :

Wachovia Bank, National Association,   :

               Defendant.     :
----------------------------------------------------------------------x

---

## WACHOVIA BANK'S MEMORANDUM IN SUPPORT
## OF ITS MOTION FOR JUDGMENT ON PLEADINGS

---

SHAWN PATRICK REGAN
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York  10166
(212) 309-1000

-and-

PATRICK L. ROBSON
HUNTON & WILLIAMS LLP
Bank of America Plaza
101 S. Tyson Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700

*Attorneys for Defendant*
*Wachovia Bank, National Association*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

I.    BACKGROUND...........................................................................................................2

    A.    PARTIES. ........................................................................................................2

    B.    WACHOVIA AND CDO PLUS ENTER INTO
           A CREDIT DEFAULT SWAP TRANSACTION. .................................................2

    C.    MATERIAL TERMS OF THE AGREEMENT. ....................................................3

    D.    CDO PLUS INITIALLY COMPLIES WITH
           ITS OBLIGATIONS UNDER THE AGREEMENT. .............................................5

    E.    CDO PLUS BREACHES THE AGREEMENT BY FAILING TO POST COLLATERAL...........6

    F.    CDO PLUS FILES THIS LAWSUIT. ..............................................................7

    G.    CDO PLUS'S AMENDED COMPLAINT. .......................................................7

    H.    WACHOVIA'S COUNTERCLAIM FOR BREACH OF CONTRACT. ...................8

    I.    CDO PLUS IS COMPRISED OF SOPHISTICATED INVESTORS
           WHO UNDERSTOOD THE TERMS OF THE AGREEMENT. ...............................9

II.    ARGUMENT. ...........................................................................................................10

    A.    LEGAL STANDARD. ....................................................................................11

    B.    CDO PLUS CANNOT STATE A CLAIM FOR BREACH OF CONTRACT BY IGNORING A
           RELEVANT PROVISION OF THE AGREEMENT. .........................................11

          1.    WACHOVIA WAS PERMITTED TO DEMAND
                TRANSFERS OF ADDITIONAL COLLATERAL. .................................12

          2.    THE PARTIES' PAYMENT OBLIGATIONS DO NOT CONFLICT
                WITH THE PARTIES' COLLATERAL TRANSFER OBLIGATIONS.....................13

          3.    THE AMOUNTS OF COLLATERAL DEMANDED WERE
                PERMISSIBLE UNDER THE AGREEMENT AND ULTIMATELY
                SUPPORTED BY INDEPENDENT VALUATIONS. ...............................14

C.      PLAINTIFF'S TORT CLAIMS ARE PRECLUDED BECAUSE THEY
        RELATE SOLELY TO THE PARTIES' CONTRACTUAL OBLIGATIONS. .........................15

D.      CDO PLUS FAILS TO ALLEGE THE ELEMENTS OF A CLAIM FOR FRAUD.................16

        1.      THE PAROL EVIDENCE RULE PRECLUDES PLAINTIFF'S ALLEGATION THAT
                WACHOVIA MADE STATEMENTS THAT CONTRADICT THE UNAMBIGUOUS
                TERMS OF THE AGREEMENT........................................................................17

        2.      PLAINTIFF FAILS TO ALLEGE REASONABLE RELIANCE. .............................19

        3.      PLAINTIFF FAILS TO ALLEGE FRAUDULENT INTENT...................................20

E.      CDO PLUS BREACHED THE AGREEMENT WHEN IT
        REFUSED TO TRANSFER ADDITIONAL COLLATERAL...............................................21

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,*
    404 F.3d 566 (2d Cir. 2005) ................................................................................. 18, 21

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,*
    136 F.3d 82 (2d Cir. 1998) ...................................................................................... 11

*Allen v. WestPoint-Pepperell, Inc.,*
    945 F.2d 40 (2d Cir. 1991) ...................................................................................... 17

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007) ................................................................................. 11, 17

*Bell Atl. Corp. v. Twombly,*
    127 S.Ct. 1955 (2007) .............................................................................................. 17

*Brown v. Brown,*
    12 A.D. 3d 176 (1st Dep't 2004) ............................................................................. 16

*Century Pacific,* Inc. *v. Hilton Hotels Corp.,*
    528 F. Supp. 2d 206 (S.D.N.Y. 2007) ..................................................................... 18

*Connecticut Nat. Bank v. Fluor Corp.,*
    808 F.2d 957 (2d Cir. 1987) .................................................................................... 21

*Danann Realty Corp. v. Harris,*
    157 N.E.2d 597 (N.Y. 1959) .................................................................................... 18

*DeMuria v. Hawkes,*
    328 F.3d 704 (2d Cir. 2003) .................................................................................... 11

*DynCorp. v. GTE Corp.,*
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..................................................................... 11

*Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,*
    343 F.3d 189 (2d Cir. 2003) ............................................................................... 19, 20

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,*
    375 F.3d 168 (2d Cir. 2004) ...................................................................................... 2

*Fleet Capital Corp. v. Yamaha Motor Corp.,*
    No. 01 Civ. 1047, 2002 WL 31174470 (S.D.N.Y. Sept. 25, 2002) ......................... 11

*Ganino v. Citizens Utilities Co.,*
    228 F.3d 154 (2d Cir. 2000) .................................................................................... 20

*Guilbert v. Gardner,*
    480 F.3d 140 (2d Cir. 2007) .................................................................................... 15

*Jaufman v. Levine*, No. 1:06-CV-1295,
  2007 WL 2891987 (N.D.N.Y. Sept. 28, 2007) .......................................................................... 20

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997) ..................................................................................................... 20

*Merrill Lynch Intern. v. XL Capital Assur. Inc.*,
  No. 08 Civ. 2893(JSR), 2008 WL 2738075 (S.D.N.Y. July 15, 2008) ..................................... 3

*RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC.*,
  156 Fed. Appx. 349 (2d Cir. 2005) ........................................................................................... 12

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  173 F.3d 481 (2d Cir. 1999) ....................................................................................................... 23

*Republic Nat. Bank v. Hales*, 75 F. Supp. 2d 300 (S.D.N.Y. 1999)
  aff'd No. 00-7622, 2001 WL 99830 (2d Cir. 2001) ................................................................. 18

*Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist., 1199*,
  116 F.3d 41 (2d Cir. 1997) ......................................................................................................... 23

*Telesca v. Long Island Housing Partnership, Inc.*,
  443 F. Supp. 2d 397 (E.D.N.Y. 2006) ....................................................................................... 11

*Wilson v. Hochberg*,
  665 N.Y.S.2d 653 (1st Dep't 1997) ............................................................................................ 11

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Wachovia Bank, National

Association ("Wachovia"), by and through its undersigned counsel, respectfully submits this

Memorandum of Law in Support of its Motion for Judgment on Plaintiff's Amended Complaint

(Dkt. 11), and on Defendant's Counterclaim.  (Dkt. 13.)

