UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CDO PLUS MASTER FUND LTD.,

       Plaintiff,

  -v-                                                        No.  07 Civ. 11078 (LTS)(AJP)

WACHOVIA BANK, N.A.,

       Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff CDO Plus Master Fund Ltd. ("CDO" or "Plaintiff"), an Isle of Jersey exempted corporation,[1] has brought the above-captioned action against defendant Wachovia Bank, N.A. ("Wachovia" or "Defendant"), a North Carolina corporation, asserting claims for fraud, mistake, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, specific performance and conversion.  Wachovia has asserted a counterclaim for breach of contract.  The Court has subject matter jurisdiction of the instant claims based upon the complete diversity of the parties' citizenship.  28 U.S.C. § 1332.

Wachovia has moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of CDO's amended complaint and judgment in Wachovia's favor on its counterclaim.  The Court has reviewed thoroughly the parties' pleadings and submissions.  For the following reasons, Wachovia's motion is granted in part and denied in

---

[1] CDO has changed its name to "VCG Special Opportunities Master Fund Ltd." (Am. Compl. ¶ 1 n.1.)  The Court refers to Plaintiff as "CDO" in this Memorandum Opinion and Order for consistency with the parties' pleadings and submissions.

part.

## BACKGROUND

The following facts, alleged in Plaintiff's Amended Complaint ("Am. Compl."), are taken as true for the purposes of this motion practice.  See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). Provisions of documents incorporated by reference or relied on in the amended complaint are described insofar as they relevant.  CDO, at the time it filed the amended complaint, was a hedge fund with approximately $50,000,000 of assets under management.  (Am. Compl. ¶ 8.)  CDO and Wachovia, a national banking association, entered into a credit default swap transaction (the "Trade") on or about May 21, 2007.  (Am. Compl. ¶¶ 5-9.)  The underlying reference obligation of the Trade was a collateralized debt obligation, the Forge ABS High Grade CDO Ltd., 2007-1A, with a principal underlying debt obligation ("notional amount") of $10,000,000.  (Am. Compl. ¶¶ 10-11.)  Wachovia was the protection buyer in the Trade and CDO the protection seller: Wachovia paid regular premiums to CDO in exchange for CDO's assumption of the reference obligation's credit risk.  If the reference obligation had defaulted or experienced any other defined credit event, CDO would have been obligated to pay Wachovia up to the full notional amount.  As long as the reference obligation did not experience a credit event, CDO would profit from receiving a steady payment stream throughout the life of the Trade.[2]

---

[2]    Credit default swap transactions such as the Trade originally were created to provide insurance to the owners of the reference obligations.  As the use of these swaps exploded in recent years, participants in the financial markets increasingly entered into credit default swaps without otherwise having any interest in the underlying reference obligation.  Such was the case here: Wachovia never owned the reference obligation itself.  (Am. Compl. ¶ 11 n.2.)

The primary contract documents (collectively, the "CDO Contract") governing the parties' rights and obligations in the Trade are: (1) the 1992 version of the Master Agreement of the International Swap Dealers Association ("ISDA"), dated May 4, 2007 (McCormick Decl., Ex. 2 ("ISDA Master Agreement")); (2) the Schedule to the ISDA Master Agreement, dated May 4, 2007 (McCormick Decl., Ex. 3 ("ISDA Schedule")); (3) the 1994 ISDA Credit Support Annex, dated May 4, 2007 (McCormick Decl., Ex. 4 ("Credit Support Annex")); and (4) the Confirmation Letter, dated May 30, 2007 (McCormick Decl., Ex. 1 ("Confirmation Letter")). The Confirmation Letter "supplements, forms a part of, and is subject to, the ISDA Master Agreement" (Confirmation Letter p. 1), and provides that "in the event of any inconsistency between the provisions of any Confirmation and [the ISDA Master Agreement and ISDA Schedule], such Confirmation will prevail." (ISDA Master Agreement 1(b).) The CDO Contract provides that it is to be governed by and construed in accordance with New York law. (ISDA Schedule ¶ 4(h).)

