UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CDO PLUS MASTER FUND LTD.,

      Plaintiff,

  -v-                                                       No.  07 Civ. 11078 (LTS)(AJP)

WACHOVIA BANK, N.A.,

      Defendant.

-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff CDO Plus Master Fund Ltd. ("CDO" or "Plaintiff"), an Isle of Jersey exempted corporation,[1] has brought the above-captioned action against defendant Wachovia Bank, N.A. ("Wachovia" or "Defendant"), a North Carolina corporation, asserting claims for fraud, mistake, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, specific performance, and conversion.  Wachovia has asserted a counterclaim for breach of contract.  The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1332.

In response to Wachovia's earlier motion for judgment on the pleadings, the Court dismissed all of CDO's claims except one: the aspect of CDO's breach of contract claim that was premised upon Wachovia's alleged breach of the implied covenant of good faith and fair dealing "in its performance of its function as Valuation Agent under the dispute resolution provision [of

---

[1]     CDO has changed its name to "VCG Special Opportunities Master Fund Ltd."  (Am. Compl. ¶ 1 n.1.)  The Court refers to Plaintiff as "CDO" in this Memorandum Opinion and Order for consistency with the parties' pleadings and submissions.

the parties' agreement]" survived the motion. (Docket entry no. 47.) Wachovia has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), seeking dismissal of CDO's remaining claim and judgment in Wachovia's favor on its counterclaim. The Court has reviewed thoroughly the parties' submissions. For the following reasons, Wachovia's motion is granted insofar as it seeks dismissal of CDO's remaining claim and granted as to liability with respect to Wachovia's counterclaim.

### BACKGROUND

The following facts are undisputed, except as otherwise indicated.[2] Wachovia is a national banking association and a wholly owned subsidiary of Wachovia Corporation. (Def.'s 56.1 St. ¶ 1.) CDO, at all relevant times, was a hedge fund incorporated in the Isle of Jersey. (Def.'s 56.1 St. ¶ 4.) In May 2007, the parties entered into a credit default swap transaction (the "Trade"). (Def.'s 56.1 St. ¶ 8.) The underlying reference obligation of the Trade was a collateralized debt obligation, the Forge ABS High Grade CDO Ltd., 2007-1A ("Reference Obligation"), with a principal underlying debt obligation ("Notional Amount") of $10,000,000. (Def.'s 56.1 St. ¶¶ 6, 10.) Wachovia was the protection buyer in the Trade and CDO the protection seller: Wachovia paid regular premiums to CDO in exchange for CDO's assumption of the Reference Obligation's credit risk. If the Reference Obligation experienced a Credit Event (defined as a failure to pay principal, a writedown, a failure to pay interest, or a distressed rating downgrade), CDO would have been obligated to pay Wachovia up to the full Notional Amount.

---

[2] Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("__ 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions. Any citation to a party's 56.1 Statement takes into account any response submitted by the party's adversary.

(Def.'s 56.1 St. ¶ 11.)  As long as the Reference Obligation did not experience a Credit Event, CDO would profit from receiving a steady payment stream throughout the life of the Trade.

The primary contract documents (collectively, the "CDO Contract") governing the parties' rights and obligations in the Trade are: (1) the 1992 version of the Master Agreement of the International Swap Dealers Association ("ISDA"), dated May 4, 2007 ("ISDA Master Agreement"); (2) the Schedule to the ISDA Master Agreement, dated May 4, 2007 ("ISDA Schedule"); (3) the 1994 ISDA Credit Support Annex, dated May 4, 2007 ("Credit Support Annex"); and (4) the Confirmation Letter, dated May 30, 2007 ("Confirmation Letter").  (Def.'s 56.1 St. ¶ 11.)  The CDO Contract is governed by New York law.  (ISDA Schedule ¶ 4(h).)

The CDO Contract provides Wachovia with two separate rights to collateral security: CDO was required to pledge as collateral an "Independent Amount" of $750,000 at the outset of the Trade (Def.'s 56.1 St. ¶¶ 11, 12), and the parties were also obligated to transfer to each other additional collateral depending on the fluctuating value of the parties' "Exposure," which is defined as the mark-to-market replacement cost of the Trade.  For Wachovia, Exposure represented the amount it would have had to pay another market participant at any given time to step into CDO's shoes which, depending on the perceived likelihood of a Credit Event, could be as much as the Notional Amount ($10,000,000).  (Def.'s 56.1 St. ¶ 13.)  The total amount of collateral that Wachovia could hold at any time during the life of the Trade (defined as the "Credit Support Amount") was thus the sum of the Independent Amount ($750,000) and the Exposure (up to $10,000,000).  (Def.'s 56.1 St. ¶ 15.)

