UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CDO PLUS MASTER FUND LTD.,

    Plaintiff,

-v-                                                       No. 07 Civ. 11078 (LTS)(AJP)

WACHOVIA BANK, N.A.,

    Defendant.
-------------------------------------------------------x



## MEMORANDUM ORDER

Plaintiff CDO Plus Master Fund Ltd. ("CDO" or "Plaintiff"), an Isle of Jersey exempted corporation,[1] brought the above-captioned action against defendant Wachovia Bank, N.A. ("Wachovia" or "Defendant"), a North Carolina corporation, asserting claims for fraud, mistake, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, specific performance and conversion in connection with a transaction in which CDO had agreed to afford Wachovia protection against certain contractually defined Credit Events related to a specified financial instrument (the "Reference Obligation").[2] Wachovia asserted a counterclaim for breach of contract. This Court has dismissed all of CDO's claims (Aug. 16, 2010, Memorandum Opinion and Order), and granted summary judgment to Wachovia on the liability aspect of its counterclaim. The Court also determined that Wachovia is "entitled [under the transaction documents] to its reasonable attorneys' fees incurred in

---

[1]   CDO has changed its name to "VCG Special Opportunities Master Fund Ltd." (Am. Compl. ¶ 1 n.1.) The Court refers to Plaintiff as "CDO" in this Memorandum Order for consistency with the parties' pleadings and submissions.

[2]   A Credit Event is defined in the Contract as a failure to pay principal, a writedown, a failure to pay interest, or a distressed rating downgrade.

prosecuting this action" (Id.) The Court instructed the parties to seek to resolve any disputes concerning the amounts payable to Wachovia. Their attempt to do so having failed, the matter is now before the Court on Wachovia's motion for a judgment awarding it damages, prejudgment interest and attorneys' fees and expenses. The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1332.

The Court has reviewed thoroughly the parties' submissions and, for the following reasons, grants Wachovia's motion for an award of the full amount of its claimed damages, attorneys' fees and expenses.

## Background

The background facts of this case are recounted in the Court's Memorandum Opinions and Orders dated July 13, 2009, and August 16, 2010, familiarity with which is assumed. The following material facts are undisputed.

In May 2007, the parties entered into an agreement ("Agreement") pursuant to which Wachovia paid regular premiums to CDO in exchange for CDO's assumption of the credit risk of an underlying reference obligation with a notional value of $10 million – put otherwise, a credit default swap. CDO defaulted on the Agreement by failing to transfer collateral requested by Wachovia. As a result and according to the terms of the Agreement, Wachovia became entitled to a "Settlement Amount." The Parties agree that the Settlement Amount is to be calculated pursuant to a "Loss" measure defined in the contract as:

> [A]n amount that [the non-defaulting] party reasonably determines in good faith to be its total losses and costs (or gain, in which case expressed as a negative number) in connection with this Agreement . . . including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position . . . .

(Agreement § 14, "Loss.")[3] To calculate the Settlement Amount, Wachovia solicited quotations from "Reference Market-makers" of the price that each such party would demand to enter into a transaction that would provide the economic equivalent of the Agreement. Wachovia received a "quotation" from Deutsche Bank of $10,025,000. In addition, Wachovia received "indications" from Citibank at $9,999,000 and from Merrill Lynch at $9,995,000. The difference between a quotation and an indication is that, when a party provides a quotation, it is actually offering to enter into the proposed transaction but, when a party provides an indication, it is providing its estimation of a market price but not stating whether it would enter into a transaction at the quoted price. Wachovia calculated the Settlement Amount as $9,999,000, based on the quotation and indications it received, as well as "relevant rates or prices from leading dealers in the relevant markets" and changes in the market which (Wachovia alleges) would have obligated CDO to pay the $10 million notional amount of the trade if CDO had not already defaulted. After liquidating CDO's collateral and applying the proceeds against the Settlement Amount, Wachovia claims it is owed $1,017,709.66 of the Settlement Amount, plus interest. Wachovia did not hold any position in the underlying Reference Obligation, and thus suffered no actual loss on a transaction involving that security.

Wachovia also claims $1,033,255.84 in attorneys' fees and costs. The highest rate that Wachovia was charged by any of its lawyers on this case was $632 per hour.

---

[3] The Agreement provides for a preferred method of calculating the Settlement Amount – the Market Quotation method – which the parties agree cannot be calculated or would not reach a commercially reasonable result given the state of the market. By the Agreement's terms, the Loss measure applies instead.