## PRELIMINARY STATEMENT

In May of 2007, Plaintiff CDO Plus Master Fund Ltd. ("Plaintiff" or "CDO Plus"), a $50

million hedge fund managed by sophisticated professional investors, entered into a credit

derivative swap transaction with Wachovia Bank.  Between June and November 2007, and

contemporaneous with a general decline in the credit markets, the value of this transaction

declined substantially.  As a result, CDO Plus was required to (and did) transfer to Wachovia

more than $8 million in additional collateral over the same six-month period, until it apparently

could no longer do so.  Then, desperate for any means to rescind the deal, CDO Plus claimed for

the first time that it was duped as to the terms of the Agreement. [1]  The written terms of the

Agreement between the parties, however, are unambiguous.  And, even read in the light most

favorable to Plaintiff, CDO Plus's Complaint fails to allege any facts plausibly showing

wrongdoing on Wachovia's part.  To the contrary, Wachovia's demands for transfers of

additional collateral were expressly authorized by the Agreement.  Because CDO Plus has

therefore failed to state a claim, and because Wachovia is entitled to relief, the Court should

grant judgment in favor of Wachovia on CDO Plus's Complaint and on Wachovia's

Counterclaim that CDO Plus's failure to transfer additional collateral breached the parties'

Agreement.

---

[1]      Notably, CDO Plus's successor-in-interest has filed a virtually identical lawsuit against Citibank, claiming to have been duped in a similar credit derivative swap transaction in which Plaintiff ultimately was obligated to pay Citibank more than $10 million.  (*See VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 08 CV 01563 (S.D.N.Y.) (BSJ), Dkt. 1.)

# I.    BACKGROUND.

A.    <u>Parties.</u>

Plaintiff CDO Plus is an Isle of Jersey exempted corporation. (Plaintiff's Amended Complaint, Dkt. 11 ("Compl.") (Ex. A to the Declaration of Patrick L. Robson, dated July 24, 2008 ("Robson Decl.")) ¶¶ 1 n.1, 4.) CDO Plus is a hedge fund, with approximately $50 million under management, formed for the purpose of investing in, among other things, transactions related to collateralized debt obligations ("CDOs"). (*Id.* ¶ 8; Defendant's Answer and Counterclaim, Dkt. 13 ("Counterclaim") (Robson Decl. Ex. B) ¶ 7.) Plaintiff is managed and controlled by an investment advisor, Vanquish Advisors LLC. (*Id.* ¶¶ 10-11, 17.) Although Plaintiff denies in its Answer to Wachovia's Counterclaim that it is a sophisticated investor, CDO Plus admits that it marketed itself to potential investors as such and its "investment team members are all seasoned professionals with extensive experience in fixed income, structured products markets, and hedge funds." (*See* Plaintiff's Answer to Defendant's Counterclaim, Dkt. 15 ("Answer") (Robson Decl. Ex. C) ¶ 8.)

Wachovia Bank, National Association is a national banking association with its principal place of business in Charlotte, North Carolina. (Compl. ¶ 5.)

B.    Wachovia and CDO Plus Enter
       <u>Into a Credit Default Swap Transaction.</u>

In May 2007, CDO Plus and Wachovia entered into a Credit Derivative Transaction on Collateralized Debt Obligation with Pay-As-You-Go or Physical Settlement (the "Trade" or "Transaction"). (Answer ¶ 26.)

The Transaction between CDO Plus and Wachovia is a form of a credit default swap, which "is the most common form of credit derivative, i.e., a contract which transfers credit risk from a protection buyer to a credit protection seller." *Eternity Global Master Fund Ltd. v.*

*Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 171-72 (2d Cir. 2004) (internal

quotations omitted).  As the Second Circuit recently described, under these agreements:

> Protection buyers [in this case, Wachovia] can use credit derivatives to manage
> particular market exposures and return-on-investment; and protection sellers [in
> this case, CDO Plus] generally use credit derivatives to earn income and diversify
> their own investment portfolios.  Simply put, a credit default swap is a bilateral
> financial contract in which a protection buyer makes periodic payments to . . . the
> protection seller, in return for a contingent payment if a predefined credit event
> occurs in the reference credit, *i.e.*, the obligation on which the contract is written.

*Id.* at 172.  *See also*, *Merrill Lynch Intern. v. XL Capital Assur. Inc.*, No. 08 Civ. 2893(JSR),

2008 WL 2738075, at *1 (S.D.N.Y. July 15, 2008).

The parties do not dispute that the terms of the Transaction were governed by four

documents:  (1) an International Swaps and Derivatives Association, Inc. (or "ISDA")[2] Master

Agreement, dated May 4, 2007 (Dkt. 20, Ex. 1. ("ISDA Master")); (2) the Schedule to the Master

Agreement, dated as of May 4, 2007 (*Id.* Ex. 2. ("Schedule")); (3) an ISDA Credit Support

Annex, dated as of May 4, 2007, which incorporates by reference the ISDA 1994 Credit Support

Annex (*Id.* Ex. 3. ("CSA")); and (4) a Confirmation, dated May 30, 2007.  (*Id.* Ex. 4.

("Confirm.") (collectively, the "Agreement") (Robson Decl. Exs. E-H).)[3]

C.     Material Terms of the Agreement.

Under the Agreement, CDO Plus was obligated at the outset to transfer to Wachovia

$750,000 of initial collateral (the "Independent Amount"), which Wachovia was entitled to hold

over the term of the Agreement.  (Confirm. § 7, Independent Amount; CSA ¶ 3.)  In exchange,

---

[2]     ISDA is a global trade association representing leading financial institutions in the
privately negotiated derivatives industry.  It has developed standardized documentation for use in
credit default swap transactions.  These widely-used ISDA forms are available to market
participants on ISDA's website at www.isda.org.

[3]     The Parties also do not dispute that Counterclaim Exhibits 1-4 (Dkt. 20.) comprise the
written terms of the Agreement that is the subject of this lawsuit.  (*See* Compl. ¶ 12;
Answer ¶ 33.)

Wachovia was obligated to pay CDO Plus, on a quarterly basis, 2.75% per annum of the notional amount of the Transaction, which notional amount was $10 million when executed.  (Confirm. § 2, Fixed Rate.)  CDO Plus was further obligated to make "Floating Payments" to Wachovia upon the occurrence of certain credit events.  (*Id.* § 3.)