Wachovia, as the protection buyer, committed to make fixed payments to CDO of 2.75% per annum of the $10,000,000 notional amount.[3] (Am. Compl. ¶ 11.) CDO, as the protection seller, committed to pay Wachovia "Floating Payments" if at any time during the life of the Trade the "Calculation Agent" determined that a "Credit Event" related to the reference obligation had occurred.[4] (Id.) CDO deposited $750,000 (the "Independent Amount") with

---

[3]   This payment obligation would expire at the Legal Final Maturity Date, October 5, 2053, unless the Trade terminated earlier. (Confirmation Letter § 1.)

[4]   The four Credit Events provided for in the CDO Contract are: a writedown, a failure to pay interest, a failure to pay principal, and a distressed ratings downgrade. (Confirmation § 3.) No Credit Events occurred before the Trade was terminated. (Am. Compl. ¶ 51.)

Wachovia as collateral to secure Wachovia against the risk that CDO might be unable to meet a "Floating Payment" obligation. (Confirmation Letter § 7.) The CDO Contract also allowed either party to demand "Credit Support" collateral whenever the party's "Exposure," defined as the cost to that party to replace the Trade in the market, exceeded by more than $250,000 the value of the collateral held by the party. (Credit Support Annex ¶¶ 3, 12.) The CDO Contract's dispute resolution provision ("Dispute Resolution Provision") required that, in the event that a party disputed a Credit Support demand, the "Valuation Agent" was required to recalculate the Exposure based upon four independent quotations from "Reference Market-Makers." (Credit Support Annex ¶ 5.) The CDO Contract designated Wachovia as both the Calculation Agent and the Valuation Agent. (Confirmation Letter p. 1, Credit Support Annex ¶ 13(c)(i).)

Wachovia made more than fourteen demands for Credit Support from CDO. (Am. Compl. ¶ 22.) CDO acceded to the first seven Credit Support demands without protest. (Id. ¶¶ 22, 27.) CDO believed it was not obligated to pay Wachovia's demands but it did so out of fear that Wachovia would otherwise declare a technical default and seize CDO's collateral. (Id. ¶ 28.) After complying with the seventh Credit Support demand, CDO wrote to Wachovia and expressed concern about Wachovia's Credit Support demands, which at that point had required CDO to post collateral in a sum exceeding 40% of the notional amount. (Id. ¶ 27.) Wachovia responded that it was entitled to require Credit Support pursuant to the Credit Support Annex and that its requests were necessitated by the deterioration in the mark-to-market value of the reference obligation. (Id. ¶ 29.) CDO thereafter acceded to seven more of Wachovia's Credit Support demands. (Id. ¶ 22.)

On November 21, 2007, CDO invoked the Dispute Resolution Provision to

challenge Wachovia's latest demand for Credit Support. (Id. ¶¶ 22, 38, 39.) On November 27, 2007, Wachovia, as the Valuation Agent, provided CDO with four quotations that purported to establish that Wachovia's demands for Credit Support were legitimate. Wachovia also demanded additional Credit Support of $1,490,000 (the "Final Demand"). (Am. Compl. ¶¶ 48-49.) Had CDO complied with the Final Demand, Wachovia's total collateral would have exceeded the $10,000,000 notional amount of the Trade. CDO refused the Final Demand and initiated this lawsuit. (Am. Compl. ¶ 56.)

The Dispute Resolution Provision required CDO to "make the appropriate Transfer" of demanded Credit Support following "notice [] of the Valuation Agent." (Credit Support Annex ¶ 5.) CDO did not pay any further sums to Wachovia. (Am. Compl. ¶ 58.) Wachovia sent CDO a Notice of Failure to Transfer, followed by a Notice of an Event of Default, and thereafter declared an Early Termination of the CDO Contract, liquidated the posted collateral, and notified CDO that it owed Wachovia $1,030,861, together with interest and other amounts, including collection costs and legal fees. (Id. ¶¶ 57-61.)

## DISCUSSION

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is determined under the same standard as a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Shaw v. Rolex Watch U.S.A., Inc., 745 F. Supp. 982, 984 (S.D.N.Y. 1990). Accordingly, the Court accepts as true the factual allegations set forth in the amended complaint, and will draw all reasonable inferences in CDO's favor. See, e.g., W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004). The Court may consider the contract documents submitted by the parties as exhibits to their motion papers

because they were in both parties' possession and were relied upon by the parties in their pleadings. Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to a judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, Union Plant Workers of Am., 47 F.3d 14, 16 (2d Cir. 1994).