As the credit market deteriorated throughout the course of 2007, Wachovia made fourteen separate demands for additional collateral between June 18, 2007, and November 1,

2007.  (Def.'s 56.1 St. ¶ 17.)  CDO acceded to these demands.  By November 20, 2007, Wachovia held a Credit Support Amount of $8,920,000, which included the $750,000 Independent Amount and $8,170,000 based on its Exposure.  (Def.'s 56.1 St. ¶¶ 20, 21.)  On November 21, 2007, Wachovia demanded an additional $550,000 of collateral.  (Def.'s 56.1 St. ¶ 22.)  CDO challenged the demand and invoked the CDO Contract's Dispute Resolution Provision.

The Dispute Resolution Provision provides that the "Valuation Agent" must re-calculate the Exposure "by seeking four actual quotations at mid-market from Reference Market-makers . . . and taking the arithmetic average of those obtained."  (Def.'s 56.1 St. ¶¶ 25-26.)  The Dispute Resolution Provision also provides that "if four quotations are not available . . . then fewer than four quotations may be used."  (Def.'s 56.1 St. ¶ 26.)  The CDO Contract designates Wachovia as the Valuation Agent.  (Confirmation Letter p. 1, Credit Support Annex ¶ 13(c)(i).)  On November 26, 2007, Wachovia, in its capacity as Valuation Agent, solicited "a mid-market valuation, in points upfront" from ten Reference Market-makers.  (Def.'s 56.1 St. ¶¶ 27-28.)  "Points" represent the percentage of the Notional Amount that a party would require to step into CDO's shoes in the Trade.  A quotation close to 100 indicates a perception that a Credit Event is likely to occur, requiring the protection seller to pay Wachovia the full Notional Amount.

The trader who responded to Wachovia's inquiry on behalf of Goldman Sachs wrote, "[I] took a quick look at your cds contract and it is worth between 97 and 99 [points upfront]."  (Def.'s 56.1 St. ¶ 31.)  The trader who responded on behalf of RBS Greenwich Capital ("RBS") queried, "bid or mark[?]", and when Wachovia replied "mid-market mark," RBS provided a quotation of 100.  (Def.'s 56.1 St. ¶ 31.)  In total, four Reference Market-makers

responded to Wachovia's query and provided the following quotations: RBS (100); Goldman Sachs (97-99); Merrill Lynch (95); and Deutsche Bank (95).[3]  (Def.'s 56.1 St. ¶ 31.)  In light of these four quotations, Wachovia calculated the Exposure at $9,650,000, based on an average of 96.5 points,[4] warranting an $1,490,000 increase in collateral.[5]  (Def.'s 56.1 St. ¶ 32.)   Wachovia accordingly demanded an additional $1,490,000 in collateral, which was significantly greater than the $550,000 Wachovia had demanded based on its own calculation of Exposure prior to its calculation as Valuation Agent pursuant to the Dispute Resolution Provision.  (Def.'s 56.1 St. ¶ 17.)

      CDO did not accede to the demand in the manner required by the CDO Contract but, rather, initiated this action.  (Def.'s 56.1 St. ¶¶ 35-36, 39.)  Although CDO wrote to Wachovia that it was "still in the process of securing our own market levels," it never provided Wachovia with market levels (mid-market quotations) of its own.  (Def.'s 56.1 St. ¶¶ 36-38.)  Nor has CDO proffered any evidence, in the course of this litigation, to support a finding in favor of any valuation other than that determined by the Valuation Agent.

---

[3]    Three Reference Market-makers passed on providing a quotation and three others declined to respond.  (Def.'s 56.1 St. ¶¶ 29, 30.)

[4]    This valuation indicates a prevailing view in the market that the Reference Obligation would likely experience a Credit Event, requiring the protection seller in the Trade to pay Wachovia the Notional Amount.  This view was borne out by subsequent events: fewer than three months later, on February 8, 2008, the Reference Obligation was downgraded by Moody's, which constituted a Credit Event.  (Def.'s 56.1 St. ¶ 40; Confirmation Letter § 3.)

[5]    The parties do not dispute the following details of Wachovia's calculation as Valuation Agent: that it was proper to disregard the high and low quotations and calculate the average based on the two middle quotations; that an average quotation of 96.5 points yields an Exposure of $9,655,858; and that the $1,485,858 in collateral owed to Wachovia was properly rounded up to $1,490,000 in Wachovia's collateral demand.  (Def.'s 56.1 St. ¶ 32.)