## DISCUSSION

Here, CDO contracted to provide Wachovia with secured financial protection against contractually defined Credit Events in connection with the Reference Obligation. CDO defaulted on its obligations under the Agreement and, as the Court determined in its August 2010 decision in this case, Wachovia is entitled to recover its damages in the form of the contractual unpaid Settlement Amount, interest and attorneys' fees and expenses. CDO asserts that Wachovia's claim for damages must fail because Wachovia did not have a "long" position in the underlying reference obligation and thus did not experience an actual loss on a transaction involving the Reference Obligation. CDO also asserts that Wachovia's calculation of the Settlement Amount is not sufficiently supported because (i) Wachovia relies on only one quotation; (ii) that quotation is not commercially reasonable, as it would require Wachovia to pay more than the notional amount of the trade for which it is seeking protection; (iii) the indications that Wachovia received are not for actual offers to enter into a trade and therefore should not be relied on as measures of Wachovia's loss; and (iv) Wachovia could not possibly get an accurate estimate of the value of the trade, given that, by December 2007, the market had deteriorated to the point where "there was no transparent trading market for credit default swaps in the subprime sector." (Opp. 8.)

"The law of New York is clear that once the fact of damage has been established, the non-breaching party need only provide a 'stable foundation for a reasonable estimate [of damages].'" Tractabel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 111 (2d Cir. 2007) (citation omitted). The Agreement provides a specific and binding definition of "Loss" for the purpose of calculating damages. This definition includes "loss of bargain" and loss incurred "in connection with" the Agreement. The contractually agreed upon definition does not require

an evaluation of Wachovia's <u>actual</u> loss or an evaluation of the success of any Wachovia hedge against actual loss. The absence of an actual loss on a Reference Obligation transaction, thus, is not a barrier to Wachovia's recovery of the expected benefit of its credit default swap transaction with CDO.

Nor is Wachovia's claim defeated by the lack of a "transparent trading market" for the Reference Obligation at the time of CDO's default. Wachovia has established a sufficient basis for its calculation of the Settlement Amount. As CDO concedes, "there was no transparent trading market for credit default swaps in the subprime sector" at the time of CDO's default, which made it more difficult for Wachovia to acquire market quotations for the transaction in question. Despite this difficulty, Wachovia was able to acquire a quotation and two indications from Reference Market-makers. The Reference Market-makers' responses provide a stable foundation for Wachovia's computation of the Settlement Amount. Contrary to CDO's contentions, the single quotation is not commercially unreasonable simply because it is greater than the notional amount of the trade. As Wachovia points out:

> [A] quotation above 100% is the only quotation that a wise investor should have made in December 2007 because, as the protection seller, the investor was going to have to return 100% of the notional value of the Trade in less than two months. Any quotation . . . that was less than 100% would have lost the quoting party money.

(Def.'s Reply Mem. 4 n.3.) Wachovia has thus met its burden of demonstrating that its Settlement Amount claim represents the "reasonabl[e] determin[ation] in good faith . . . [of] its total losses and costs," as required by the Agreement. The Court will award Wachovia the outstanding portion of the Settlement Amount calculated by Wachovia.

CDO does not dispute that Wachovia is entitled to interest on the Settlement

Amount at the London Interbank Offered Rate ("LIBOR") plus 1%, from December 18, 2007, through and including today.

CDO challenges Wachovia's application for attorneys' fees and costs, asserting that Wachovia has failed to provide evidence that its attorney's fees are in line with those prevailing in the market. CDO also asserts that the Court should exclude some of Wachovia's attorneys' fees that stem from billing entries for travel time, entries that CDO characterizes as vague, duplicative or excessive, and entries associated with depositions at which testimony was taken in connection with both the instant matter and a parallel proceeding for injunctive relief. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Co. Bd. Of Elections, 369 F.3d 91, 95 (2d Cir. 2004). A reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008).

CDO asserts that "Wachovia's application fails to provide evidence that their rates are in line with those prevailing in the community." (Opp. 10.) Wachovia's lawyers charged, at most, $632 per hour, which is within the range of what courts have considered reasonable in this district. See In re Talik, Inc. Sec. Litigation., 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (finding $700 to $750 per hour to be a reasonable rate); Silverblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 433 (S.D.N.Y. 2007) (finding $675 per hour to be a reasonable rate); In re AOL Time

Warner Shareholder Deriv. Litigation, No. 02 civ. 6302, 2010 WL 363113, *13 (S.D.N.Y. 2010) (finding $175 to $550 for associates and $300 to $850 for partners to be reasonable rates). CDO has not proffered any evidence to suggest, against the background of these precedents, that Wachovia's lawyers' rates were unreasonable and, accordingly, the Court finds no basis for reducing those rates when awarding attorneys' fees.