Separate and apart from the parties' obligations to make payments to one another, the Agreement also obligated the parties to transfer additional collateral to one another, depending upon fluctuations in the replacement cost of the Trade.  Paragraph 3 of the Credit Support Annex sets forth these "Credit Support Obligations."  (CSA ¶ 3.)  Specifically, the amount of additional collateral that a party was entitled to demand at any one time from the other was determined by the calculation of "Exposure," as defined under the Agreement.  (*Id.*)  The amount of Exposure is the mark-to-market calculation of the replacement cost of the Trade.  (*Id.* ¶¶ 12; 13(c)(ii).)

As such, when the Independent Amount plus the amount of Wachovia's Exposure exceeded by $250,000 or more the value of collateral held by Wachovia, Wachovia was entitled to demand a transfer of additional collateral ("Notice of Collateral Demand" or "Collateral Call") in an amount equal to the difference between that sum and the value of collateral held by Wachovia (the "Delivery Amount").  (CSA ¶ 3.)  Similarly, if the value of collateral held by Wachovia exceeded the Independent Amount plus the amount of Wachovia's Exposure by $250,000 or more, CDO Plus was entitled to demand a return of collateral in an amount equal to the difference between the amount of that difference and the value of collateral held by Wachovia (the "Return Amount").  (*Id.*)

If, at any time, either party disputed the calculation of Exposure under the Agreement, it could exercise the Dispute Resolution provision set forth in Paragraph 5 of the Credit Support Annex to obtain an independent determination of Exposure.  (*Id.* ¶ 5.)

In addition to the terms governing payments under the Confirmation, the Credit Support

Obligations, and Dispute Resolution provisions, each party represented under the ISDA Master

and Schedule (among other things) that it did not rely on the other party in making its decision to

enter into the Trade, and that:

> . . . it is relying solely upon its own evaluation of the Relevant Agreement
> (including the present and future results, consequences, risks, and benefits thereof,
> whether financial, accounting, tax, legal or otherwise) and upon advice from its
> own professional advisors, (iv) it understands the Relevant Agreement and those
> risks, has determined they are appropriate for it, and willingly assumes those risks,
> and (v) it has not relied and will not be relying upon any evaluation or advice
> (including any recommendations, opinion, or representation) from the other party,
> its affiliates or the representatives or advisors of the other party or its affiliates . . . .

(ISDA Master § 3(g), as amended by the Schedule Part 5(c).)  The parties also included a merger

clause in the Agreement, which states:

> **Entire Agreement.**    This Agreement constitutes the entire agreement and
> understanding of the parties with respect to its subject matter and supersedes all
> oral communication and prior writings with respect thereto.

(ISDA Master § 9(a).)

> D.    CDO Plus Initially Complies with
>       Its Obligations Under the Agreement.

Beginning in June 2007 through November 2007, as the credit markets deteriorated, the

replacement cost of the Trade increased significantly and Wachovia, thus, made a series of

Collateral Calls to CDO Plus.  (Compl. ¶¶ 21-23; *see also* CSA ¶¶ 12; 13(c)(ii).)  By November

2007, Wachovia had demanded a total of $8.92 million, comprised of the Independent Amount

and additional collateral.  (Compl. ¶¶ 21-23.)  Throughout this period, CDO Plus never

challenged the method or result of Wachovia's valuation of Exposure by exercising the Dispute

Resolution procedure set forth in Paragraph 5 of the Credit Support Annex.  (Compl. ¶ 23;

Answer ¶ 80.)  Rather, CDO Plus responded to each Collateral Call, by transferring the required

additional collateral to Wachovia "without protest."  (*Id.* ¶ 27.)  And, during this same period,

CDO Plus never claimed that Wachovia was not entitled to demand additional collateral pursuant to Paragraph 3 of the Credit Support Annex, nor did it claim that Paragraph 3 was superseded by, or otherwise in conflict with, any other provision of the Agreement.  (Compl. ¶ 27.)[4]

      E.      <u>CDO Plus Breaches the Agreement By Failing to Post Collateral.</u>

Between June 18, 2007 and November 1, 2007, CDO Plus received fourteen Collateral Calls from Wachovia and transferred a total of $8.92 million to Wachovia "without protest." (Compl. ¶ 22, 27.)[5]  Then, on November 21, 2007, Wachovia determined that the sum of the Independent Amount and its Exposure exceeded CDO Plus's posted collateral and issued a Collateral Call demanding CDO Plus transfer to Wachovia $550,000 in additional collateral. (Answer ¶ 82.)  CDO Plus refused to transfer the additional collateral and, in a letter dated November 21, 2007, invoked the Dispute Resolution provision of the Agreement.  (*Id.* ¶ 83.)

On November 26, 2007, Wachovia complied with the Dispute Resolution provision and obtained an independent determination that Wachovia was entitled to hold an additional $1,490,000 from CDO Plus in collateral.  (CSA ¶ 5.)  Significantly, this independent determination revealed that Wachovia's November 21, 2007 calculation of Exposure was below, not above, the independent determination of Exposure.  (Compl. ¶ 49.)

On November 26, 2007, Wachovia provided CDO Plus with the relevant information as required by the Dispute Resolution provision (*id.*), and, on November 27, 2007, Wachovia issued

---

[4]      Indeed, in it's verified initial Complaint, filed in New York State Supreme Court on November 28, 2007, Plaintiff did not make the argument that Wachovia was *not* entitled to make *any* Collateral Calls; rather, CDO Plus claimed that Wachovia's Collateral Calls were "in excess of [what was] actually required" and "unnecessarily large."  (Dkt. 1 ¶¶ 66, 68, Robson Decl. Ex. D.)

[5]      Wachovia demanded, and CDO Plus transferred, collateral on:  June 18, 2007; June 21, 2007; June 26, 2007; July 12, 2007; July 20, 2007; July 24, 2007; July 30, 2007; August 15, 2007; August 21, 2007; September 10, 2007; October 15, 2007; October 18, 2007; October 30, 2007; and November 1, 2007.  (Compl. ¶ 22.)

a Collateral Call to CDO Plus based upon the revised valuation of Exposure.  (*Id.* ¶ 48.)  CDO Plus was required to meet the Collateral Call by transferring to Wachovia the required additional collateral by close of business on November 27, 2007.  (CSA ¶ 4(b).)  CDO Plus again refused to transfer the required additional collateral.  (Compl. ¶ 58.)