Wachovia also seeks dismissal of Plaintiff's fraud claims for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks and citation omitted).

I.   Plaintiff's First and Third Causes of Action: "Rescission - Fraud" and "Damages from Wachovia's Fraud"

To state a cognizable fraud claim under New York law, a plaintiff must allege (i) a misrepresentation or omission of a material fact, which was (ii) false and was known by the defendant to be false and (iii) made for the purpose of inducing plaintiff to rely on it. See Stewart v. World Wrestling Fed'n Entm't, Inc., No. 03 Civ. 2468, 2005 WL 66890, at *6 (S.D.N.Y. Jan. 11, 2005) (citing Lana Holding Co. v. Smith Barney, Inc., 646 N.Y.S.2d 76, 80 (N.Y. 1996)). A plaintiff must also allege (iv) justifiable and reasonable reliance on the material misrepresentation or omission and (v) resulting injury. Id.

CDO alleges that it relied on a material oral misrepresentation made by Wachovia

when it entered into the CDO Contract. CDO alleges that, when the parties were discussing the Trade but before they executed the CDO Contract, CDO told Wachovia "that the Trade would not make economic sense" if the Independent Amount were greater than $750,000. (Am. Compl. ¶ 18.) Wachovia, which had originally sought an Independent Amount of $1,500,000, agreed to reduce it to $750,000. CDO alleges that Wachovia knew at the time that it would demand additional collateral after the parties executed the CDO Contract. (Id. ¶¶ 19, 21.) Wachovia argues that two provisions in the CDO Contract – a disclaimer provision and a merger clause – preclude CDO from asserting that it reasonably and justifiably relied on this alleged oral misrepresentation.[5]

Although a contract's vague "omnibus statement" disclaiming representations outside the contract will not preclude a claim for fraud, when the contract disclaims "reliance on specified representations" a party will not be allowed to assert that it entered into the contract in reliance on the specified representations. Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993). The disclaimer does not have to identify precisely the alleged misrepresentation, but the disclaimer must track the substance of the misrepresentation. Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 735 (2d Cir. 1984). Courts are more inclined to enforce a disclaimer clause where, as here, the contracting parties are "sophisticated business people" and the disclaimer clause is the product of negotiations between them. Citibank, N.A. v. Plapinger, 485 N.E.2d 974, 976-77 (N.Y. 1985).

The CDO Contract provides that each party "has not relied and will not be relying

---

[5] The Court assumes without deciding that CDO has pleaded this allegation with adequate specificity to satisfy Rule 9(b).

upon any evaluation or advice (including any recommendation, opinion, or representation) from the other party" and that each party is "relying solely upon its own evaluation of the . . . consequences, risks, and benefits [of the Trade]." (ISDA Schedule ¶ 5(c); the "Disclaimer".) The Disclaimer is not included among the standard terms of the ISDA Master Agreement but rather was specifically added by the parties in the ISDA Schedule. See P.T. Adimitra Rayapratama v. Bankers Trust Co., No. 95 Civ. 0786, 1995 WL 495634, at *1 (S.D.N.Y. Aug. 21, 1995) ("the [ISDA] schedule customizes the terms and provisions in the standard agreement to apply to [the parties] and contains agreements as to how certain standard provisions in the ISDA Agreement will apply to the swap transactions between them.").

Wachovia's alleged acquiescence in CDO's representation that an Initial Amount of more than $750,000 would not make economic sense, construed liberally as a representation that no further collateral would be demanded during the life of the Trade, constitutes at best an opinion or an evaluation of the likely risks or consequences of the Trade, i.e., as to whether market conditions would warrant additional Credit Support demands. The Disclaimer precludes any viable claim of reliance on such opinions or evaluations of the consequences and risks involved in the Trade. Furthermore, Wachovia's ability to demand Credit Support, and the conditions under which it could do so, were plainly disclosed in the CDO Contract itself.