In response to CDO's refusal to transfer the requested collateral, Wachovia exercised its remedies under the CDO Contract: it delivered to CDO a Notice of Failure to Transfer requested collateral, terminated the Trade, liquidated CDO's posted collateral, and requested that CDO pay it $1,030,861.12, which is the balance it believes it is due (the "Unpaid Settlement Amount"). (Def.'s 56.1 St. ¶ 41.) Wachovia also requested that CDO pay interest, legal fees and costs pursuant to ISDA Master Agreement § 11. That section provides:

> A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out-of-pocket expenses, including legal fees . . . incurred by such other party by reason of the enforcement and protections of its rights under this Agreement.

(Def.'s 56.1 St. ¶ 41.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v.

Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### *Plaintiff's Breach of Contract Claim*

Plaintiff's sole remaining claim is that Defendant breached the covenant of good faith and fair dealing, which is implicit in all contracts under New York law, see Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389 (N.Y. 1995), in performing its Valuation Agent duties under the CDO Contract. "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Id. "A party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of a contract for another party that it may be assumed that [its actions] are inconsistent with the intent of the parties." Bank of China v. Chan, 937 F.2d 780, 789 (2d Cir. 1991). However, "the covenant of good faith and fair dealing cannot be construed so broadly as to effectively nullify other express terms of the contract, or to create independent contractual rights." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp., 25 A.D.3d 309, 310 (1st Dep't 2006); see also Warner Theatre Assoc. Ltd. P'ship v. Metropolitan Life Ins. Co., No. 97 Civ. 4914, 1997 WL 685334, *6 (S.D.N.Y. Nov. 4, 1997) ("The duty of good faith cannot add to, detract from, or alter the terms of the contract itself.").

CDO contends that Wachovia acted arbitrarily and unreasonably by relying, in its capacity as Valuation Agent, on the quotations from Goldman Sachs and RBS to calculate Exposure. CDO contends that these quotations were infirm because the Goldman Sachs trader referred to his quotation as being the product of a "quick look" and the RBS trader had been instructed to provide a "mark," a term that allegedly implies something short of an "actual

quotation at mid-market." CDO further contends that Wachovia acted arbitrarily and unreasonably in demanding additional Credit Support that, together with the amounts received in response to its earlier collateral demands, exceeded the Notional Amount of CDO's obligation. CDO also proffers the putative expert testimony of Leonard Blum, who opines that Wachovia's conduct was commercially unreasonable.

CDO's argument that Wachovia's reliance on the quotations it received was unreasonable is inconsistent with the plain language of the CDO Contract. The CDO Contract provides that Wachovia is entitled to a Credit Support Amount in the sum of the Independent Amount and the Exposure, thus explicitly contemplating a Credit Support Amount that may exceed the Notional Amount. The CDO Contract further provides that, in the event of a challenge by CDO to a collateral demand, Wachovia, as the Valuation Agent, must seek four mid-market quotations from market makers and calculate the Exposure based on the average of those quotations. The CDO Contract is sufficiently clear and unambiguous that the Court may interpret it without the aid of expert testimony. See, e.g., Petrello v. White, No. 01 Civ. 3082, 2010 WL 2346303, *2 (S.D.N.Y. June 9, 2010). The undisputed record before the Court demonstrates that Wachovia sought quotations from ten market makers; that it received quotations from four market makers, in a narrow range between 95 and 100 points; that it calculated Exposure based on the arithmetic average of those quotations; that it was entitled to a Credit Support Amount that was the sum of the Independent Amount and the Exposure, which exceeded the Notional Amount due to the market perception of the high likelihood of a Credit Event, a perception that was validated by the subsequent Moody's downgrade.

CDO argues that Wachovia failed to act diligently because it did not

independently corroborate the quotations it received. However, this argument fails as a matter of law, because the CDO Contract does not assign any such obligation to the Valuation Agent, and under New York law the covenant of good faith and fair dealing "cannot add to, detract from, or alter the terms of the contract itself." Warner Theatre Assoc. Ltd. P'ship, 1997 WL 685334, *6. CDO also argues that Wachovia breached the implied covenant of good faith and fair dealing by accepting a quotation despite being told that it was the product of a "quick look," and by advising another market maker that it sought a "mark." CDO has not proffered, however, any evidence upon which a rational fact finder could conclude that either of these quotations was an inaccurate representation of Wachovia's Exposure or that CDO was damaged by Wachovia's allegedly wrongful acceptance of them. See LNC Investments, Inc. v. First Fidelity Bank, N.A., 173 F.3d 454, 465 (2d Cir. 1999) (proof of causation of damages is required to sustain a breach of contract claim under New York law). Rather, the lack of any proffer by CDO as to the correct calculation of Exposure, the narrow range of the four quotations, and the ratings downgrade of the Reference Obligation that occurred shortly after CDO invoked the Dispute Resolution Provision combine to demonstrate that Wachovia's calculation of Exposure was not "arbitrary or irrational" but, to the contrary, was performed according to its contractual obligations and yielded a result that was consistent with the prevailing market perception of the value of the Trade. See State Street Bank and Trust Co. v. Inversiones Errazuriz Ltd., 374 F.3d 158, 169 (2d Cir. 2004) (concluding that plaintiff bank did not act arbitrarily or irrationally when its demand for collateral was made for a legitimate business purpose and was within its contractual rights).