CDO also asks the Court to reject as too vague some of Wachovia's attorneys' billing entries, some of which have been redacted in part to protect privileged information. Courts in this circuit have awarded attorneys' fees despite the redaction of privileged information in attorneys' time records. See, e.g., RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231, 2005 WL 2105541, at *1 (S.D.N.Y. Sept. 1, 2005); U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP, No. 04 Civ. 4986, 2005 WL 1875459, at *3 (S.D.N.Y. Aug. 8, 2005); Connecticut Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 689-90, 692 (D.Conn. 1994). Still, a party seeking attorneys' fees bears the burden of properly documenting the hours worked and that obligation is not satisfied by a vague entry such as "conference with" or "call to" a particular person. Connecticut Hosp. Ass'n, 891 F. Supp. at 690-91 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983)). The majority of Wachovia's attorneys' billing entries have not been redacted. Of those that have been redacted, the majority remain more than sufficiently detailed to provide support for the fee application. The entries whose redactions are so extensive as to make it impossible to determine the precise nature of the service provided appear nonetheless to be consistent in style with the unredacted entries which provide sufficient information to support the claims for those fees and are too few in number and dollar value relative to the rest of the submission to necessitate in-camera review or denial of the claims.

CDO challenges paralegal billing entries as too vague as well. Courts in this district have reduced requested paralegal fee awards, finding too vague billing entries that indicated only "claims project cont'd," "project work" or "further legal research." In re Nortel Networks Corp. Sec. Litigation, No. 01 civ. 1855, 2010 WL 3431152, at *3 (S.D.N.Y. Aug. 20, 2010). Here, CDO challenges, for example, a billing entry indicating that one hour was spent "assist[ing] Patrick Robson with meet and confer letter in compliance with Judge Swain's IPR and draft notice of motion" and an entry indicating that ninety minutes was spent "evaluat[ing] depositions taken in case to date and determin[ing] which transcripts need to be obtained from court reporter; follow-up with court reporter regarding same." (Sept. 28, 2010, Regan Decl., Exh. A, entries for July 14, 2008, and Dec. 9, 2008.) The challenged entries, which identify the particular tasks on which work was performed and are generally consistent with the overall picture provided by the fee submission of an appropriate division of labor between attorney and paralegal staff, are sufficient to support Wachovia's request for an award of the fees for paralegal services.

Next, CDO challenges billing entries for Joseph Buonanno as duplicative of work done by other attorneys. Buonanno is the co-head of his firm's derivative practice. For this matter, he billed to Wachovia less than a week of time for each year the case was being litigated. Wachovia proffers that he worked on the case occasionally, to provide particularized knowledge gained over 20 years of experience. Such consultation is not duplicative. Neither was it duplicative for Buonanno to review the complaint and otherwise familiarize himself with the facts of the case, as such review is an essential prerequisite to providing informed advice. Wachovia has met its burden of demonstrating that its fee request is reasonable in this regard.

CDO also challenges attorneys' fees billed in connection with depositions at which witnesses provided testimony to be used both in the instant case and in a parallel injunction action that was brought by Wachovia to enjoin an arbitration proceeding initiated by CDO. The parties agreed in advance that the depositions could cover testimony for both cases, so the Court will not reduce Wachovia's fee award on account of those depositions' relevance to both cases.

CDO challenges as an expense not reasonable or necessary to litigate the action the creation of a litigation budget, for which Wachovia's attorneys' billed $2,705.50. The Court, finding that the creation of a litigation budget is reasonable and necessary to well-managed litigation, will not deduct fees related to this task from the fee award.

Finally, CDO challenges $5,054.70 in billing entries that CDO interprets as billing for attorney travel time. Wachovia's attorneys have clarified that they have not charged Wachovia for travel time, that the single instance when one of them did mistakenly charge for travel time was conspicuously corrected, and that an entry on November 11, 2008, which indicates "travel to New York and prepare for [depositions]," was for work done while traveling, not for travel time itself. Accordingly, no adjustment is warranted.

<u>Conclusion</u>

For the foregoing reasons, Wachovia is hereby awarded a total of **$2,096,138.31**, which is comprised of the Settlement Amount of $1,017,709.66, interest on that Settlement Amount at LIBOR plus 1% from December 18, 2007, to today's date (totaling $75,172.81), and attorneys' fees and costs of $1,033,255.84.

This resolves docket entry number 87. The Clerk of the Court is respectfully requested to enter judgment in accordance with this Memorandum Order and close this case.

SO ORDERED.

Dated: New York, New York
    September 28, 2011

　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　LAURA TAYLOR SWAIN
　　　　　　　　　　　　　　　　　　　　　United States District Judge