F.      CDO Plus Files This Lawsuit.

Rather than meet its obligation to post additional collateral, on November 28, 2007, CDO Plus filed its initial verified Complaint in New York State Supreme Court.[6]  (Dkt. 1.)  On December 7, 2007, Wachovia provided CDO Plus with a formal Notice of Failure to Transfer.  (Answer ¶ 104.)  When CDO Plus again refused to transfer the additional collateral (Compl. ¶ 58), Wachovia exercised its right to cause an early termination of the Agreement and calculate the Settlement Amount owed to Wachovia.[7]  (*See* ISDA Master §§ 5-6.)  After liquidating CDO Plus's Posted Collateral Amount, Wachovia applied the proceeds against the Settlement Amount due as a result of the early termination of the Agreement.  (Answer ¶ 114; ISDA Master § 6.)  Wachovia, however, is still owed $1,030,861.12, plus interest and costs (the "Unpaid Settlement Amount").  (*Id.* ¶ 115; *Id.*)

G.      CDO Plus's Amended Complaint.

On January 15, 2008, CDO Plus filed its Amended Complaint.  CDO Plus asserts seven causes of action:  fraud, mistake, breach of contract, breach of implied covenant of good faith,

---

[6]      CDO Plus's filing suit against Wachovia constituted itself an Event of Default under the Agreement.  (*See* ISDA Master §§ 5(a)(iii)(3) and (a)(v)(3).)

[7]      Although in its Answer CDO Plus denies the allegations set forth in paragraphs 108-119 of Defendant's Counterclaim, apparently because CDO Plus claims that Wachovia was not entitled to terminate the Agreement, the fact that Wachovia did terminate the Agreement and liquidate CDO Plus's collateral is not in dispute.  (*See* Compl. ¶¶ 2 ("After Plaintiff commenced this action . . . Wachovia closed out the trade and converted all the money that had been deposited to date, $8,920,000."), 56-63.)

unjust enrichment, specific performance, and conversion. (Compl. ¶¶ 64-93.) Each of Plaintiff's

claims, however, arise from the same two central allegations.

First, CDO Plus alleges that Wachovia fraudulently induced it into the Agreement by

making the "false representation[] . . . that [Wachovia] would require no more than $750,000.00

to secure Wachovia against its perceived counterparty risk." (Compl. ¶ 65.) CDO Plus alleges

that Wachovia then "demanded unreasonably high amounts of additional [collateral] even though

Plaintiff was not under an obligation to pay any collateral at all." (*Id.* ¶ 1.)[8]

Second, "[i]n the alternative," CDO Plus alleges that there was "no meeting of the minds

regarding the subject matter of the transaction." (Compl. ¶ 2.) In support of this alternative

theory, CDO Plus asserts that it "rel[ied] on the terms of the Confirmation," and, apparently not

on the terms of the other documents, including the Credit Support Annex, that comprised the

Agreement. (*Id.*)

H.     Wachovia's Counterclaim for Breach of Contract.

Section 11 of the ISDA Master Agreement requires the Defaulting Party — in this case

CDO Plus — "upon demand, [to] indemnify and hold harmless the other party for and against all

reasonable out-of-pocket expenses, including legal fees . . . incurred by such other party by

reason of the enforcement and protection of its rights under this Agreement . . . ." (ISDA Master

§ 11.) In a December 27, 2007 Notice of Amount Due Following Application of Collateral,

Wachovia placed CDO Plus on notice of its obligations under Section 11 of the Agreement.

(*Id.* ¶ 117.)

---

[8]     Absent, however, from Plaintiff's Complaint are any specific allegations regarding any
purported statements or omissions that are inconsistent with the written terms of the Agreement,
and which purportedly would have been made for the purpose of inducing CDO Plus into the
Agreement. (*See* Compl. ¶¶ 1-93.)

To date, CDO Plus has refused to pay Wachovia the Unpaid Settlement Amount or the interest thereon, and has refused to meet its obligations under Section 11 of the Agreement. (Answer ¶ 118.)  Wachovia was, therefore, compelled to bring a claim for breach of contract against CDO Plus, which it filed with its Answer on February 15, 2008.  (Counterclaim, Dkt. 13.)

I.      CDO Plus is Comprised of Sophisticated Investors
        Who Understood the Terms of the Agreement.

As part if its effort to walk away from a $10 million obligation, and in order to support its claim of mistake, CDO Plus now asserts that it lacks experience and sophistication.  (Answer ¶¶ 6, 9, 12-13.)  In marketing materials provided to potential investors, however, CDO Plus has painted a different picture.  Specifically, CDO Plus asserts that its "investment team members are all seasoned professionals with extensive experience in fixed income, structured products markets, and hedge funds."  (*Id.* ¶ 8.)

CDO Plus has also represented that it's principal, Don Uderitz's experience includes:  (i) "through a unique joint venture arrangement . . . direct[ing] all [] Tax Related Products at Wachovia Securities with primary responsibility for the portfolio management of tax related structured products;" (ii) serving as a "general partner[] and co-head of mortgage trading for the III Global Funds;" (iii) serving as a "general partner in Adams, Viner and Mosler, Ltd., a registered broker dealer;" and (iv) serving as a "Senior Vice President and Portfolio Manager for Ocwen Financial Corporation."  (*Id.* ¶¶ 20.)  Plaintiff also marketed Uderitz as "one of the foremost authorities on REMIC residuals."  (*Id.* ¶ 21.)

CDO Plus has represented that its principal, Jorge Rodriquez-Lugo's experience includes: (i) serving as "a Senior Vice President at Lehman Brother's Private Investment Management Division;" (ii) working at "AVM promoting unique arbitrage opportunities using mortgage

securities and derivatives to a select group of institutional clients in the U.S.;" and (iii) serving

for 14 years as a "senior institutional mortgage and derivatives sales person at various Wall

Street firms." (*Id.* ¶ 23.)

Further, CDO Plus marketed itself not only as having experience in CDO-related

transactions but, in fact, as having developed a unique approach to investing in CDO related

financial products, claiming that its "[i]nvestors in the fund will have the opportunity to invest in

a CDO strategy 'with a twist'; one fund that simultaneously earns returns from CDO debt/CDO

equity <u>AND</u> participates in management fees from CDO deals." (*Id.*)

## II.    ARGUMENT.

CDO Plus's Complaint represents a transparent attempt to avoid meeting its financial

obligation on an investment with Wachovia. Plaintiff's breach of contract claim fails as a matter

of law because Wachovia was entitled, pursuant to Paragraph 3 of the Credit Support Annex, to

demand transfers of additional collateral from CDO Plus. Plaintiff's tort claims should be

dismissed also because its factual allegations relate solely to a breach of contract, and, Plaintiff

has failed to allege tortious acts by Wachovia outside the scope of the Agreement. Indeed, the

only misrepresentation or omission that CDO Plus has alleged as a basis for its tort claims is the

allegation that Wachovia did not tell CDO Plus that it would have to meet its obligations to post

additional collateral. To the contrary, these obligations were clearly set forth in the written

Agreement between the parties.