The ISDA Agreement also contains a merger clause providing that the CDO Contract supersedes all prior oral communications and writings and reflects the entire agreement between the parties. (ISDA Master Agreement ¶ 9(a).) A merger clause will preclude an action for fraud under New York law when either: (1) the merger clause expressly references the specific subject of the representation; or (2) where the merger clause "was included in a multi-

million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract." Century Pacific, Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 229 (S.D.N.Y 2007) (citing Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 165 F. Supp. 2d 615, 622 (S.D.N.Y. 2001), aff'd in relevant part, 343 F.3d 189 (2d Cir. 2003)).  The latter principle applies here: CDO was a hedge fund with $50,000,000 of funds under management that entered into a complex multi-million dollar credit default swap.  Furthermore, the fraud assertion is inconsistent with the Disclaimer discussed above and with the CDO Contract's express provisions permitting demands for additional collateral.  CDO thus cannot as a matter of law establish that it reasonably relied upon the alleged misrepresentation.  Accordingly, the Disclaimer and the merger clause preclude CDO's fraud claims, and CDO's first and third causes of action will be dismissed.

## II.     Plaintiff's Second Cause of Action: "Rescission - Mistake"

CDO asserts that there was "no meeting of the minds" because it believed that the Trade obligated it to sell credit protection but did not obligate it to post collateral based upon the declining market value of the reference obligation.  CDO asserts that it is entitled to rescind the CDO Contract because its mistake was the product of Wachovia's alleged fraud.  "Fraudulent misrepresentation, concealment or nondisclosure of a material fact" can support a rescission claim on the grounds of unilateral mistake.  Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (holding that a court may rescind a release agreement "where it finds either mutual mistake or one party's unilateral mistake coupled with some fraud . . . of the other party").  As previously explained, CDO cannot sustain a fraud claim, as Wachovia did not misrepresent,

conceal, or fail to disclose the fact that it could demand Credit Support; the CDO Contract executed by the parties plainly provided that right and by its terms precluded claims of reliance on the pre-contractual interaction on which CDO's fraud claim is based. Accordingly, Wachovia's motion for judgment on the pleadings will be granted as to CDO's second cause of action.

      III.  Plaintiff's Fourth Cause of Action: "Breach of Contract"

To assert a breach of contract claim under New York law, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's adequate performance of the contract; (3) the defendant's breach of the contract; and (4) damages. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). CDO asserts that Wachovia breached the CDO Contract by demanding Credit Support in addition to the Independent Amount.

The CDO Contract unambiguously provides Wachovia with the right to make Credit Support demands. (Credit Support Annex ¶¶ 3, 12.) An agreement "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 580 (2d Cir. 2006) (citing Greenfield v. Philles Records, Inc., 780 N.E.2d 166 (N.Y. 2002)). Although the right to demand Credit Support is not reiterated in the Confirmation Letter, the Confirmation Letter's silence with respect to Credit Support demands does not conflict with the provision for such demands in the Credit Support Annex. Accordingly, the contract documents unambiguously gave Wachovia the right to make Credit Support demands. Accord VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 342 (S.D.N.Y. 2008) (reaching the same conclusion as to substantially similar contract documentation for a

substantially similar transaction).

CDO's argument that only the terms of the Confirmation Letter should govern the parties' rights and obligations under the CDO Contract, to the exclusion of the other terms included in what CDO characterizes as additional "boilerplate" documents, fails as inconsistent with the facts and the law. Both the ISDA Schedule and the Credit Support Annex include provisions that are specific to the parties, and thus those documents are inappropriately characterized as "boilerplate." In any event, sophisticated business persons such as CDO are presumed to enter into all contracts with their "business eyes open." See Citibank N.A. v. Bankers Trust Co., 221 A.D.2d 222 (1st Dep't 1995).

CDO's breach of contract claim with respect to Wachovia's Credit Support demands fails for the additional reason that CDO waived this claim by complying with those demands fourteen times and continuing to perform on the contract. Under New York law, where a party to an agreement has actual knowledge of another party's breach and continues to perform under the contract, such continuing performance constitutes a waiver of the breach, unless the party provides notice of the breach to its counterparty. Nat'l Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 675 (S.D.N.Y. 1991).