        CDO's additional arguments regarding Wachovia's performance in its capacity as Valuation Agent are similarly without merit. CDO seeks to frame a disputed issue of material fact

as to the appropriate calculation of Exposure by proffering that its own valuation of the Trade for its internal accounting purposes differed significantly from Wachovia's valuation of the Trade in its capacity as Valuation Agent.  Nothing in the record even suggests, however, that CDO's internal valuation was computed on a market-price standard or that it is in any other way relevant to the computation of Exposure under the CDO Contract's Dispute Resolution Procedure.  Indeed, CDO maintained its high internal valuation of the Trade even after the downgrade of the Reference Obligation.  (Pl.'s 56.1 St. ¶ 81.)

The Court has considered CDO's remaining arguments and finds them to be inapposite to the claim before the Court.  In sum, CDO has failed to come forward with any evidence to frame a genuine issue of material fact and, accordingly, Wachovia is entitled to summary judgment dismissing CDO's breach of contract claim.  No rational fact finder could conclude on this record that Wachovia acted arbitrarily or irrationally, or contravened the intentions of the parties as expressed in the plain language contract, in performing its contractual obligations as described above.

*Wachovia's Counterclaim and its Request for Attorney's Fees*

CDO's opposition to Wachovia's counterclaim rests entirely on the presumed success of its breach of contract claim.  (Def.'s Opp. 28.)  In light of the Court's rejection of that claim, and its corollary conclusion that Wachovia performed its obligations under the CDO Contract, the Court concludes that Wachovia is entitled to recover on its counterclaim for the Unpaid Settlement Amount.  However, Wachovia's evidentiary submissions in support of this motion practice are insufficient to establish as undisputed the precise Unpaid Settlement Amount

that it is entitled to recover.[6]

        The Court concludes that Wachovia is entitled to its reasonable attorney's fees incurred in prosecuting this action because, contrary to CDO's argument, the term "legal fees," which is used in ISDA Master Agreement § 11, is construed under New York law to include attorney's fees.  <u>See, e.g.</u>, <u>Schechter v. Carter</u>, 580 F. Supp. 1526, 1531 (S.D.N.Y. 1984); <u>490 Owners Corp. v. Israel</u>, 729 N.Y.S.2d 819, 820-821 (2d Dep't 2001).  Plaintiff's citation to a decision construing the term "costs" is inapposite.

CONCLUSION

        For the foregoing reasons, Wachovia's motion for summary judgment dismissing CDO's breach of contract claim is granted.  Wachovia's motion for summary judgment on its counterclaim is also granted as to liability only.  The parties shall confer promptly regarding Wachovia's Unpaid Settlement Amount claim and, if they are able to agree on the quantification of the amount recoverable as damages on Wachovia's breach of contract claim, submit a stipulation to the Court.  If they are unable to agree, they must submit a joint statement to the Court by **September 10, 2010**, detailing the parties' respective positions as to the amount recoverable, the evidence in support thereof, and any legal arguments relevant to the computation of Wachovia's damages.

        It is further ordered that the parties show cause, by filed written submission (with courtesy copies for Chambers) by **September 10, 2010**, as to why all documents filed under seal in connection with this motion practice (docket entry nos. 71, 79 and 83) should not be unsealed

---

[6] As evidentiary support for its requested award in the amount of $1,030,861.12, Wachovia merely cites to its pleading (docket entry no. 13, ¶ 115), which is contested by CDO's responsive pleading (docket entry no. 15, ¶ 115).

in whole or in part in light of the common law right of access to judicial documents and the qualified First Amendment right of access to judicial records. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006); United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995). Any replies to these initial submissions must be filed (with courtesy copies for Chambers) by **September 17, 2010**.

This Memorandum Opinion and Order resolves docket entry no. 67.

Dated: New York, New York
August 16, 2010

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
United States District Judge