CDO Plus has, therefore, failed to state any claim upon which relief should be granted by

this Court. Further, CDO Plus's refusal to transfer collateral to Wachovia beginning in

November 2007, and its attempt to rescind the Trade through this lawsuit were each a breach of

the Agreement, which entitled Wachovia to terminate and demand the resulting amounts due

from CDO Plus. Plaintiff's refusal to satisfy this obligation to Wachovia is a breach of the

Agreement for which Wachovia is entitled to judgment on the pleadings and an award of appropriate damages (*i.e.*, the amount due plus interest and costs).

      A.    <u>Legal Standard.</u>

The "legal standard[] for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable." *DeMuria v. Hawkes*, 328 F.3d 704, 706, n.1 (2d Cir. 2003). "Under Rule 12(c), all well-pleaded facts and allegations in the nonmoving party's pleading are assumed to be true . . . ." *Telesca v. Long Island Housing Partnership, Inc.*, 443 F. Supp. 2d 397, 403 (E.D.N.Y. 2006). Allegations that "stop[] short of the line between possibility and plausibility of entitlement to relief," however, should be dismissed. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted).

Further, under New York law "the initial interpretation of a contract is a matter of law for the court to decide." *Fleet Capital Corp. v. Yamaha Motor Corp.*, No. 01 Civ. 1047, 2002 WL 31174470, at*19 (S.D.N.Y. Sept. 25, 2002) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 85 (2d Cir. 1998)). A complaint thus should be dismissed where the terms of the relevant contract, incorporated by reference in the pleadings, unambiguously show that plaintiff is not entitled to relief. *DynCorp. v. GTE Corp.*, 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002); *see also Wilson v. Hochberg*, 665 N.Y.S.2d 653, 653-54 (1st Dep't 1997) (complaint should be dismissed where express terms of relevant contract flatly contradict claim).

      B.    CDO Plus Cannot State a Claim for Breach of Contract
               <u>By Ignoring a Relevant Provision of the Agreement.</u>

The gravamen of Plaintiff's claim for breach of contract is that — through its Collateral Calls — Wachovia "demand[ed] the deposit of collateral far in excess of the amount actually required." (Compl. ¶ 76.) In order to state a claim for breach of contract under New York law,

Plaintiff must allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC.*, 156 Fed. Appx. 349, 350-51 (2d Cir. 2005).

Under CDO Plus's current reading of the Agreement, it was required to deposit only $750,000 of collateral as security against its obligation to pay more than $10 million. (*Id.* ¶ 1.) Any demand by Wachovia for the transfer of collateral in excess of the $750,000 was, in CDO Plus's view, a breach of the Agreement. (*Id.*)

Plaintiff arrives at this conclusion, however, only by ignoring a material term of the Agreement; namely, the parties' Credit Support Obligation to transfer additional collateral set forth in the Credit Support Annex, which CDO Plus executed on May 4, 2007. (Answer ¶ 36.) These Credit Support Obligations were in addition to CDO Plus's obligation to transfer to Wachovia the Independent Amount of $750,000, an obligation which arose under the same provision of the Credit Support Annex. (*Compare* Confirm § 7 with CSA ¶ 3.)

      1.     Wachovia was Permitted to Demand
                 Transfers of Additional Collateral.

Pursuant to Section 7 of the Confirmation, "[t]he Independent Amount for Party B [CDO Plus] for this Transaction is 7.50% of the Initial Face Amount." Because the Initial Face Amount of this Transaction was $10 million, CDO Plus was required to, and did, transfer $750,000 of initial collateral — the Independent Amount — to Wachovia at the inception of the Trade. (Compl. ¶ 14.) Significantly, CDO Plus's obligation to transfer the Independent Amount arose under the Credit Support Obligation provision of the Credit Support Annex, the very same provision that CDO Plus now alleges is unenforceable. (*See* CSA ¶ 3.)

Under the Credit Support Annex, Wachovia plainly was entitled to demand additional collateral at any time that the sum of the Independent Amount and Wachovia's Exposure was determined to be $250,000 or more than the value of collateral being held by Wachovia. (CSA ¶ 3.) Pursuant to Paragraphs 12 (in the definition of "Exposure") and 13(c)(2) of the Credit Support Annex, Wachovia calculated the mark-to-market amount of its Exposure on a daily basis. (*Id.* ¶¶ 12; 13(c)(ii).)

Wachovia demanded additional collateral on fourteen separate occasions when the foregoing sum exceeded the value of collateral held by it. (Compl. ¶ 22; CSA ¶¶ 12, 13(c)(2).) And CDO Plus's compliance with those demands acknowledges that Wachovia's demands for the transfer of additional collateral (*see* Compl. ¶¶ 21-23) were a valid exercise of its rights pursuant to the terms of Paragraph 3 of the Credit Support Annex.[9] Although Plaintiff's Complaint concedes that the Credit Support Annex was part of the documents that comprised the written Agreement between the parties (*see* Compl. ¶ 12), the Complaint fails to even reference the specific provision that governed the parties' rights to demand transfers of collateral (CSA ¶ 3), or explain why the provision is unenforceable or in conflict with any other provision of the Agreement.

> 2.    The Parties' Payment Obligations Do Not Conflict
> With the Parties' Collateral Transfer Obligations.

Insofar as CDO Plus's Complaint implies that the payment provisions set forth in the Confirmation were in conflict with the Credit Support Obligations set forth in the Credit Support

---

[9]    CDO Plus states repeatedly in its Complaint that, during the period from May - November 2007, there were no Floating Amount Events, which would have triggered CDO Plus's obligation to pay Wachovia. (Compl. ¶¶ 24-25, 30.). CDO Plus's claim is correct, but immaterial, because funds demanded by Wachovia were transfers of additional collateral, pursuant to Paragraph 3 of the Credit Support Annex, not demands for Floating Payments, pursuant to Section 7 of the Confirmation. (*Compare* CSA ¶ 3 with Confirm. § 7.)

Annex (*see* Compl. ¶ 13), there is no legal support for this argument.  First, the Confirmation, which was executed subsequent to the ISDA Master, the Schedule, and the Credit Support Annex, did not modify those parts of the Agreement.  (*See* Confirm. at 1 ("This Confirmation supplements, forms a part of, *and is subject to* . . . ." (emphasis supplied).)