CDO complied with Wachovia's Credit Support demands on fourteen occasions without exercising its right under the CDO Contract to challenge the Credit Support demands through the Dispute Resolution provision. (Am. Compl. ¶¶ 22-23.) CDO made the first seven Credit Support payments "without protest," and thus did not provide notice to Wachovia of any belief that it was not required to make such payments. (Id. ¶ 27.) After the seventh Credit Support payment, CDO wrote to Wachovia and expressed "grave concern" about Wachovia's

demands.  (Id. ¶ 27.)  Wachovia responded that it was entitled to require Credit Support pursuant to the Credit Support Annex and was making such requests due to a deterioration in the mark-to-market value of the reference obligation.  (Id. ¶ 29.)  CDO subsequently complied with seven more Credit Support demands, making fourteen Credit Support payments in total.  (Id. ¶ 22.)  CDO does not allege that, while acceding to these Credit Support demands, it provided notice to Wachovia that it believed that Wachovia was acting in a manner that was inconsistent with its contractual obligations.

CDO alleges that it acceded to Wachovia's Credit Support demands because it feared Wachovia would "seize upon [CDO's] refusal to post variation margin as an excuse to declare a technical default and seize [CDO's] collateral."  (Am. Compl. ¶ 28.)  CDO could, however, have invoked the Dispute Resolution provision without exposing itself to a technical default.  It did not do so.  Accordingly, the Court concludes based on CDO's own factual allegations and the integral transaction documents that CDO waived its right to assert that the CDO Contract does not permit Wachovia to make Credit Support demands.  Accord VCG Special Opportunities Master Fund Ltd., 594 F. Supp. 2d at 343 (reaching the same conclusion as to substantially similar contract documentation for substantially similar transaction in which CDO acquiesced to four demands for additional collateral).  CDO's assertion that Wachovia breached the contract by making Credit Support demands therefore fails to state a claim and Wachovia's motion for judgment on the pleadings will be granted as to CDO's Fourth Cause of Action.

    IV. <u>Plaintiff's Fifth Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

CDO has also asserted that Wachovia breached the implied covenant of good faith

and fair dealing in its performance of its function as Valuation Agent under the dispute resolution provision. (Am. Compl. ¶¶ 48-49, 53-54, 80.)  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." Harris v. Provident Life & Accidental Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).  To the extent that this cause of action is a tort cause of action premised upon the same facts as CDO's breach of contract claim, it is dismissed.  The Court also construes this cause of action as a breach of contract claim premised upon Wachovia's alleged bad-faith exercise of its responsibilities as Valuation Agent.[6]  This claim is distinct from the breach of contract claim asserted by CDO in the Fourth Cause of Action, which is premised upon Wachovia's Credit Support demands.

The covenant of good faith and fair dealing is implicit in all contracts under New York law.  Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389 (1995).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Id.  "A party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of a contract for another party that it may be assumed that [its actions] are inconsistent with the intent of the parties." Bank of China v. Chan, 937 F.2d 780, 789 (2d Cir. 1991).

CDO asserts that it performed its obligations under the CDO contract but that

---

[6]   CDO's pleading erroneously asserts that Wachovia committed this breach in its capacity as Calculation Agent, yet the context of the allegation makes clear that Wachovia allegedly committed this breach in its capacity as Valuation Agent. (Am. Compl. ¶ 80.)  "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).  Accordingly, the Court construes the amended complaint to assert that Wachovia committed this breach in its capacity as Valuation Agent.

Wachovia acted "arbitrarily and irrationally" in its capacity as Valuation Agent.  (Am. Compl. ¶ 80.)  CDO specifically alleges that it was "absurd" for Wachovia, acting as Valuation Agent, to determine that Wachovia was due Credit Support in excess of the notional amount of the contract.  (Id. ¶ 80.)  CDO alleges that the Final Demand caused damages because CDO's election not to comply with the allegedly improper demand resulted in Wachovia's declaration that CDO had breached the contract and its seizure of over $8,000,000 of collateral, which "unnecessarily tied up nearly 20% of the Plaintiff's funds, to the detriment of Plaintiff's investors."  (Id. ¶ 54.)  These allegations, taken as true for the purposes of this Memorandum Opinion and Order, are sufficient to state plausibly a breach of contract claim under New York law and the liberal pleading standard of Rule 8(a) and Rule 12(c).[7]  See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  Accordingly, Wachovia's motion for judgment on the pleadings with respect to CDO's Fifth Cause of Action is denied.