Second, a payment obligation is wholly different from an obligation to post collateral.  Here, the parties' payment obligations were set forth in Sections 2 through 5 of the Confirmation.  While Wachovia was required to pay CDO Plus 2.75% per annum of the Notional Amount over the life of the Trade (*see* Confirm. § 2), CDO Plus was obligated to pay Wachovia up to the Notional Amount plus interest (in certain cases) upon the occurrence of certain credit events.  (*Id.* § 3.)  With any of these obligations, the payment was final and the payee would have been entitled to the funds free and clear of any continuing obligation under the Agreement as to those funds.  (*Id.*)

The parties' Credit Support Obligations were altogether different.  With the transfer of collateral, Wachovia was entitled to hold the collateral only until either the termination of the Trade or until the amount of Exposure had decreased and CDO Plus had demanded a return of collateral.  (CSA ¶ 3.)[10]

> 3.    The Amounts of Collateral Demanded Were
>        Permissible Under the Agreement and Ultimately
>        Supported By Independent Valuations.

Plaintiff's assertion that Wachovia breached the Agreement by "demand[ing] unreasonably high amounts of additional [collateral]" is equally unavailing.  (Compl. ¶ 1; *see also id.* ¶¶ 31-32 (asserting, in the alternative, that "Wachovia failed even to make a good faith

---

[10]    Even the concepts behind the two obligations are different.  Whereas, a "payment" is a form of direct compensation, "collateral" is a form of security pledged for the payment of a potential future obligation.

estimate of the required collateral".)  If CDO Plus had really believed that the amount of

collateral Wachovia demanded at any one time was unreasonable, it had two forms of recourse

under the Agreement:  (i) pursuant to Paragraph 3 of the Credit Support Annex, CDO Plus could

have made a demand for return of collateral; or (ii) pursuant to Paragraph 5 of the Credit Support

Annex, it could have invoked the Dispute Resolution provision of the Agreement.  (*See* CSA ¶¶

3 and 5, respectively.)  Yet, throughout the entire period in which CDO Plus now alleges that

Wachovia was demanding unreasonable amounts of collateral, CDO Plus never demanded a

return of collateral and CDO Plus invoked the Dispute Resolution Provision of the Credit

Support Annex only once as a prelude to filing this lawsuit.  (Counterclaim ¶¶ 80, 89.)

And, when CDO Plus did invoke the Dispute Resolution provision of the Credit Support

Annex on November 21, 2007, the independent valuation of Exposure revealed that Wachovia

was entitled to hold *more, not less*, collateral on this Trade.  (Answer ¶¶ 86-87.)  CDO Plus

nevertheless refused to accept this independent valuation.  (Compl. ¶ 58.)[11]

C.    Plaintiff's Tort Claims Are Precluded Because They
      Relate Solely to the Parties' Contractual Obligations.

CDO Plus's claims for fraud, mistake, unjust enrichment, declaratory judgment, and

conversion should each be dismissed because these claims arise out of Wachovia's purported

breach of contract claim.  *See Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) (noting that

tort claims "are precluded by the fact that a simple breach of contract claim may not be

---

[11]    For this reason, CDO Plus's claim for Breach of the Implied Covenant of Good Faith and
Fair Dealing should also be dismissed.  Had CDO Plus believed that Wachovia's calculation of
Exposure was arbitrary or irrational — as alleged in its Complaint — CDO Plus's recourse was
to invoke the Dispute Resolution provision of the Agreement and then abide by it.  (CSA ¶ 5.)
CDO Plus's obvious disinterest in, at first, challenging Wachovia's calculations at the time they
were made and, then, abiding by the Dispute Resolution provision merely highlights the
conclusory nature of CDO Plus's after-the-fact allegations of bad faith.  Without more, Plaintiff
has failed to articulate a colorable basis for this claim and it should be dismissed.

considered a tort unless a legal duty independent of the contract - i.e., one arising out of

circumstances extraneous to, and not constituting elements of, the contract itself - has been

violated" (quoting *Brown v. Brown*, 12 A.D. 3d 176, 176 (1st Dep't 2004))).

Here, Plaintiff's tort claims each arise out of the assertion that Wachovia "represent[ed]

. . . that it would require no more than $750,000.00 [the Independent Amount] to secure

Wachovia against its perceived counterparty risk." (Compl. ¶ 65.) Plaintiff's theory thus

appears to be that Wachovia defrauded CDO Plus when it made demands for transfers of

additional collateral, and Wachovia's use of CDO Plus's collateral to set off the Settlement

Amount constituted an unlawful conversion of CDO Plus's proceeds and unjustly enriched

Wachovia at CDO Plus's expense. (*Id.* ¶¶ 83-84, 91-93.)

These tort claims, however, rely upon the very same operative facts that allegedly support

CDO Plus's breach of contract claim. (*See infra* at 14-17.) Moreover, the terms of the

Agreement explicitly provide for each of the actions that CDO Plus now claims was a tort.

Paragraph 3 of the Credit Support Annex permitted Wachovia to demand additional collateral as

well as the Independent Amount. Sections 5 and 6 of the ISDA Master Agreement governed

Wachovia's right to terminate the Agreement upon an Event of Default, and its right to demand

payment of the resulting amount due. And, Paragraph 8 of the Credit Support Annex governed

Wachovia's right to liquidate CDO Plus's posted collateral and apply the proceeds thereof

against the amount due to Wachovia upon termination of the Agreement. As such, Plaintiff has

failed utterly to allege a duty independent of the express terms of the Agreement that would give

rise to tort claims in this case.

      D.    <u>CDO Plus Fails To Allege the Elements of a Claim for Fraud.</u>

Plaintiff's fraud claim fails to meet the pleading requirements of both Fed. R. Civ. P. 8

and 9(b) because it fails to allege: (i) any statements that reasonably could be considered a

misstatement or omission of material fact; (ii) any reasonable reliance by CDO Plus on the alleged misstatements or omissions; and (iii) any fraudulent intent on the part of Wachovia.

To state a claim for rescission based upon a fraud, CDO Plus must allege "a misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). To survive dismissal, Plaintiff's Complaint "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1965), and noting that the Second Circuit "ha[s] declined to read *Twombly*'s flexible 'plausibility standard' as relating only to antitrust cases.").

In addition, Rule 9(b) "requires that fraud claims be pleaded with particularity, and mere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough [to survive a Rule 12(b)(6) motion] no matter how frequently repeated." *Allen*, 945 F.2d at 44 (internal quotations omitted).

> 1. The Parol Evidence Rule Precludes Plaintiff's Allegation That Wachovia Made Statements That Contradict the Unambiguous Terms of the Agreement.

The substance of Plaintiff's fraud claim is that Wachovia somehow induced CDO Plus into the Trade by making the "false representation[] . . . that [Wachovia] would require no more than $750,000.00 to secure Wachovia against its perceived counterparty risk." (Compl. ¶ 65.) But even if such a statement were made (and Wachovia does not concede that it was), the written Agreement between the parties specifically disclaimed reliance upon any extraneous representations made by each counterparty. (ISDA Master § 3(g), as amended by Schedule Part 5(c).)