### V. Plaintiff's Sixth and Eighth Causes of Action: Unjust Enrichment and Conversion

"The existence of a valid and enforceable written contract precludes recovery on a theory of unjust enrichment."  Cornhuskers Farms v. Hunts Point Coop. Mkt., 2 A.D.3d 201, 206 (1st Dep't 2003).  The Court has dismissed CDO's rescission claims and concluded that a valid and enforceable written contract existed between the parties, and therefore the Court must

---

[7]    CDO's allegation that Wachovia acted "arbitrarily and irrationally" is not merely a "naked assertion devoid of further factual enhancement."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (U.S. 2009) (internal citation and quotation marks omitted).  Rather, it is amplified by the allegation that the Final Demand would have required CDO to post collateral in excess of the notional amount.  Accordingly, the allegation "has facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

dismiss CDO's unjust enrichment claim.  Similarly, a tort cause of action such as conversion cannot be asserted if there is a duplicative claim sounding in contract unless the plaintiff asserts that the defendant has breached a duty independent of the contract.  <u>Consolidated Risk Services, Inc. v. Automobile Dealers WC Self Ins.</u>, No. 06 Civ. 871, 2007 WL 951565, at *2 (N.D.N.Y. Mar. 27, 2007) (applying New York law).  No such breach of duty has been has been asserted here, and accordingly CDO's conversion claim must be dismissed as well.

VI.	<u>Plaintiff's Seventh Cause of Action: Specific Performance</u>

CDO seeks equitable relief in the form of a permanent injunction compelling Wachovia to return the approximately $8,000,000 of posted collateral on which Wachovia has foreclosed.  Equitable relief, however, is not appropriate in this case.  "Before the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice."  <u>Lucente v. Int'l Bus. Mach. Corp.</u>, 310 F.3d 243, 262 (2d Cir.2002).  "If a plaintiff has an adequate remedy at law, specific performance is not available."  <u>DB Structured Products, Inc. v. Baltimore American Mortg. Corp.</u>, No. 07 Civ. 4109, 2009 WL 399746, at *4 (S.D.N.Y. Jan. 23, 2009).  The remedy of specific performance is appropriate upon a showing that the subject matter of the particular contract is unique and has no established market value.  <u>Id.</u> (internal citations and quotation marks omitted).  CDO seeks the quintessential legal remedy: money. Accordingly, equitable relief is not appropriate in this case and the Seventh Cause of Action will be dismissed.

VII.	<u>Wachovia's Counterclaim</u>

Wachovia's counterclaim for breach of contract is premised upon the allegation

that CDO breached the CDO Contract by refusing to meet the Final Demand. (Answer ¶ 97.) The Court has concluded that CDO has stated a claim for breach of contract with respect to the implied covenant of good faith and fair dealing, which, if proven, may lead to a corollary conclusion that Wachovia, rather than CDO, originally breached the contract. Accordingly, Wachovia's motion for judgment on the pleadings for its breach of contract counterclaim will be denied.

CONCLUSION

For the foregoing reasons, CDO's first, second, third, fourth, sixth, seventh and eighth causes of action are dismissed. CDO's fifth cause of action, construed as a breach of contract claim premised upon Wachovia's alleged breach of the covenant of good faith and fair dealing, survives Wachovia's motion for judgment on the pleadings. Wachovia's motion for judgment on the pleadings with respect to its counterclaim is denied. The Pre-Trial Scheduling Order (docket entry no. 16), suspended by Order of the Court on March 4, 2009, is hereby reinstated, and the Final Pre-Conference date in paragraph 9 is rescheduled for **Friday, November 20, 2009, at 3:00 p.m.** The consultation and submission requirements relating to the Final Pre-Trial Conference provisions of the scheduling order are modified accordingly. The parties are directed to meet promptly with Magistrate Judge Peck for settlement purposes.

This Memorandum Opinion and Order resolves docket entry no. 26.

       SO ORDERED.

Dated: New York, New York
       July 13, 2009

                                            LAURA TAYLOR SWAIN
                                            United States District Judge