Under New York law, where the parties agree upon specific disclaimers of reliance[12] — like the one at issue here — this "destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon ... contrary oral representations." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 576 (2d Cir. 2005) (quoting *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 602 (N.Y. 1959)).  This is particularly so "when the contracting parties are 'sophisticated business people,' and the disclaimer clause is the result of negotiations between them." *Id.* (internal quotations omitted).

Here, the parties agreed that they would not rely on, among other things "any evaluation or advice (including any recommendations, opinion, or representation) from the other party." (ISDA Master § 3(g), as amended by Schedule Part 5(c).)[13]  Even when read in the light most favorable to Plaintiff, the alleged misrepresentations or omissions described in the Complaint are the very type of "recommendation[], opinion, or representation" regarding the substance of the written Agreement for which both parties disclaimed reliance.[14]  *Republic Nat. Bank v. Hales*, 75

---

[12]     Here, the Agreement also included a merger clause, which, in the context of a complex, arms-length commercial negotiations between sophisticated entities, Wachovia respectfully submits, is alone sufficient to defeat Plaintiff's claim of reliance on representations outside the four corners of the written Agreement.  *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 229 (S.D.N.Y. 2007) ("a merger clause will defeat a claim of reasonable reliance . . . where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract.) (internal quotations omitted).

[13]     This disclaimer was not included in a pre-printed form of the ISDA Master, rather, it was drafted and negotiated specifically by the parties to this Agreement.  (*See* Schedule Part 5(c).)

[14]     The only other instance in which CDO Plus may rely upon parol evidence would be if CDO Plus had alleged that Wachovia had superior information, not readily available to CDO Plus, for which Wachovia had an affirmative duty to disclose.  CDO Plus has not, and cannot, make such an allegation because, among other things, the information that Wachovia purportedly hid from CDO Plus (that Wachovia may make demands of additional collateral) is clearly set forth in Paragraph 3 of the Credit Support Annex.  *See Hales*, 75 F. Supp. 2d 317 ("the

F. Supp. 2d 300, 316 (S.D.N.Y. 1999) *aff'd* No. 00-7622, 2001 WL 99830 (2d Cir. 2001) ("the waiver signed by [plaintiff] were sufficiently particular so as to preclude [plaintiff]'s present challenge to any statements to bar [plaintiff]'s claim").

As such, the Complaint fails to allege any misrepresentation or omission that would not be precluded as a matter of law under the parol evidence rule.

2.    Plaintiff Fails to Allege Reasonable Reliance.

For the same reason, Plaintiff cannot allege that it relied upon the purported misrepresentations or omissions described in the Complaint. To sustain its claim for fraud, CDO Plus must "establish reasonable reliance on the alleged misrepresentations or omissions." *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). And, "[i]n assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Id.*

Plaintiff cannot sustain an allegation of reasonable reliance where it purportedly relied upon an alleged representation that was contradicted by the plain language of the Agreement. Similarly, it cannot allege reasonable reliance on an omission where the omitted matter was addressed in the Agreement. Curiously, Plaintiff's Complaint is devoid of any explanation why Plaintiff reasonably could have believed that a statement by Wachovia regarding the Independent Amount alone (*see* Confirm. § 7; CSA ¶ 3) would somehow waive CDO Plus's other Credit Support Obligations, which are governed by the same section of the Credit Support Annex.

CDO Plus's assertion of reliance is particularly unreasonable here because, as a sophisticated hedge fund whose business model was to trade CDO-related products (*see supra*

---

authorities are rather clear that an action for fraud may not lie in New York where the complaining party had access to the information at issue.").

at 9-10), Plaintiff could have negotiated to have the portion of Section 3 of the Credit Support

Annex — requiring that additional collateral be posted — stricken from the Agreement if it

genuinely believed that the Agreement included an extraneous, unenforceable provision.  CDO

Plus, whose "investment team members are all seasoned professionals with extensive experience

in fixed income, structured products markets, and hedge funds," certainly had the requisite

sophistication to understand each of the provisions of the Agreement to which it agreed.

(Answer ¶ 8.)  To suggest otherwise strains credulity.  *See Emergent*, 343 F.3d at 196 (refusing

to find reliance where "Emergent represented that it had 'knowledge and experience in financial

and business matters' and that it could readily evaluate the risks of the transaction"); *Lazard*

*Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997) ("It is well

established that [w]here sophisticated businessmen engaged in major transactions enjoy access to

critical information but fail to take advantage of that access, New York courts are particularly

disinclined to entertain claims of justifiable reliance.") (internal quotations omitted).

       3.       <u>Plaintiff Fails to Allege Fraudulent Intent.</u>

Plaintiff's allegations regarding Wachovia's intent are even more speculative than its

allegations regarding reliance.  To sustain an allegation of fraudulent intent, Plaintiff must allege:

"either (a) . . . facts to show that defendants had both motive and opportunity to commit fraud, or

(b) . . . facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *Jaufman v. Levine*, No. 1:06-CV-1295, 2007 WL 2891987, at *7 (N.D.N.Y. Sept.

28, 2007).  And, "[g]eneral allegations that the defendants acted in their economic self-interest

are not enough to sustain an allegation of fraudulent intent." *Ganino v. Citizens Utilities Co.*,

228 F.3d 154, 170 (2d Cir. 2000) (internal citations omitted).

CDO Plus asserts, without any factual support, that Wachovia was motivated to defraud

CDO Plus, through demands for transfers of additional collateral, because Wachovia was

"[p]erhaps in a panic over recent turmoil in the debt markets connected to the sub-prime lending crisis." (Compl. ¶ 1.) Absent from Plaintiff's Complaint, however, are any factual allegations to plausibly support what CDO Plus admits is pure, wild speculation. (*Id.* ("*Perhaps in a panic . . .*") (emphasis supplied).) Moreover, Plaintiff cannot allege that Wachovia knew its representations were fraudulent because — as demonstrated by the explicit terms of the Agreement — Wachovia was entitled to demand transfers of additional collateral. (CSA § 3.) As the Second Circuit has often noted, "[i]t is reasonable to require that the plaintiffs specifically plead those events which give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Connecticut Nat. Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (upholding dismissal of fraud claim where, "the events alleged in the complaint give rise to an inference that Fluor *did not act fraudulently*.") (emphasis added).

Here, Plaintiff has alleged nothing more than Wachovia's exercise of its rights under the Agreement, a claim which fails to support CDO Plus's suggestion that Wachovia acted with fraudulent intent. For this additional reason, CDO Plus's claim should be dismissed.[15]

    E.    CDO Plus Breached The Agreement When
              It Refused To Transfer Additional Collateral.

As discussed above, Wachovia was entitled to demand transfers of additional collateral whenever the sum of the Independent Amount and the amount of its Exposure exceeded the value of collateral held by Wachovia. (*See infra* at 5, 14-17; CSA ¶ 3.) Although CDO Plus met

---

[15]    Plaintiff cannot sustain its claim for "Recession - Mistake" without an adequately pled claim for fraud. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 585 (2d Cir. 2005) ("[A] party's unilateral mistake will not provide a basis for rescission unless it is accompanied by some fraud committed by the other contracting party.") Plaintiff's Mistake claim should therefore be dismissed as well.

its obligation to transfer additional collateral on fourteen previous occasions (Compl. ¶¶ 21-22.)[16], beginning on November 21, 2007, CDO Plus refused to meet this obligation.  (*Id.* ¶ 58.)

And, when CDO Plus exercised the Dispute Resolution provision of the Credit Support Annex, and the valuations provided to Wachovia by independent third parties revealed that Wachovia was entitled to hold more, not less, collateral, CDO Plus continued to refuse to transfer additional collateral.  (*Id.*)

CDO Plus's refusal to transfer additional collateral constituted an Event of Default under the Agreement.  (*See* ISDA Master § 5(a)(iii), Credit Support Default.)  Specifically, Section 5(a)(iii) of the ISDA Master sets forth events that constitute a "Credit Support Default" under the Agreement, including the "[f]ailure . . . to comply with or perform any agreement or obligation to be complied with or performed by it in accordance with any Credit Support Document if such failure is continuing after any applicable grace period has elapsed," or "the party . . . disaffirms, disclaims, repudiates or rejects, in whole or in part, or challenges the validity of, such Credit Support Documents."  (*Id.*; *see also* CSA ¶ 7(i) (noting that an Event of Default occurs when a "party fails to make, when due, any Transfer of Eligible Collateral . . . .").)

Here, CDO Plus's refusal constitutes not only an ongoing failure to comply with its Credit Support Obligations, but Plaintiff's lawsuit seeking rescission of the Trade repudiates completely CDO Plus's obligation to make transfers of additional collateral when demanded.

---

[16]    CDO Plus's explanation why it met its Credit Support Obligations for six months before it repudiated those obligations is telling.  CDO Plus now asserts that although it "believed it was not obligated to pay the sums demanded by Wachovia, it did so because it was concerned that Wachovia would seize upon Plaintiff's refusal to post variation margin as an excuse to declare a technical default."  (Compl. ¶ 28.)  Even read in favor of CDO Plus, this allegation nevertheless concedes that CDO Plus's refusal to transfer additional collateral to Wachovia constitutes a "technical default" under the terms of the Agreement.

CDO Plus's actions therefore constituted valid Events of Default under the terms of the parties' Agreement.

This Event of Default, in turn, gave Wachovia the right to cause an early termination of the Agreement. (*Id.* § 6(a), Right to Terminate Following Event of Default.) Further, CDO Plus's decision to file its initial Complaint in this action constituted a separate Event of Default under Section 5(a)(v)(3) of the ISDA Master because the Complaint "disaffirm[ed], disclaim[ed], repudiate[d] or reject[ed]" the entire Transaction between the parties, in that CDO Plus now seeks to rescind the Trade. (*Id.* § 5(a)(v)(3), Default under Specified Transaction.)

CDO Plus's acts constituted clear, unambiguous breaches of the terms of the Agreement. And, judgment on the pleadings is appropriate here because the parties' dispute begins and ends with the express terms of the Agreement. If the Court concludes that the parties were subject to the Credit Support Obligations regarding additional collateral set forth in Paragraph 3 of the Credit Support Annex, then CDO Plus's refusal to meet its additional collateral obligations under that provision constituted a breach of the Agreement for which Wachovia reasonably is entitled to relief. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.").[17]

_____

[17]    CDO Plus's claim for Permanent Injunction / Specific Performance should also be dismissed for the separate reason that Wachovia was entitled to make demands for additional collateral and its Early Termination of the Trade was a valid exercise of Wachovia's rights under the terms of the Agreement. The form of specific performance sought by Plaintiff — return of all of Plaintiff's collateral and enforcement of only some of the provisions of the Agreement — would therefore require the Court to write out explicit terms of the Agreement in order to satisfy CDO Plus's *post hoc* view of the Trade, relief which the Court is restrained from providing based upon Plaintiff's allegations. *See Saint Mary Home, Inc. v. Service Employees Intern.*

## CONCLUSION

For the foregoing reasons, Wachovia respectfully requests that the Court dismiss each claim set forth in Plaintiff's Complaint; grant Defendant judgment on its Counterclaim; and award Defendant $1,030,861.12, plus interest and all costs associated with the collection of amounts due under the Agreement, including, but not limited to, attorneys' fees.

Dated:  Charlotte, North Carolina
            July 24, 2008

HUNTON & WILLIAMS LLP

By:    /s/ Patrick L. Robson
         Shawn Patrick Regan
         200 Park Avenue, 52nd Floor
         New York, New York  10166
         (212) 309-1000
         sregan@hunton.com

         -and-

         Patrick L. Robson
         HUNTON & WILLIAMS LLP
         Bank of America Plaza
         101 S. Tyson Street, Suite 3500
         Charlotte, North Carolina  28280
         (704) 378-4700
         probson@hunton.com

         *Attorneys for Defendant*
         *Wachovia Bank, National Association*

---

*Union, Dist.*, *1199*, 116 F.3d 41, 44 (2d Cir. 1997) ("It is not for us to second-guess . . . or to judicially rewrite the agreement because one party now wishes it were different.").

## DECLARATION OF SERVICE

Raymond E. Galbraith, hereby declares under penalty of perjury, pursuant to 28 U.S.C.

§ 1746, that:

I am a Litigation Paralegal at the law firm of Hunton & Williams LLP, attorneys for

Defendant Wachovia Bank, National Association.

That on July 24, 2008, I served a true copy of the attached Memorandum in Support of

Wachovia Bank's Motion for Judgment on the Pleadings, on counsel of record listed below via

the Court's ECF System and via First Class Mail, to the address listed below, by depositing the

same in a duly enclosed and sealed wrapper, with the correct postage thereon, in an official letter

box duly maintained by the Government of the United States of America within the State of New

York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24th, 2008.

/s/ Raymond E. Galbraith<br>Raymond E. Galbraith

TO:   Terence W. McCormick, Esq.
      Steven Glen Mintz, Esq.
      Mintz & Gold LLP
      470 Park Avenue South
      10th Floor
      New York, NY  10016-6819

      *Attorneys  for Plaintiff*
      *CDO Plus Master Fund Ltd.*